## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LOS CANGRIS, INC.;**<br>**RAMON L. AYALA RODRIGUEZ, a/k/a**<br>**"Raymond/Daddy Yankee/Big Boss/DY;"**<br>Plaintiffs,<br><br>v.<br><br>**RAFAEL A. PINA-NIEVES, a/k/a "Raphy**<br>**Pina;"**<br>**ANDRES A.COLL-FERNÁNDEZ;**<br>**MIREDDYS GONZÁLEZ-CASTELLANOS;**<br>**EDWIN PRADO-GALARZA;**<br>**LOS MAGNIFIKOS INC., d/b/a Los**<br>**Magnifikos Music Publishing Inc., Los**<br>**Magnifikos Music Publishing, and Los**<br>**Magnifikos Music;**<br>**WORLD MUSIC LATINO CORP., d/b/a**<br>**Pina Records;**<br>**PRENDI PUBLISHING TRUST, d/b/a**<br>**Gasolina Publishing Co.;**<br>**MAFER MUSIC PUBLISHING INC.;**<br>**JOHN DOE;**<br>**JANE DOE;**<br>Defendants. | CIVIL NO.<br><br>**Nature of Claims:** Racketeer<br>Influenced and Corrupt<br>Organizations Act; Puerto<br>Rico Organized Crime Act;<br>Permanent Injunctive Relief<br><br>Jury Trial Demanded |

## COMPLAINT

COME NOW Plaintiffs Los Cangris, Inc. ("Los Cangris") and Ramón L. Ayala Rodríguez a/k/a "Daddy Yankee" ("Ayala-Rodríguez") by and through their undersigned counsel, and respectfully state, allege and pray as follows:

## INTRODUCTION

1.    *Reggaetón* and its songwriters are a vital cultural and economic force in Puerto Rico, protected by legal frameworks safeguarding authorship and royalties. This action arises from a series of long-running schemes by industry insiders who exploited that framework

to obtain publishing shares and revenues for works they did not create. This action concerns publishing rights and royalties—not master recordings—for certain songs where Defendants falsely claimed authorship despite contributing no creative expression.

2.     Through coordinated use of email communications, manipulated split sheets (documents that allocate authorship and publishing shares), forged authorizations, and misleading copyright filings, Rafael A. Pina-Nieves, a/k/a "Raphy Pina," with the help of Mireddys González-Castellanos; Andres A. Coll-Fernández;  Edwin Prado-Galarza; Los Magnifikos Inc., d/b/a Los Magnifikos Music Publishing Inc., Los Magnifikos Music Publishing, and Los Magnifikos Music; World Music Latino Corp., d/b/a Pina Records; Prendi Publishing Trust, d/b/a Gasolina Publishing Co.; and Mafer Music Publishing Inc. (collectively, "Defendants"), inserted himself into the ownership and income streams of songs, diverting royalties across interstate and foreign commerce and diminishing the rightful interests of the true authors. In particular, Defendants targeted songs authored by Ramon L. Ayala-Rodríguez—professionally known as "Daddy Yankee," "Big Boss," or "DY"—together with co-authors, whose works were managed by Los Cangris in connection with publishing and royalty administration. Plaintiffs emphasize that while some works outside this complaint were legitimately subject to agreements granting Pina-Nieves a percentage of publishing shares and royalties, the songs at issue here were never authorized for such allocations.

3.     Beginning no later than 2015 and continuing for nearly a decade, Defendants used email to circulate and alter split sheets and systematically inserted Pina-Nieves' name into those documents, allocating to Pina-Nieves or entities he controlled a portion of Plaintiffs'

publishing share despite Pina-Nieves not being an author. Defendants then leveraged those false allocations by submitting copyright applications and related industry filings that embedded the fabricated claims into official public and industry records.

4.     As a result, publishing percentages and royalty proceeds were diverted away from Plaintiffs and into the hands of Pina-Nieves. What began as unauthorized insertions into email-circulated split sheets matured into a coordinated operation that corrupted copyright records, undermined the integrity of the music-publishing system, and caused losses. By pursuing this action, Plaintiffs seek to restore accurate publishing records and recover royalties tied exclusively to authorship rights, ensuring that fraudulent claims do not erode the protections afforded to true creators. Plaintiffs bring this action not only to reclaim what was wrongfully taken, but to safeguard the integrity of Puerto Rico's music industry—ensuring that the voices and creativity that shaped *reggaetón* remain protected for generations to come.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961, *et seq*. Furthermore, this Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 because said claim is so related to the federal claim in this action that it forms part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this

judicial district.

## GENERAL ALLEGATIONS

### The Parties

7.     Plaintiff Los Cangris, Inc. was incorporated in Puerto Rico. Los Cangris was officially formed on October 24, 2001. The registered address of Los Cangris is in San Juan, PR. Ayala-Rodríguez is its President and a shareholder.

8.     Plaintiff Ramon L. Ayala-Rodríguez address is in San Juan, PR.

9.     Defendant Rafael Pina-Nieves, a/k/a Raphy Pina's ("Pina-Nieves") address is in Miami, FL. Pina-Nieves served as the central architect of the RICO enterprise, orchestrating schemes to unlawfully claim authorship and publishing rights over songs he did not create. Leveraging his self-proclaimed roles as manager, booking agent, and label, he exercised financial control over artists, using intimidation and emotional manipulation to enforce loyalty and silence dissent. He coordinated with others to falsify split sheets, file fraudulent copyright registrations, and divert royalties through affiliated publishing entities. Pina-Nieves' actions were deliberate and indispensable, ensuring he remained the primary financial beneficiary of the enterprise. Pina-Nieves is associated with the following entities because he either had an ownership interest, held a position, participated in their operations or management, or otherwise exercised control or performed acts that supported their operation or management: Los Magnifikos, Inc., d/b/a Los Magnifikos Music Publishing, Inc., Los Magnifikos Music Publishing,  and Los Magnifikos Music; World Music Latino Corp.; and Mafer Music Publishing, Inc. These entities operated as instrumental components of the RICO enterprise, serving as

vehicles through which Pina-Nieves advanced and concealed fraudulent claims to authorship and publishing rights, institutionalized false copyright interests, and diverted royalty streams for his personal benefit and the benefit of the enterprise.

10.    Defendant Andres A. Coll-Fernández's ("Coll-Fernández") address is in Toa Alta, PR. Coll-Fernández acted as Pina-Nieves' principal aide and mentor, guiding him through the music industry and helping establish his influence. He played a critical role in legitimizing and disseminating fraudulent publishing claims through interstate communications, knowingly confirming false allocations of rights in multiple songs. By circulating inflated publishing shares for Pina-Nieves and excluding Plaintiffs from key communications, Coll-Fernández ensured the misappropriation remained concealed and, as a result of his indispensable role, upon information and belief, secured continued influence and financial benefits within the enterprise. His actions embedded fraudulent claims into contractual and copyright documentation, enabling the diversion of royalties and reinforcing the enterprise's coercive environment.

11.    Defendant Mireddys González-Castellanos' ("González-Castellanos) address is in Carolina, PR. González-Castellanos acted as the enterprise's administrative coordinator, repeatedly preparing and circulating split sheets and publishing allocations that falsely inflated Pina-Nieves' shares while reducing Plaintiffs' interests. By transmitting these fraudulent records through interstate commerce and deliberately excluding Ayala-Rodríguez from communications, she ensured the misappropriation remained concealed and appeared legitimate. Her role provided the administrative backbone of the schemes, embedding false allocations into business records and copyright documentation. Because

her function was indispensable to the enterprise's success, González-Castellanos, upon information and belief, secured continued influence over and financial benefits from Pina-Nieves.

12.     Defendant Edwin J. Prado-Galarza's ("Prado-Galarza") is address is in Orlando, FL. Prado-Galarza acted as an enabler of the enterprise by executing agreements and transmitting documents that embedded Pina-Nieves' fraudulent publishing claims into binding contracts, giving them an appearance of legal validity. He signed critical agreements—such as the "Main Title Composition Agreement" and "Memorandum of Understanding" for the song "Buena Vida (Remake)"—without Ayala-Rodríguez's authorization and distributed these documents through interstate commerce without Ayala Rodríguez's consent and while deliberately excluding Ayala-Rodríguez. By institutionalizing false allocations within formal music industry documentation, Prado-Galarza ensured the misappropriation appeared legitimate to outside parties and future rights holders. Given his role as an attorney and contractual gatekeeper, upon information and belief, Prado-Galarza benefitted through professional advancement, influence, and financial rewards tied to the enterprise's success.

13.     Defendant Los Magnifikos, Inc., d/b/a Los Magnifikos Music Publishing, Inc., Los Magnifikos Music Publishing, and Los Magnifikos Music ("Los Magnifikos") was incorporated in Puerto Rico. The registered address of Los Magnifikos is in Caguas, PR. Pina-Nieves is the resident agent, president, and treasurer of Los Magnifikos.

14.     Defendant World Music Latino Corp., d/b/a Pina Records ("WML") was incorporated in Puerto Rico. The registered address of WML is in Caguas, PR. Pina-

Nieves is the resident agent and president of WML.

15.     Defendant Mafer Music Publishing, Inc. ("Mafer") was incorporated in Puerto Rico. The registered address of Mafer is in Caguas, PR. Pina-Nieves is the resident agent, president, and treasurer of Mafer.

16.     Defendant Prendi Publishing Trust d/b/a Gasolina Publishing Co. is a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 *et seq*.). The principal place of business of Gasolina Publishing Co.'s trustee is the State of Delaware, and the address of the trustee is in Wilmington, DE.

17.     Defendant John Doe is believed to be a citizen of the United States. The designation "John Doe" is used because the defendant's true name and identity are presently unknown to Plaintiff despite diligent efforts to ascertain them. Plaintiff will amend this Complaint to substitute the defendant's true name once it becomes known. Upon information and belief, Defendant John Doe was at all relevant times acting in concert with others whose identities are also unknown at this time.

18.     Defendant Jane Doe is believed to be a citizen of the United States. The designation "Jane Doe" is used because the defendant's true name and identity are presently unknown to Plaintiff despite diligent efforts to ascertain them. Plaintiff will amend this Complaint to substitute the defendant's true name once it becomes known. Upon information and belief, Defendant John Doe was at all relevant times acting in concert with others whose identities are also unknown at this time.

### Where It All Began

19.     Ayala-Rodríguez, a globally celebrated artist best known by his nicknames, Daddy Yankee, Big Boss, and DY, began his extraordinary journey into the vibrant world of *reggaetón* music at an astonishingly young age. Even as a teenager, his unmistakable vocal brilliance and lyrical depth set him apart, propelling him from local dance halls to international stages in record time. By the early 1990s, Ayala-Rodríguez—already revered in artistic circles as Daddy Yankee—stood at the forefront of a musical revolution. He was among the first to champion and popularize the term *reggaetón*, a word that would soon pulse through dance floors and radio waves worldwide, forever linked to the explosive new genre of latin music he helped define. Through fearless musical innovation, magnetic stage presence, and an unwavering commitment to his culture, Ayala-Rodríguez rose to become one of the most influential and beloved figures in the *reggaetón* movement, earning acclaim in Puerto Rico, the United States, and across the globe. His meteoric rise was powered not only by his brilliance as a performer but also by his rare gift as a composer, a storyteller, and a tireless creative force.

20.     Over the years, Ayala-Rodríguez painstakingly built an extensive catalog of original works—treasured intangible assets forged through decades of sacrifice and the relentless pursuit of artistic excellence. These works were not only the backbone of his career but also vital pieces of cultural heritage that he diligently developed, protected, and shared with the world through strategic business ventures and careful stewardship. To safeguard and manage his intellectual property and business ventures, Ayala-Rodríguez established a series of corporate entities—including El Cartel Records, Inc. ("El Cartel")

and Los Cangris.

21.    From no later than 2015 and continuing up to and including February 28, 2025, Los Cangris served as the publishing company for all of Ayala-Rodríguez's songs. Although Ayala-Rodríguez retained ownership of the copyrights and publishing rights to his songs, Los Cangris was supposed to manage those rights only with his prior approval for any allocation or use. Publishing rights, for purposes of this Complaint, mean the rights to a song's composition (its music and lyrics) and the money earned whenever that song is played, performed, streamed, sold, or licensed (royalties). Los Cangris had the exclusive right to collect all royalties generated by Ayala-Rodríguez's music; retain the collected funds; and control all income derived from the songs until February 28, 2025.

22.    Beginning around 2015, Ayala-Rodríguez and Pina-Nieves formed what, at the time, appeared to be a trusted professional and personal relationship that would span nearly a decade.

23.    In or about 2020, relying on that trust, Ayala-Rodríguez worked with Pina-Nieves to secure a recording contract with Universal Music for the Legendaddy studio album and the 2K20 live album drawn from Ayala-Rodríguez's electrifying performances during the renowned *Con Calma* concert series in Puerto Rico in December of 2019. Pina-Nieves negotiated and secured contracts for both projects.

24.    Between 2020 and 2022, Pina-Nieves and his company, WML, became embedded and entrenched in Ayala-Rodriguez's business and music affairs, including significant projects and transactions for Ayala-Rodriguez, purportedly contributing music business experience and expertise for Ayala-Rodriguez's benefit.

25.     To allow him to focus fully on his artistic endeavors and creative output, Ayala-Rodríguez entrusted the day-to-day management of El Cartel's and Los Cangris' internal affairs to his then-wife, González-Castellanos. Prior to 2015 and through December 19, 2024, she held the positions of President and Director of both El Cartel and Los Cangris. In these positions, however, she lacked any authority to assign ownership interests in the musical compositions to Pina-Nieves, who has never been a co-author of any song created in whole or in part by Ayala-Rodríguez.

26.     During his extensive career, Ayala-Rodríguez devoted himself entirely to his artistic development, entrusting the management of El Cartel and Los Cangris (collectively, "the corporations") to Mireddys González-Castellanos. By late 2024, Ayala-Rodríguez grew increasingly alarmed at González-Castellanos's handling of corporate affairs, particularly after discovering severe gaps in financial transparency and governance. His concerns escalated following a brazen attempt by González-Castellanos to transfer $100 million from corporate accounts into personal accounts—an effort thwarted only by Ayala-Rodríguez's swift intervention. Seeking to protect his interests and restore order, Ayala-Rodríguez filed suit in state court and, on December 20, 2024, assumed full control of the corporations. From that date forward, González-Castellanos no longer held any authority over the entities.

27.     Upon taking control, Ayala-Rodríguez faced a devastating reality: essential financial records were missing, corporate documentation was incomplete, and years of email communications had been deliberately deleted from the primary business account, mireddys@cartelrecords.com. These deletions—spanning July 2020 through December

2024—obliterated critical evidence of transactions, including negotiations for the multi-million-dollar sale of Daddy Yankee's music catalog and the La Última Vuelta World Tour. Driven by the urgent need to reconstruct the corporations' history, Ayala-Rodríguez initiated a comprehensive search of internal files and public records.

28.     In 2025, Plaintiffs conducted a review of Ayala Rodríguez's intellectual property portfolio—primarily his composition catalog. When Plaintiffs searched Los Cangris' internal records and the public records of the U.S. Copyright Office, a chilling truth surfaced. Plaintiffs discovered that Pina-Nieves had inserted his name as an author on numerous songs originally written by Ayala-Rodríguez in collaboration with other legitimate co-authors, thereby assigning himself ownership shares in these compositions and securing monetary compensation for works he neither authored nor was ever intended to author.

29.     Namely, on the U.S. Copyright Office website, within the records section listing registered works of authors who have sought copyright protection and its associated benefits, available at https://publicrecords.copyright.gov/advanced-search, Plaintiffs discovered that Pina-Nieves had falsely claimed co-authorship of the following musical works:

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| 2022-09-15 | 2019-06-21 | PA0002376356 | Music [1] | Runaway | 1000104437 Ontario Inc. | Joseph Angel<br><br>Daddy Yankee, pseud. of Ramon Ayala<br><br>Natti Natasha, pseud. of Natasha Alexandria Gutierrez-Batista<br><br>**Rafael Antonio Pina-Nieves**<br><br>Sebastian Yatra, pseud. of Sebastian Obando<br><br>Andres Torres<br><br>Mauricio |

[1] The songs at issue were registered as musical works, a distinction that matters. Copyright in the U.S. protects songs in two separate ways: as musical works and as sound recordings. 17 U.S.C. § 102(a)(2), (7). A musical work covers the composition itself—the melody, harmony, and lyrics, as written or notated, essentially what appears on sheet music. A sound recording, or master, captures the actual recorded performance of that composition. 17 U.S.C. § 101. Crucially, publishing rights flow from the musical work registration, giving the copyright owner the authority to license the work, collect royalties, and control how it is exploited.

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Rengifo |
| 2022-11-03 | 2017-07-12 | PA0002382048 | Music | Bella Y Sensual | Gasolina Publishing Co. | Daddy Yankee, pseud. of Ramon Luis Ayala-Rodríguez

**Rafael A. Pina-Nieves**

Marcos Efrain Masis

Juan Diego Medina-Velez

Cristhian Camilo Mena-Moreno

Nick Rivera-Caminero

Anthony Santos |
| 2022-12-08 | 2017-11-17 | PA0002389521 | Music | El Desorden | Gasolina Publishing Co. | Daddy Yankee, pseud. of Ramon Luis Ayala-Rodríguez

Ozuna, pseud. of |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Jan Carlos Ozuna Rosado<br><br>**Rafael A. Pina-Nieves**<br><br>Vicente Saavedra<br><br>Chencho Corleone, pseud. of Orlando Javier Valle-Vega<br><br>Maldy, pseud. of Edwin F. Vazquez-Vega |
| 2022-12-13 | 2018-10-11 | PA0002390334 | Music | Inolvidable (Remix) | Gasolina Publishing Co. | Daddy Yankee, pseud. of Ramon Luis Ayala-Rodríguez<br><br>Sean Paul Henriques<br><br>Frank Miami, pseud. of Franklin Jovani Martinez |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Carlos Ariel Peralta |
| | | | | | | Marcos G. Perez |
| | | | | | | **Rafael A. Pina-Nieves** |
| | | | | | | Symon Dice, pseud. of Simon Restrepo |
| | | | | | | Farruko, pseud. of Carlos Efren Reyes-Rosado Akon, pseud. of Aliaune Thiam |
| | | | | | | Dimelo Flow, pseud. of Jorge Valdes-Vazquez |
| 2023-01-19 | 2017-01-06 | PA0002396192 | Music | La Rompe Corazones | Gasolina Publishing Co. | Daddy Yankee, pseud. of Ramon Luis Ayala-Rodríguez |
| | | | | | | Benny |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Benni, pseud. of Jesus Manuel Benitez-Hiraldo<br><br>Chris Jedi, pseud. of Carlos Enrique Ortiz-Rivera<br><br>Ozuna, pseud. of Jan Carlos Ozuna-Rosado<br><br>**Rafael A. Pina-Nieves**<br><br>Yazid Antonio Rivera-Lopez<br><br>Gaby Music, pseud. of Juan G. Rivera-Vazquez<br><br>Vicente Saavedra |
| 2023-06-12 | 2017-09-29 | PA0002419371 | Music | Vuelve | Gasolina Publishing Co. | Ramon Ayala |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Luian Malave<br><br>Benito Antonio Martinez-Ocasio<br><br>Carlos Enrique Ortiz-Rivera<br><br>**Rafael Pina-Nieves**<br><br>Juan Rivera<br><br>Xavier Alexis Semper-Vargas<br><br>Edgar Wilmer Semper-Vargas |
| 2023-06-12 | 2015-10-23 | PA0002419333 | Music | Mayor Que Yo 3 | Gasolina Publishing Co. | Ramon Ayala<br><br>Rafael Regginalds Aponte-Blanco<br><br>Victor Cabrera |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Eliezer Garcia |
| | | | | | | William Omar Landron |
| | | | | | | Eduardo Lopez |
| | | | | | | Juan Luis Morera-Luna |
| | | | | | | Pedro Jose Ortiz-Coparropa |
| | | | | | | **Rafael Pina-Nieves** |
| | | | | | | Hasibur Rahman-Mhmd |
| | | | | | | Francisco Saldana |
| | | | | | | Eduardo Alfonso Vargas-Berrios |
| | | | | | | Malave Llandel Veguilla |
| 2023-06-12 | 2007-06-05 | PA0002419336 | Music | Llevo Tras De Ti | Gasolina Publishing Co. | Ramon Ayala |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | **Rafael Pina-Nieves** Egbert Enrique Rosa-Cintron Austin Santos Orlando Javier Valle Edwin Vasquez-Vega |
| 2023-06-12 | 2016-12-09 | PA0002419852 | Music | Otra Cosa | Gasolina Publishing Co. | Ramon Ayala Jhay Cortez Natasha Natti **Rafael Pina-Nieves** Egbert Enrique Rosa-Cintron |
| 2023-06-12 | 2017-11-06 | PA0002419310 | Music | Todo Comienza En La Disco | Gasolina Publishing Co. | Ramon Ayala Miguel Antonio Dejesus- |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Cruz |
| | | | | | | Juan Luisa Morera-Luna |
| | | | | | | Urbani Mota-Cedeno |
| | | | | | | **Rafael Pina-Nieves** |
| | | | | | | Juan Rivera-Vazquez |
| | | | | | | Luis Jorge Romero |
| | | | | | | Malave Llandel Veguilla |
| 2023-06-12 | 2010-11-02 | PA0002419618 | Music | Perdido Por El Mundo Feat. Daddy Yankee | Gasolina Publishing Co. | Ramon Ayala |
| | | | | | | Eliezer Garcia |
| | | | | | | Eduardo Lopez |
| | | | | | | Felix Ortiz |
| | | | | | | **Rafael Pina-Nieves** |
| | | | | | | Gabriel |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Pizarro |
| 2023-06-12 | 2018-06-19 | PA0002419429 | Music | Zum Zum Zum | Gasolina Publishing Co. | Ramon Ayala; <br><br> Jose Nieves-Jaime <br><br> **Rafael Pina-Nieves** <br><br> Juan Rivera <br><br> Francisco Saldana <br><br> Austin Santos <br><br> Felix Kenny Vasquez |
| 2024-08-06 | 2018-07-25 | PA0002487512 | Music | Buena Vida | Eli Augustin Barreto-Ramos <br><br> Natalia Alexandra Gutierrez <br><br> Carlos A Marmo <br><br> **Rafael A. Pina-Nieves** <br><br> Manuel Ramos-Quintana <br><br> Gasolina Publishing Co. <br><br> Two Latino DY | Daddy Yankee, pseud. of Ramon Luis Ayala-Rodríguez <br><br> Eli Augustin Barreto-Ramos <br><br> Natalia Alexandra Gutierrez <br><br> Carlos A Marmo |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | **Rafael A. Pina-Nieves**<br><br>Manuel Ramos-Quintana |
| 2024-11-27 | 2020-09-04 | PA0002512279 | Music | Relación (Remix) | Grand Central Music Fund I, LP | Josh Mendez<br><br>Carlos Morales-Williams<br><br>Jorge Valdes<br><br>Ramon L. Ayala<br><br>Andy Bauza<br><br>Hector Emmanuel Birriel-Caraballo<br><br>Eduardo Antonio Fernandez<br><br>Ramses Ivan Herrera-Soto<br><br>Franklin Jovani Martinez |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Miguel Andres Martinez-Perea<br><br>Jose Alvaro Osorio-Balvin<br><br>**Rafael A. Pina-Nieves**<br><br>Carlos Efren Reyes-Rosado<br><br>Rosalia Vila-Tobella |
| 2025-03-24 | 2020-12-10 | PA0002529307 | Music | De Vuelta Pa' La Vuelta | Ramon Luis Ayala-Rodríguez<br><br>Edgar Barrera<br><br>Andrea Elena Mangiamarchi<br><br>Rafael Pina<br><br>Sergio George<br><br>Stilwell Creative Capital, LLC | Daddy Yankee, pseud. of Ramon Luis Ayala<br><br>Edgar Barrera<br><br>Elena Rose, pseud. of Andrea Elena Mangiamarchi<br><br>**Rafael Pina**<br><br>Sergio George |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | Marc Anthony, pseud. of Marco Antonio Muniz |

30.     These false claims remain embedded in the official records of the U.S. Copyright Office and are propagated across industry databases. Each time members of the public, licensing agencies, or potential business partners consult those records, they are confronted with Pina-Nieves' name falsely coupled with Ayala-Rodríguez's as a co-author. The same fraudulent assignment and misattribution appear in the records of music publishers and Performing Rights Organizations ("PROs"). Unless and until corrected, these registrations and listings will persist as permanent, publicly accessible records that (a) falsely present Pina-Nieves as a lawful co-author and (b) enable him to claim benefits reserved for copyright owners, including an unlawful share of ownership and revenues. Moreover, this fraudulent posture will allow Pina-Nieves to extract profits for the entire term of protection under the U.S. Copyright Act—seventy (70) years after the death of the last surviving author—before the works enter the public domain.

31.     Upon further review of the U.S. Copyright Office's public records and, upon information and belief, Plaintiffs learned that Ayala-Rodríguez was not the only victim. Other individuals likewise suffered from Pina-Nieves' wrongful assertions of authorship and fraudulent copyright filings. Upon information and belief, these works include, without limitation, the following:

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| 2005-11-28 | 1999-12-12 | PA0001304917 | Music | Intro-implantando el 99 | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2005-11-28 | 1999-12-12 | PA0001304914 | Music | Caminando contra el viento | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2005-11-28 | 2001-12-21 | PA0001304918 | Music | Eddie Kaneca | **Rafael Pina Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2005-11-28 | 2004-03-16 | PA0001302550 | Music | A puercos como tu | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2005-11-28 | 2001-12-21 | PA0001302606 | Music | Un sabado gansta | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael Sierra- |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Pascual |
| 2005-11-29 | 2004-03-16 | PA0001302549 | Music | Eso Eso | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2005-11-29 | 2001-12-21 | PA0001302621 | Music | Mundo frio | **Rafael Pina-Nieves** | **Rafael Pina-Nieves**<br><br>Rafael O. Polaco-Molina<br><br>Rafael Sierra-Pascual |
| 2009-11-30 | 2009 | SRU001001046 | Music | Comportarme? | Pina Records | **Rafael Pina**<br><br>Tony Filiciano<br><br>Edgar J. Rodriguez<br><br>Xavier Semper<br><br>Edgar Semper |
| 2010-02-11 | 2009 | SRU000975339 | Music | Hooka | William O. Landron<br><br>**Rafael Pina-Nieves** | William O. Landron<br><br>**Rafael Pina-Nieves** |
| 2016-04-27 | 2015-04-07 | PA0002018816 | Music | Finge Que Me Amas | Los Magnifikos Music | **Rafael Pina**<br><br>Don Omar, |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Publishing Inc. EMI Blackwood Music Inc. | pseud. of William Landon Christopher Montavlo |
| 2016-04-27 | 2015-04-07 | PA0002018913 | Music | Botellas & Humo | Los Magnifikos Music Publishing Inc. Editora De Musica Mambo Kingz, Inc. Sony/ATV Music Publishing, LLC | **Rafael Pina** Tony Feliciano Edgar Semper Xavier Semper Pedro L. Arcay-Rios |
| 2016-04-27 | 2015-04-07 | PA0002018919 | Music | Al Limite De La Locura | Los Magnifikos Music Publishing Inc. | **Rafael Pina** Eric J. Rodriguez Karl Palencia Tony Feliciano |
| 2016-04-27 | 2015-04-07 | PA0002018905 | Music | Suelta Por Ahi | Los Magnifikos Music Publishing Inc. EMI Blackwood, Inc. | **Rafael Pina** Eric J Rodriguez Victor Viera Ñengo Flow, pseud. of Edwin |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | Laureano<br><br>Tony Feliciano |
| 2016-04-27 | 2015-04-07 | PA0002018922 | Music | Te Falto El Valor | Los Magnifikos Music Publishing Inc.<br><br>Editora De Musica Mambo Kingz, Inc.<br><br>Sony/ATV Music Publishing, LLC<br><br>EMI Blackwood, Inc. | **Rafael Pina**<br><br>Eric J Rodriguez<br><br>Tony Feliciano<br><br>Natti Natasha, pseud. of Natalia Gutierrez<br><br>Marco Masis |
| 2016-06-29 | 2015-09-09 | PA0002028815 | Music | Zapatito Roto Feat. Tego Calderon | Los Magnifikos Music Publishing Inc.<br><br>Sony/ATV Latin Music Publishing LLC | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Haze, pseud. of Egbert Rosa<br><br>Tego, pseud. of Tegui Calderon |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | | **Rafael Pina** |
| 2016-06-29 | 2015-09-09 | PA0002028824 | Music | Candy | Los Magnifikos Music Publishing Inc.<br><br>EMI Blackwood Music, Inc.<br><br>Blue Kraft Music Publishing | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>**Rafael Pina**<br><br>Tunes, pseud. of Victor Cabrera<br><br>Luny, pseud. of Fransisco Saldana |
| 2016-06-29 | 2015-09-09 | PA0002028792 | Music | Choca | Los Magnifikos Music Publishing Inc.<br><br>EMI Blackwood Music, Inc.<br><br>Blue Kraft Music Publishing<br><br>Sony/ATV Music Publishing LLC | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Luny, pseud. of Francisco Saldana<br><br>Tunes, pseud. of Victor Cabrera<br><br>**Rafael Pina** |
| 2016-06-29 | 2015-09-09 | PA0002028802 | Music | Mi Vecinita | Los | Chencho, |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Magnifikos Music Publishing Inc.<br><br>EMI Blackwood Music, Inc..<br><br>El Artesano Music Publishing, Inc.<br><br>Sony/ATV Music Publishing LLC | pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>DJ Blass, pseud. of Vladimir Felix<br><br>Haze, pseud. of Egbert Rosa<br><br>David Duran<br><br>**Rafael Pina** |
| 2016-06-29 | 2015-09-09 | PA0002028807 | Music | Soy Y Seré | Los Magnifikos Music Publishing Inc.<br><br>Sony/ATV Latin Music Publishing LLC | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Haze, pseud. of Egbert Rosa<br><br>David Duran |
| 2016-06-29 | 2015-09-09 | PA0002028825 | Music | Satiro | Los Magnifikos Music Publishing | Chencho, pseud. of Orlando J. Valle |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Inc.<br><br>EMI Blackwood Music, Inc.<br><br>Blue Kraft Music Publishing | Maldy, pseud. of Edwin F. Vazquez<br><br>Amaro, pseud. of Emmanuel Amaro<br><br>Luny, pseud. of Francisco Saldana<br><br>Tunes, pseud. of Victor Cabrera |
| 2016-06-29 | 2015-09-09 | PA0002028793 | Music | Pa'l Piso | Los Magnifikos Music Publishing Inc.<br><br>Sony/ATV Music Publishing LLC<br><br>La Leyenda Publishing | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Haze, pseud. of Egbert Rosa<br><br>Yandel, pseud. of Llandel Veguilla Malave |
| 2016-06-29 | 2015-09-09 | PA0002028813 | Music | Coquetea | Los Magnifikos Music Publishing | Chencho, pseud. of Orlando J. Valle |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Inc.<br><br>EMI Blackwood Music, Inc. | Maldy, pseud. of Edwin F. Vazquez<br><br>Marco E. Masis |
| 2016-06-29 | 2015-09-09 | PA0002028820 | Music | Dame Una Noche | Los Magnifikos Music Publishing Inc.<br><br>EMI Blackwood Music, Inc.<br><br>Z y L Publishing<br><br>Sony/ATV Music Publishing LLC | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Marco Masis<br><br>Felix Ortiz<br><br>Gabriel Pizzaro |
| 2016-06-29 | 2015-09-09 | PA0002028790 | Music | Fronteo | Los Magnifikos Music Publishing Inc.<br><br>EMI Blackwood Music, Inc. | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Marco Masis |
| 2016-06-29 | 2015-09-09 | PA0002028801 | Music | No Quiero Que Te Vayas | Los Magnifikos Music Publishing | Chencho, pseud. of Orlando J. Valle |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Inc.<br><br>Sony/ATV Music Publishing LLC | Maldy, pseud. of Edwin F. Vazquez<br><br>Haze, pseud. of Egbert Rosa<br><br>David Duran |
| 2016-06-29 | 2015-09-09 | PA0002028806 | Music | Dónde Los Consigo? | Los Magnifikos Music Publishing Inc. | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Anibal Barreto<br><br>Jason Medina<br><br>Jose J. Morales |
| 2016-06-29 | | PA0002028800 | Music | El Matadero | Los Magnifikos Music Publishing Inc.<br><br>Alexis Y. Fido Music Publishing<br><br>Sony/ATV Music Publishing | Chencho, pseud. of Orlando J. Valle<br><br>Maldy, pseud. of Edwin F. Vazquez<br><br>Haze, pseud. of Egbert Rosa |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | LLC | Joel Martinez<br><br>Raul Ortriz-Rolon, pseud. of Raul Alexis Ortiz |
| 2016-07-19 | 2015-06-16 | PA0002041518 | Music | Olvidar Que Somos Amigos Feat. Plan B | Sony/ATV Music Publishing LLC<br><br>Los Magnifikos Music Publishing<br><br>EMI Blackwood Music, Inc. | Jumbo, pseud. of Victor Viera-Moore<br><br>Orlando Valle-Vega<br><br>**Rafael Pina**<br><br>Don Omar, pseud. of William Landron |
| 2016-07-19 | 2015-06-16 | PA0002039708 | Music | Dobla Rodilla | Sony/ATV Publishing, LLC,<br><br>EMI Blackwood Music, Inc<br><br>Yele Publishing<br><br>Los Magnifikos Music | Wisin, pseud. of Juan Luis Morera<br><br>Don Omar, pseud. of William Landron<br><br>Orlando Valle-Vega |
| 2016-07-19 | 2015-06-16 | PA0002039719 | Music | Soledad | Sony/ATV Music Publishing LLC | Christopher Montalvo<br><br>Wilmer Semper |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Los Magnifikos Music Publishing <br><br> EMI Blackwood Music, Inc | **Rafael Pina** <br><br> Xavier Semper <br><br> Don Omar, pseud. of William Landron |
| 2016-07-26 | Soledad | PA0002055409 | Music | Piquete | Sony/ATV Music Publishing LLC <br><br> Yele Publishing <br><br> Los Magnifikos Music Publishing | Juan Luis Morera Luna <br><br> Egbert Rosa Cintron <br><br> Edwin Vazquez <br><br> Orlando J. Valle |
| 2024-02-15 | 2009-10-20 | PA0002457549 | Music | Solos | Egbert Rosa <br><br> Orlando J. Valle <br><br> Edwin F. Vazquez <br><br> HV JVCO I, LLC | **Rafael Antonio Pina-Nieves** <br><br> Egbert Rosa <br><br> Orlando J. Valle <br><br> Edwin F. Vazquez |
| 2024-02-15 | 2010-05-18 | PA0002457551 | Music | Si No Le Contesto | Egbert Rosa <br><br> Orlando J. Valle <br><br> Edwin F. | **Rafael Antonio Pina-Nieves** <br><br> Egbert Rosa <br><br> Orlando J. |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Vazquez <br><br> HV JVCO I, LLC | Valle <br><br> Edwin F. Vazquez |
| 2024-02-15 | 2014-08-25 | PA0002457546 | Music | Fanatica Sensual | Egbert Rosa <br><br> David Duran <br><br> Orlando J. Valle <br><br> Edwin F. Vazquez <br><br> HV JVCO I, LLC | **Rafael Antonio Pina Nieves** <br><br> Egbert Rosa <br><br> David Duran <br><br> Orlando J. Valle <br><br> Edwin F. Vazquez |
| 2024-02-15 | 2012-08-20 | PA0002457545 | Music | More | Fernando Luis Sierra <br><br> Urbani Mota Cedeno <br><br> Felix G. Ortiz Torres <br><br> Kenny Vazquez <br><br> HV JVCO I, LLC | **Rafael Antonio Pina-Nieves** <br><br> Fernando Luis Sierra <br><br> Urbani Mota Cedeno <br><br> Felix G. Ortiz Torres <br><br> Kenny Vazquez |
| 2024-03-11 | 2012-08-20 | PA0002461537 | Music | Te Dijeron | Victor Cabrera. Address <br><br> Victor Edmundo | **Rafael Pina** <br><br> Victor Cabrera <br><br> Victor |

| Date of Registration | Date of Publication | Registration Number | Type of Work | Title | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|---|---|
| | | | | | Delgado | Edmundo Delgado |
| | | | | | Francisco Saldana | Francisco Saldana |
| | | | | | Orlando J. Valle | Orlando J. Valle |
| | | | | | Edwin F. Vazquez | Edwin F. Vazquez |
| | | | | | HV JVCO I, LLC | |

32.    These revelations marked the beginning of uncovering a series of calculated and long-running schemes to divert revenue from Los Cangris and Ayala-Rodríguez and claim unearned authorship.

### The Schemes

33.    In 2025, following the change in management under Ayala-Rodríguez, Plaintiffs uncovered that their publishing interests had been deliberately falsified and systematically reduced. The discovery revealed coordinated schemes designed to divert publishing rights and corresponding revenues away from Plaintiffs and into the hands of Pina-Nieves, with the help of Coll-Fernández, González-Castellanos, Prado-Galarza, Mafer, Los Magnifikos, Gasolina Publishing Co., and WML. By falsifying publishing allocations, manipulating contractual schedules, and submitting fraudulent registrations, Pina-Nieves, with the assistance and acquiescence of co-defendants, systematically misappropriated publishing income managed by Los Cangris until February 28, 2025 and subsequently by Ayala-Rodríguez. In total, Defendants' conduct constituted a deliberate, sustained, and

coordinated attack on the integrity of Plaintiffs' publishing operations. Each email, filing, manipulated contract entry, and fund transfer formed part of a broader pattern of deception and financial misappropriation, replacing transparent administration with concealment and loss.

34.    Central to the misconduct were manipulated split sheets, the industry documents that allocate authorship and publishing percentages. Without authorization from Ayala-Rodríguez, Defendants caused these split sheets to allocate to Pina-Nieves, without any creative contribution to the compositions at issue, a portion of the publishing rights in songs authored by Ayala-Rodríguez with others. The altered allocations had the predictable and intended effect of reducing Plaintiffs' publishing share and increasing Pina-Nieves' position, often through his publishing companies, Mafer and Los Magnifikos. Plaintiffs' publishing shares were reduced, and the income derived therefrom diminished. Emails, online forms, and other electronic submissions were used to effectuate these changes, to circulate them to publishers, registries and collection entities, and to confer a veneer of legitimacy on allocations that were false at their core.

35.    Any reduction of Plaintiffs' publishing shares required the express approval of Ayala-Rodríguez as the original author or co-author of the songs, which was not given for any of the songs that are the subject of this Complaint. Nor could Pina-Nieves plausibly claim the mantle of co-authorship. Co-authorship requires mutual intent to be co-authors and a creative contribution to the work; Pina-Nieves had neither. His asserted allocations were unearned and unauthorized, the product of misrepresentation and concealed manipulation rather than authorship, agreement, or right.

36.    Throughout this period, Pina-Nieves—acting in concert with González-Castellanos and other defendants—exercised control over the flow of information concerning publishing shares and allocations, deliberately concealing these manipulations from Ayala-Rodríguez to prevent detection and maintain the scheme.

37.    After securing a foothold through falsified split sheets, Pina-Nieves, aided and abetted by the other defendants as further detailed below, escalated the scheme by embedding his fabricated claims in official and industry records. Registrations and related filings were submitted to the U.S. Copyright Office listing Pina-Nieves as a co-author of songs he did not create. Many such filings occurred years after the works' release and, upon information and belief, were timed to maximize the diversion of royalties.

38.    With fabricated authorship and ownership claims institutionalized in official and industry records, Pina-Nieves, upon information and belief, monetized them by collecting the publishing royalties and other payments redirected by the manipulated allocations.

39.    The misconduct was not confined to Plaintiffs. Upon information and belief, Pina-Nieves and his corporations engaged in a recurring pattern with other artists: falsifying ownership percentages; asserting false co-authorship claims despite no creative contribution or mutual intent; and diverting royalties, revenues, and recording proceeds. He converted manipulated split sheets into recognized ownership positions within the registries and payment systems that power the music industry, thereby extracting revenues that did not belong to him.

40.    Upon information and belief, the schemes targeted unsophisticated companies and young artists from humble beginnings who lacked experience with publishing and royalty

systems. Pina-Nieves exploited personal trust, friendship, and promises of advancement as levers of influence, positioning himself simultaneously as a self-proclaimed manager, booking agent, and label to centralize decision-making and capture every revenue stream. Under this consolidated authority, he concealed, withheld, or misreported payments while maintaining the appearance of legitimate business operations.

41.    Upon information and belief, he further entrenched control by positioning himself as the artists' sole "bank," directing advances, payments, and miscellaneous expenses through himself and withholding funds at will. He provided cars, houses, and other material benefits titled in his own name, only to reclaim those assets as punishment or coercion when artists resisted or questioned his authority. He issued partial advances and then deducted those amounts from later payments, generating confusion, debt-like obligations, and financial dependence. When artists pushed back, he retaliated by cutting off payments, damaging their reputations, and using his influence to impede performance opportunities and professional collaborations.

42.    Pina-Nieves reinforced this coercive environment by instilling fear through physical intimidation and acts of violence. He routinely brandished firearms during meetings to assert dominance and deter dissent, and humiliated or physically assaulted individuals in the presence of others to make examples of them. Leveraging his considerable height and strength, Pina-Nieves cultivated an atmosphere of constant threat, ensuring that artists and associates remained compliant out of fear for their safety and well-being. Coll-Fernández actively promoted and perpetuated this climate of fear by endorsing Pina-Nieves's conduct, condoning his violent tactics, and communicating to

others that resistance would result in severe personal and professional consequences. Pina-Nieves further exploited this environment of fear and intimidation to unlawfully withhold or retain monies owed to artists, using violence, threats of violence, and acts of retaliation—at times carried out through others—as leverage to prevent them from asserting their contractual or legal rights.

43.    The effectiveness of these schemes rested on practical realities of the industry. The U.S. Copyright Office, music publishers, and PROs rely on truthful submissions. Pina-Nieves, with the assistance of co-defendants, exploited this reliance by transforming manipulated split sheets and contractual documents into official registrations and payment instructions that redirected revenue streams. The continuous use of emails, online filings, and wire transmissions facilitated the execution, concealment, and ongoing collection of misdirected proceeds.

44.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered reduced publishing ownership, diverted royalties, and a loss of control over the exploitation of their catalog. The injuries include historical underpayments, ongoing diversion of revenue, and the administrative and financial burdens of correcting official records and restoring rightful ownership and payment allocations with the Copyright Office, publishers, performance rights organizations, and other industry stakeholders. Absent court intervention and corrective relief, the misdirection of royalties and the resulting harm to Plaintiffs' economic interests will continue.

45.    Plaintiffs have identified multiple overt acts committed by Defendants in furtherance of the unlawful schemes. Each act constitutes either a violent offense or a

material misrepresentation designed to advance and secure the success of these schemes. The overt acts identified to date include, but are not limited to, those described below, which occurred on or about the dates specified.

**Overt Acts**

46.    In or about 2004, third parties, acting on behalf of Pina-Nieves in "Coliseo de Puerto Rico José Miguel Agrelot," threatened Juan A. Ortiz-García, a/k/a "Sir Speedy," with physical harm because Ortiz-García insisted on receiving payment for the distribution of his album *Dando Cocotazos*, which Pina-Nieves was handling.

47.    In or about 2004, three individuals—two of whom brandished firearms—acting on behalf of Pina-Nieves, threatened Ortiz-García with physical harm because Ortiz-García insisted on receiving payment for the distribution of his album *Dando Cocotazos*, which Pina-Nieves was handling.

48.    In or about 2005, at a nightclub in Ponce, individuals acting on behalf of Pina-Nieves brandished a firearm and physically assaulted Ortiz-García because he continued to insist on receiving payment for the distribution of his album *Dando Cocotazos*, which Pina-Nieves was handling.

49.    On November 28, 2005, the copyright registrations for the songs "Intro-implantando el 99," "Caminando contra el Viento," "Eddie Kaneca," "A puercos como tú," "Un sabado gansta," and "Eso Eso" were filed with the U.S. Copyright Office, each listing Pina-Nieves as both the copyright claimant and one of the authors despite Pina-Nieves having made no creative contribution to the works, and upon information and belief, the registrations' filing, display, and maintenance in the U.S. Copyright Office

system caused wire communications to travel in interstate and foreign commerce.

50.    On November 29, 2005, the copyright registration for the song "Mundo Frío" was filed with the U.S. Copyright Office, listing Pina-Nieves as both the copyright claimant and one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

51.    On April 27, 2015, an email transmitted through interstate or foreign commerce reflected that Pina-Nieves was assigned a 5% publishing share in the song "Mayor Que Yo 3" to his publishing company, Los Magnifikos. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

52.    On January 11, 2017, Coll-Fernández sent an email transmitted via interstate or foreign commerce to another individual stating that Pina-Nieves and his publisher, Mafer, had a 30% publishing share in the song "Otra Cosa"— a percentage exceeding Plaintiffs' 25% share. Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

53.    On December 14, 2017, Pina-Nieves sent an email transmitted in interstate or foreign commerce to González-Castellanos attaching a document that allocated 7.5% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Todo Comienza En La Disco." Pina-Nieves did not include Ayala-Rodríguez as a recipient. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

54.    On February 13, 2018, in an email transmitted through interstate or foreign commerce, González-Castellanos confirmed that Pina-Nieves' publishing share for the songs "La Rompe Corazones" and "Bella y Sensual" came from Los Cangris' percentage. González-Castellanos did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

55.    On June 12, 2018, González-Castellanos sent emails transmitted via interstate or foreign commerce showing that Pina-Nieves held a 10% publishing share in the song "Buena Vida," and Pina-Nieves' publishing company for that song was Los Magnifikos. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

56.    On June 18, 2018, González-Castellanos sent an email transmitted through interstate or foreign commerce documenting that Pina-Nieves was assigned a 20% publishing share in the song "Zum Zum Zum." González-Castellanos sent the email to Prado-Galarza, Pina-Nieves, and another individual but not to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

57.    On June 18, 2018, González-Castellanos sent an email transmitted via interstate or foreign commerce confirming that Pina-Nieves had a 10% publishing share in the song "Vuelve." González-Castellanos included Prado-Galarza, Pina-Nieves, and another individual but not Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

58.    On June 19, 2018, Pina-Nieves sent an email transmitted via interstate or foreign

commerce memorializing that he had a 20% publishing share in the song "Zum Zum Zum." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

59.    On June 26, 2018, González-Castellanos confirmed in emails sent to others that Pina-Nieves had a 20% publishing share in the song "Zum Zum Zum." González-Castellanos did not include Ayala-Rodríguez as a recipient. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

60.    On July 5, 2018, Pina-Nieves sent an email transmitted through interstate or foreign commerce directing González-Castellanos to sign a "Main Title Music Composition Agreement" for the song "Buena Vida (Remake)," assigning Pina-Nieves and his publisher, Mafer, a 10% publishing share and identifying Pina-Nieves as a songwriter. Pina-Nieves did not include Ayala-Rodríguez as a recipient. Pina-Nieves was not a co-author of the song "Buena Vida (Remake)." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

61.    On July 6, 2018, Prado-Galarza sent an email transmitted via interstate or foreign commerce to Coll-Fernández, Pina-Nieves, González-Castellanos, and others, attaching the "Main Title Composition Agreement" for "Buena Vida (Remake)" assigning a Pina-Nieves and his publisher, Mafer, a 10% publishing share and identifying Pina-Nieves as a songwriter. Prado-Galarza signed the agreement on behalf of Los Cangris and Ayala-Rodríguez. In that same email, Prado-Galarza attached a "Memorandum of Understanding" for "Buena Vida (Remake)," assigning 10% of the publishing share to Mafer and identifying Pina-Nieves as a songwriter. Prado-Galarza signed the

"Memorandum of Understanding" on behalf of El Cartel. Prado-Galarza did not include Ayala-Rodríguez as a recipient. At no time did Ayala-Rodríguez consent to Prado-Galarza signing on his behalf or on behalf of Los Cangris or El Cartel.

62.     On August 2, 2018, an email transmitted through interstate or foreign commerce—on which Pina-Nieves, Prado-Galarza, González-Castellanos, and another individual were included—reflected that Pina-Nieves was assigned an 11.68% publishing share in the split sheet for the song "El Desorden." Ayala-Rodríguez was not included in the email. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

63.     On August 2, 2018, Pina-Nieves sent an email transmitted via interstate or foreign commerce documenting his 11.68% publishing share in the song "El Desorden." Pina-Nieves included Coll-Fernández and another individual but did not include Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

64.     On September 5, 2018, an email was transmitted through interstate or foreign commerce reflecting that Pina-Nieves was assigned a 10% publishing share in the song "Vuelve." Ayala-Rodríguez was not included in the communication. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

65.     On October 11, 2018, Pina-Nieves sent an email transmitted via interstate or foreign commerce confirming that, through his publishing company, Mafer, he had a 5% publishing share in the song "Inolvidable (Remix)." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

66.     On October 17, 2018, González-Castellanos sent an email transmitted via interstate or foreign commerce confirming that Pina-Nieves, through his publishing company, Mafer, had a 5% publishing share in the song "Inolvidable (Remix)." González-Castellanos included Prado-Galarza and others but not Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

67.     On November 14, 2018, Pina-Nieves signed a "Songwriters' Split Agreement" for the song "Inolvidable (Remix)" on behalf of Ayala-Rodríguez, which allocated a 5% publishing share in the song to Pina-Nieves through his publishing company, Mafer. At no time did Ayala-Rodríguez consent to Pina-Nieves signing the "Songwriters' Split Agreement" for the song "Inolvidable (Remix)" on his behalf or to this assignment. The "Songwriters' Split Agreement" was transmitted via email through interstate and foreign commerce on November 27, 2018 to Pina-Nieves, Coll-Fernández, González-Castellanos, and others but not to Ayala-Rodríguez.

68.     On April 1, 2019, Pina-Nieves signed a letter agreement for the song "No Lo Trates" on behalf of El Cartel and Pina Records, which reflected that Pina-Nieves was a co-author of the song and had a 3% publishing share in the song. At no time did Ayala-Rodríguez consent to Pina-Nieves signing the letter agreement for the song "No Lo Trates" on behalf of El Cartel or to this assignment. The letter agreement was transmitted via email through interstate and foreign commerce on January 29, 2020 to González-Castellanos, Pina-Nieves, Coll-Fernández, and others but not to Ayala-Rodríguez.

69.     On May 21, 2019, Prado-Galarza sent an email transmitted through interstate or foreign commerce to González-Castellanos, Pina-Nieves, and others confirming that

Pina-Nieves had a 22.5% publishing share in the song "Te Lo Dije"—a percentage exceeding Plaintiffs' 15% share. Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

70.    On May 22, 2019, Pina-Nieves sent an email transmitted through interstate or foreign commerce stating that he had a 10% publishing share in the song "Si Supieras." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

71.    On June 6, 2019, González-Castellanos sent an email transmitted through interstate or foreign commerce reflecting that Pina-Nieves had a 22.5% publishing share in the song "Te Lo Dije." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

72.    On June 6, 2019, González-Castellanos sent an email transmitted through interstate or foreign commerce stating that Pina-Nieves had a 10% publishing share in the song "Si Supieras." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

73.    On June 19, 2019, an email transmitted through interstate or foreign commerce— on which Pina-Nieves, Prado-Galarza, and González-Castellanos were recipients— reflected that Pina-Nieves was assigned a 5% publishing share in the song "Runaway." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

74.    On June 21, 2019, Pina-Nieves sent an email transmitted via interstate or foreign commerce confirming that he held a 5% publishing share in the song "Runaway." Pina-

Nieves included González-Castellanos, Prado-Galarza, and another but did not include Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

75. On July 31, 2019, an email transmitted through interstate or foreign commerce—sent to González-Castellanos and others—reflected that Pina-Nieves was assigned a 3% publishing share in the song "No Lo Trates." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

76. On September 12, 2019, Pina-Nieves sent an email transmitted via interstate or foreign commerce to Coll-Fernández and another individual, confirming that he had a 10% publishing share in the song "Si Supieras." Ayala-Rodríguez was not included as a recipient on the email. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

77. In or about 2020, Pina-Nieves falsely listed himself as the producer of the 2K20 Live album, which involved interstate and foreign wire communications, when in fact he had only served as the producer of the live show.

78. On March 13, 2020, Coll-Fernández sent an email transmitted through interstate or foreign commerce to Pina-Nieves, González-Castellanos, and others reflecting that Pina-Nieves had a 3% publishing share in the song "No Lo Trates." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

79. On June 8, 2020, Coll-Fernández sent an email transmitted through interstate or

foreign commerce to Pina-Nieves, González-Castellanos, and another individual reflecting that Pina-Nieves had a 17% publishing share in the song "Que Mal Te Fue." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

80.    On August 10, 2020, González-Castellanos signed the songwriter's split agreement for the song "Relación (Remix)" which allocated a 2% publishing share to Pina-Nieves and his publisher, Los Magnifikos, and was transmitted on May 13, 2022 via an interstate and foreign wire communication to Pina-Nieves, Coll-Fernández, and another but not to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

81.    On August 11, 2020, Pina-Nieves sent an email transmitted via interstate or foreign commerce documenting he had a publishing share in the song "Dura (Remix)." Pina-Nieves but did not include Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

82.    On August 12, 2020, Pina-Nieves sent an email transmitted via interstate or foreign commerce documenting he had a publishing share in the song "Dura (Remix)." Pina-Nieves but did not include Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

83.    On October 7, 2020, Pina-Nieves sent an email transmitted via interstate or foreign commerce stating that he had a 12% publishing share in the song "Que Mal Te Fue" and a 10% publishing share in the song "Que Mal Te Fue (Remix)." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

84.     On October 7, 2020, Coll-Fernández sent an email transmitted via interstate or foreign commerce stating that Pina-Nieves had a 12% publishing share in the song "Que Mal Te Fue" and a 10% publishing share in the song "Que Mal Te Fue (Remix)." Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

85.     On December 11, 2020, an email was transmitted via interstate or foreign commerce to Coll-Fernández, González-Castellanos, and Pina-Nieves stating that Pina-Nieves and his publisher, Los Magnifikos, had a 5% publishing share of the song "De Vuelta Pa' La Vuelta." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

86.     On February 3, 2021, Coll-Fernández sent an email transmitted via interstate or foreign commerce to Pina-Nieves and another individual stating that Pina-Nieves had a 15% publishing share in the song "Inédito." Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

87.     On March 25, 2021, Coll-Fernández sent an email transmitted via interstate or foreign commerce attaching a document stating that Pina-Nieves and his publisher, Los Magnifikos, had a 15% publishing share in the song "Ram Pam Pam." Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

88.     On July 21, 2021, an email was transmitted in interstate or foreign commerce reflecting that Pina-Nieves had a 5% publishing share in the song "Súbele el Volumen."

At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

89.     On December 2, 2021, Coll-Fernández sent an email transmitted via interstate or foreign commerce to Pina-Nieves and another individual with an attached document that reflected that Pina-Nieves had a 20% publishing share in the song "Me Felicito." Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

90.     On January 27, 2022, González-Castellanos sent an email transmitted in interstate or foreign commerce allocating a 5% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Súbele El Volumen." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

91.     On February 28, 2022, an email was transmitted in interstate or foreign commerce to González-Castellanos, Pina-Nieves, and others attaching a document that allocated a 10% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Zona del Perreo." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

92.     On March 12, 2022, an email was transmitted in interstate or foreign commerce to González-Castellanos, Pina-Nieves, and others attaching a document that identified Pina-Nieves as a writer and allocated a 10% publishing share to his publisher, Los Magnifikos, in the song "Zona del Perreo." Ayala-Rodríguez was not included. Pina-Nieves was not a co-author of the song "Zona del Perreo." At no time did Ayala-Rodríguez consent to

this assignment, which was deliberately concealed from him.

93.    On May 13, 2022, Pina-Nieves sent an email transmitted via interstate or foreign commerce to González-Castellanos, Coll-Fernández, and another confirming that he would receive 2% of the publishing share in the song "Relación (Remix)," taken from Los Cangris' share. Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

94.    On July 19, 2022—after Pina-Nieves was incarcerated in federal prison—Coll-Fernández sent an email transmitted via interstate or foreign commerce to González-Castellanos stating that Pina-Nieves and his publisher, Los Magnifikos, had a 7.5% publishing share in the song "Mayor Que Usted." Coll-Fernández did not send the email to Ayala-Rodríguez. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

95.    On September 15, 2022, the copyright registration for the song "Runaway" was filed with the U.S. Copyright Office, listing Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

96.    On November 2, 2022, Coll-Fernández sent an email transmitted through interstate or foreign commerce to González-Castellanos and others reflecting that Pina-Nieves had a 10% publishing share in the song "La Rompe Corazones." Ayala-Rodríguez was not included. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

97.     On November 3, 2022, the copyright registration for the song "Bella y Sensual" was filed with the U.S. Copyright Office, listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

98.     On December 8, 2022, the copyright registration for the song "El Desorden" was filed with the U.S. Copyright Office, listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

99.     On December 13, 2022, the copyright registration for the song "Inolvidable (Remix)" was filed with the U.S. Copyright Office, listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

100.    On January 19, 2023, the copyright registration for the song "La Rompe Corazones" was filed with the U.S. Copyright Office, listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and

belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

101.   On February 3, 2023, an email was transmitted through interstate or foreign commerce reflecting that Pina-Nieves was a song writer and assigned a 3% publishing share in "No Lo Trates;" a 5% publishing share in "De Vuelta Pa' La Vuelta;" a 15% publishing share in "Inédito;" a 7.5% publishing share in "Mayor Que Usted;" a 20% publishing share in "Me Felicito;" a 5% publishing share in "Métele al Perreo;" a 17% publishing share in "Que Mal Te Fue;" a 10% publishing share in "Que Mal Te Fue (Remix);" a 15% publishing share in "Ram Pam Pam;" a 5% publishing share in "Runaway;" a 22.5% publishing share in "Te Lo Dije ;" and a 10% publishing share in "Zona del Perreo." Pina-Nieves was not a co-author for any of these songs. At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

102.   On June 12, 2023, the copyright registrations for the songs "Vuelve," "Mayor Que Yo 3," "Llevo Tras De Ti," "Otra Cosa," "Todo Comienza En La Disco," "Perdido Por El Mundo," and "Zum Zum Zum," were filed with the U.S. Copyright Office, each listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the works, and upon information and belief, the registrations' filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

103.   On September 14, 2023, Coll-Fernández sent an email transmitted through

interstate or foreign commerce to another individual stating that Pina-Nieves, through his publishing company, Los Magnifikos, had a 20% publishing share in the song "Te Lo Dije." At no time did Ayala-Rodríguez consent to this assignment, which was deliberately concealed from him.

104.    On August 6, 2024, the copyright registration for the song "Buena Vida" was filed with the U.S. Copyright Office, listing Gasolina Publishing Co. as a copyright claimant and identifying Pina-Nieves as one of the copyright claimants and authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

105.    On November 27, 2024, the copyright registration for the song "Relación (Remix)" was filed with the U.S. Copyright Office, identifying Pina-Nieves as one of the authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

106.    On March 24, 2025, the copyright registration for the song "De Vuelta Pa' La Vuelta" was filed with the U.S. Copyright Office, identifying Pina-Nieves as one of the copyright claimants and authors despite Pina-Nieves having made no creative contribution to the work, and upon information and belief, the registration's filing, display, and maintenance in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce.

## FIRST CAUSE OF ACTION
### (Racketeer Influenced and Corrupt Organizations Act-Conspiracy)

The allegations in paragraphs 1-106 are incorporated herein by reference.

### The Enterprise

107.    Pina-Nieves,    González-Castellanos,    Prado-Galarza,    Coll-Fernández,    Los Magnifikos, Mafer, Gasolina Publishing Co., and WML operated through an association-in-fact enterprise designed to misappropriate publishing shares and divert royalties at the expense of rightful artists. This section describes the association-in-fact enterprise, through which the unlawful schemes were carried out.

108.    At various times relevant to this complaint, Pina-Nieves, González-Castellanos, Prado-Galarza, Coll-Fernández, Los Magnifikos, Mafer, Gasolina Publishing Co., WML, and others presently unknown, were members and associates of an association-in-fact enterprise whose members and associates engaged in wire fraud in violation of 18 U.S.C. § 1343;  interference with commerce by means of extortion in violation of 18 U.S.C. § 1951; and extortion chargeable under Puerto Rico law. The enterprise including its leadership, membership, and associates, constituted an "enterprise" as defined by 18 U.S.C. § 1961(4), that is, a group of individuals and entities associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate commerce.

### Purposes of the Enterprise

109.    The purposes of the enterprise included, but were not limited to, the following:

    a. To misappropriate publishing revenue that rightfully belonged to others, by

assigning fraudulent ownership interests and shares to Pina-Nieves and his affiliated entities despite Pina-Nieves having no creative contribution or legal claim.

b. To mentor Pina-Nieves and legitimize fraudulent publishing claims by embedding them into contractual and copyright records, Coll-Fernández, upon information and belief, acted to secure his continued influence and financial benefit within the enterprise.

c. To provide the administrative backbone of the fraudulent schemes by preparing and transmitting false split sheets and publishing allocations, González-Castellanos ensured concealment of misappropriation and, upon information and belief, preserved her position and financial advantages tied to the enterprise's success.

d. To facilitate and confirm fraudulent publishing arrangements and communications, Prado-Galarza reinforced the appearance of legitimacy and consensus among collaborators, while, upon information and belief, benefiting through sustained trust, influence, and economic gain derived from the scheme's profitability.

e. To insert Pina-Nieves' name onto split sheets, authorship documents, and related agreements in order to create a false appearance of co-authorship, thereby enabling Pina-Nieves to redirect royalties and licensing income.

f. To file false copyright registrations with the U.S. Copyright Office that listed Pina-Nieves as an author of works actually created by others, corrupting the

public copyright record and entrenching Pina-Nieves' ability to collect proceeds.

g. To divert royalty payments, licensing revenue, streaming income, and other proceeds derived from songs authored by others from Plaintiffs to Pina-Nieves and his controlled entities, enriching Pina-Nieves through the unlawful capture of publishing proceeds.

h. To exploit interstate and foreign wires, including email communications and online copyright filings, to execute, conceal and expand the fraudulent schemes by ensuring that rightful authors remained unaware of Pina-Nieves' misappropriation of their works' proceeds.

i. To exert control over the dissemination of information regarding publishing shares and allocations, deliberately concealing these manipulations from Ayala-Rodríguez in order to prevent detection and perpetuate the scheme.

j. To silence and undermine rightful authors by preventing them from discovering the fraud through concealment, misrepresentation, and misuse of official copyright records, thereby depriving them of the opportunity to enforce their rights.

k. To carry out a pattern of fraudulent conduct by repeatedly inserting Pina-Nieves' name as an author on works to which he contributed nothing, beginning with other artists before Ayala-Rodríguez and continuing with Ayala-Rodríguez and others thereafter—demonstrating that Ayala-Rodríguez was not the first victim of the schemes, but rather one of many targeted through the same

ongoing and systematic fraud, evidencing the continuity of racketeering activity.

l. To exploit the vulnerability of young artists from humble beginnings, who lacked experience in the music industry, by using personal trust, friendship, and promises of advancement as tools to manipulate them into surrendering control of their works and revenues.

m. To consolidate financial and contractual control by occupying the self-proclaimed roles of manager, booking agent, and label simultaneously, thereby centralizing all decision-making and revenue streams in Pina-Nieves and the corporations.

n. To divert publishing royalties, revenues, and recording proceeds owed to artists concealing, withholding, or misreporting payments, while maintaining the appearance of legitimate business operations.

o. To enrich Pina-Nieves by providing artists with material benefits such as cars and houses titled in his own name, only to reclaim those assets as a means of punishment, coercion, and continued dominance when artists resisted or questioned his authority.

p. To maintain dependency and control by positioning Pina-Nieves as the sole "bank" for artists, where all advances, payments, and miscellaneous expenses flowed through him, allowing him to dictate terms and withhold funds at will.

q. To silence and deter artists from leaving Pina-Nieves' orbit by subjecting them to financial ruin, reputational harm, and blacklisting within the music industry,

including cutting them off from performance opportunities and professional collaborations.

r. To maintain control over artists and associates through fear, intimidation, and violence.

s. To unlawfully enrich members of the enterprise by withholding or retaining monies owed to artists.

t. To suppress dissent and prevent artists from asserting contractual or legal rights.

u. To protect and expand the enterprise's influence in the music industry by deterring opposition.

v. To use threats and acts of violence to ensure compliance with the enterprise's demands.

w. To perpetuate a system where artists were denied knowledge of royalties, publishing rights, and standard industry practices, ensuring that their lack of understanding of music business structures would allow Pina-Nieves to continue extracting value unchecked.

## Means and Methods of the Enterprise

110. For purposes of this Complaint, the "means and methods" of the enterprise refers to the specific mechanisms, actions, and coordinated steps that the Defendants employed to achieve the unlawful purposes of the enterprise. The members and associates of the enterprise—including but not limited to Defendants—carried out the enterprise's purposes by employing the following means and methods:

a. Using emails transmitted via interstate or foreign commerce to prepare,

circulate, and confirm split sheets that assigned ownership percentages in songs authored by Ayala-Rodríguez with others to Pina-Nieves, despite Pina-Nieves' lack of creative contribution, without Ayala-Rodríguez's knowledge or consent, and directly reducing Plaintiffs' rightful publishing share.

b. Signing or causing others to sign split agreements, contracts, and related authorship documents on behalf of Los Cangris, Ayala-Rodríguez, or other collaborators without authorization, creating the false appearance that Plaintiffs intended to transfer ownership interests or co-authorship to Pina-Nieves.

c. Preparing and filing copyright registration applications with the U.S. Copyright Office that falsely named Pina-Nieves as an author or co-author of works to which he contributed nothing, thereby embedding fraudulent claims into the official public record and reinforcing Pina-Nieves' control over publishing revenue.

d. Filing copyright registration applications that designated Pina-Nieves—or entities he owned, controlled, or influenced, such as Los Magnifikos, and Gasolina Publishing Co.—as the copyright claimant, despite Pina-Nieves having no lawful ownership, in order to solidify the appearance of legitimacy and facilitate diversion of royalties.

e. Upon information and belief, assigning and transferring Pina-Nieves' purported ownership interests in songs through corporate entities and other intermediaries and prevent Plaintiffs from detecting or recovering the revenues.

f. Delaying registration of songs until long after their creation, publication, or

commercial success, opportunistically inserting Pina-Nieves' false authorship claims once the market value of the works had been established.

g. Repeating this same pattern of conduct with other artists before Ayala-Rodríguez and thereafter, demonstrating that Plaintiffs were not the first victims of the schemes, but one of many targeted through repeated and systematic fraud, evidencing the continuity of racketeering activity.

h. Using friendship, emotional manipulation, and the appearance of mentorship to gain artists' trust and secure their reliance for financial and professional decisions.

i. Centralizing all income streams—including bookings, advances, royalties, and label payments—under Pina-Nieves' control and selectively releasing payments to maintain dependence.

j. Providing partial advances for concerts and then deducting those amounts from later payments, thereby creating confusion, debt-like obligations, and financial reliance on Pina-Nieves.

k. Refusing to pay royalties for recordings and withholding other legitimate revenues, while justifying nonpayment through excuses, delays, or fabricated explanations.

l. Placing vehicles, houses, and other assets nominally "given" to artists under Pina Nieves' own name, and repossessing them at will as a form of coercion or retaliation.

m. Maintaining the illusion of professional legitimacy through office settings,

meetings, and superficial hospitality, which obscured the fraudulent and coercive nature of the enterprise's operations.

n. Exploiting artists' lack of sophistication in publishing and royalty systems to insert false authorship claims, redirect publishing shares, and deprive artists and their publishers of revenues.

o. Retaliating against artists who questioned or resisted Pina-Nieves' control by cutting off payments, damaging their reputations, and using his influence to prevent them from obtaining bookings or label support elsewhere.

p. Brandishing firearms during meetings to assert dominance and deter dissent.

q. Humiliating or physically assaulting individuals in front of others to make examples of them.

r. Leveraging Pina-Nieves' physical stature and strength to create an atmosphere of constant threat.

s. Using violence, threats of violence, and retaliation—sometimes executed through others—to enforce compliance.

t. Exploiting this climate of fear to withhold or retain monies owed to artists.

u. Communicating that resistance would result in severe personal and professional consequences.

v. Colluding with associates to condone and perpetuate violent tactics as a means of control.

**Racketeering Conspiracy**

111.    Defendants engaged in a long-running conspiracy to misappropriate publishing shares and divert royalties. Namely, beginning no later than 2004, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Defendants, and others presently unknown, being persons employed by and associated with the enterprise, as described more fully in paragraphs 107-110, which engaged in, and the activities of which affected, interstate, and foreign commerce, knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, conducted and participated, directly, and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and 1961(5), consisting of multiple acts under:

   a.   18 U.S.C. § 1343 (relating to wire fraud);

   b.   18 U.S.C. § 1951 (relating to interference with commerce, extortion); and

   c.   Extortion chargeable under Puerto Rico law.

112.    To carry out their fraudulent schemes and unlawfully divert publishing shares and royalties, the Defendants engaged in a series of deliberate acts and coordinated steps, each contributing to the operation and success of the enterprise. Specifically, in furtherance of the racketeering conspiracy, and to effect the object thereof, Defendants and their co-conspirators committed and caused to be committed in the District of Puerto Rico and elsewhere the overt acts described more fully in paragraphs 46-106, among others, on or about the dates specified, all in violation of 18 U.S.C. §§ 1962(c), 1962(d), and 1964.

113.    "Under the Copyright Act, transferring copyright ownership requires (1) 'an

instrument of conveyance, or a note or memorandum of the transfer' (2) that is 'in writing' (3) and 'signed by the owner of the rights conveyed.'" *Cortés-Ramos v. Martin-Morales*, No. 21-1374 (SCC), 2022 U.S. Dist. LEXIS 140897, at *15 (D.P.R. Aug. 8, 2022) (citing 17 U.S.C. § 204(a)).

114. The Defendants and co-conspirators achieved their purpose of depriving Plaintiffs and others of rights under Copyright Law and unlawfully assigning them to Pina-Nieves' or the entities controlled by him by working together as corporate representatives, attorneys, mentors and advisors, to give industry players and performance rights organizations the appearance that their actions were authorized by Ayala Rodríguez, when in fact they were not. By working together to give legitimacy to documents executed with, or provided to, third parties, they succeeded in hiding the fact that such documents, including purported copyright assignments, were not authorized by the rightful copyright owner(s).

**Defendants' Roles and Participation in the Enterprise and Conspiracy**

115. Each Defendant played a distinct and indispensable role in the enterprise, with their actions and positions critical to achieving its purposes and executing the means and methods by which the schemes to misappropriate publishing shares and divert royalties were carried out.

116. Pina-Nieves was the central architect and driving force of the enterprise, orchestrating fraudulent schemes to unlawfully insert himself into the authorship and publishing rights of songs he did not write. Exploiting his position as a self-proclaimed manager, booking agent, and label, Pina-Nieves consolidated complete control over

artists' finances, often presenting himself as their only source of payment or credit. He used friendship and emotional leverage to manipulate vulnerable artists—many from humble beginnings with little knowledge of royalties or industry practices—enticing them with advances on concerts, cars, and houses that remained titled in his name and could be taken away at will to enforce loyalty. Pina-Nieves created and maintained a climate of fear through physical intimidation, acts of violence, and the brandishing of firearms to assert dominance and deter dissent. He exploited this environment to unlawfully withhold monies owed to artists, using threats, violence, and retaliation—sometimes through intermediaries—to prevent them from asserting their rights. Accordingly, Pina-Nieves played a central role in the systematic exploitation of artists under his control. His strategy was to identify each individual's vulnerabilities and exploit them for his own benefit. Pina-Nieves was highly skilled at manipulating emotions, projecting an image of friendship while, in reality, taking advantage of the trust placed in him. Through tactics of intimidation and the creation of co-dependent relationships, Pina-Nieves sought to control not only the artists' professional careers but also their finances and personal lives. At times, he even went so far as to isolate them from others, reinforcing his dominance and ensuring the continuity of his control scheme. Pina-Nieves coordinated with others— including Coll-Fernández, González-Castellanos, and Prado-Galarza—to manipulate split sheets, circulate false publishing allocations through interstate emails, and deliberately exclude Ayala-Rodríguez from communications that would have exposed the schemes. Each split sheet reflected a publishing share in Pina Nieves' favor, taken directly from Plaintiffs' percentage, despite Pina-Nieves' lack of creative contribution. He

entrenched these fabricated shares by causing copyright registrations to be filed with the U.S. Copyright Office falsely naming him as an author. Through these acts, Pina-Nieves transformed fabricated allocations into seemingly legitimate legal entitlements, deceiving future rights holders, diverting royalties to himself through publishing companies Mafer and Los Magnifikos. His role was deliberate, central, and indispensable—designing the fraud, directing its execution, leveraging his financial stranglehold over artists to silence dissent, and ensuring that he remained the primary financial beneficiary of the enterprise.

117.    Coll-Fernández served as Pina-Nieves' right-hand man and was responsible for "dirty work" that kept the operation running. When Pina-Nieves' father passed away, leaving him young and inexperienced in the music industry, it was Coll who stepped in as a mentor. He taught Pina-Nieves the intricacies of the business and guided him through its inner workings, ultimately shaping the foundation of the power and influence Pina-Nieves would later wield. Coll-Fernández played a supporting but essential role in the enterprise by legitimizing and disseminating Pina-Nieves' fraudulent publishing claims through written communications transmitted via interstate commerce. Coll-Fernández knowingly participated in the schemes by sending and circulating emails that documented inflated publishing shares for Pina-Nieves and his publishing company, Mafer, while simultaneously reducing Plaintiffs' rightful interests and deliberately omitting Ayala-Rodríguez from the communications. In particular, Coll-Fernández confirmed false allocations of publishing rights in songs such as "Inédito," "Me Felicito," "Que Mal Te Fue," "La Rompe Corazones," and others thereby memorializing and giving apparent legitimacy to Pina-Nieves' fabricated authorship and publishing shares. By acting as a

conduit of false information, Coll-Fernández lent credibility to the fraudulent split sheets and reinforced the appearance of consensus among collaborators, while ensuring Ayala-Rodríguez remained unaware of the misappropriation. His conduct was integral to the functioning of the enterprise, as it allowed Pina-Nieves' fraudulent claims to become embedded in the chain of contractual and copyright documentation that later diverted royalties away from Plaintiffs and in favor of Pina-Nieves. Coll-Fernández also actively supported and perpetuated the coercive environment that Pina-Nieves created by endorsing Pina-Nieves's conduct and signaling that resistance would result in severe personal and professional consequences.

118.    González-Castellanos served as a key facilitator of the enterprise by repeatedly documenting and circulating split sheets and publishing allocations that falsely granted Pina-Nieves publishing shares he did not earn, while reducing Plaintiffs' rightful percentages and excluding Ayala-Rodríguez from all relevant communications. Acting as an administrative coordinator, González-Castellanos memorialized fraudulent percentages in multiple songs and transmitted these false records through interstate commerce to collaborators such as Pina-Nieves, and Prado-Galarza, but not to Ayala-Rodríguez. By preparing, transmitting, and confirming split sheets that reflected Pina-Nieves' fabricated interests, González-Castellanos gave the schemes a veneer of legitimacy and entrenched the false allocations into the business records of the works. González-Castellanos' repeated acts of omission—deliberately leaving Ayala-Rodríguez out of the communications—were just as critical as the affirmative misrepresentations, ensuring that Ayala-Rodríguez remained unaware of the dilution of Plaintiffs' publishing

shares. Ayala-Rodríguez's consent was required for any such dilution, making these misrepresentations and omissions particularly deceptive and harmful. Through these coordinated actions, González-Castellanos provided the administrative backbone of the schemes, enabling Pina-Nieves' fraudulent claims to be embedded in the publishing chain and later reflected in copyright registrations and royalty distributions.

119.    Prado-Galarza functioned as an enabler of the enterprise by formally executing agreements and transmitting documents that embedded Pina-Nieves' fraudulent publishing claims into binding contracts, thereby giving them an appearance of legal validity. Prado-Galarza signed critical agreements—such as the "Main Title Composition Agreement" and "Memorandum of Understanding" for the song "Buena Vida (Remake)"—on behalf of Los Cangris, El Cartel, and Ayala-Rodríguez, without any authorization from Ayala Rodríguez. By doing so, Prado-Galarza falsely memorialized Pina-Nieves as a songwriter and diverted publishing shares away from Plaintiffs. Prado-Galarza also distributed these executed agreements through interstate commerce, copying other collaborators but deliberately excluding Ayala-Rodríguez, ensuring that Ayala-Rodríguez remained unaware of the fraudulent allocations. In addition to signing on behalf of multiple parties without authorization, Prado-Galarza transmitted documents that confirmed Pina-Nieves' inflated shares in songs further cementing the schemes' false narrative. Through these actions, Prado-Galarza, who upon information and belief at the time acted as an attorney for Pina-Nieves and his affiliated entities, provided the operational and contractual support that allowed Pina-Nieves' fraudulent claims to be institutionalized    within    formal    music    industry    documentation,    making    the

misappropriation of Plaintiffs' publishing rights appear legitimate to outside parties and future rights holders.

120.  Los Magnifikos operated as one of the publishing vehicles through which Pina-Nieves funneled and legitimized his fraudulent claims to authorship and publishing rights. Although Pina-Nieves had no genuine creative contribution to the songs, Los Magnifikos was repeatedly listed in split sheets, agreements, and email communications as the publishing entity entitled to a percentage of royalties—in allocations carved out of Plaintiffs' rightful share. For example, Los Magnifikos was assigned publishing shares in songs such as "Mayor Que Usted," "Todo Comienza En La Disco," and "De Vuelta Pa' La Vuelta," despite there being no basis for such claims. By serving as the corporate repository for these illegitimate interests, Los Magnifikos provided the infrastructure necessary to disguise Pina-Nieves' fraudulent claims as legitimate business arrangements, creating the outward appearance that a recognized publisher held valid rights. This structure not only facilitated the redirection of royalties away from Plaintiffs but also made the fraudulent allocations more difficult to detect and unwind, as they were embedded in the industry's contractual and administrative framework. Through Los Magnifikos, Pina-Nieves ensured that the schemes could systematically channel ill-gotten publishing shares into royalty streams, thereby sustaining and entrenching the enterprise's fraudulent operation.

121.  Mafer served as another publishing vehicle through which Pina-Nieves advanced and concealed his fraudulent claims to authorship and publishing rights. Time and again, Mafer appeared in split sheets, copyright registrations, and email communications as the

publisher assigned a portion of royalties on songs where Pina-Nieves had made no legitimate contribution. For instance, Mafer was designated as the publishing entity for Pina-Nieves' fabricated shares in songs such as "Otra Cosa" and "Buena Vida (Remake)," among others, with these allocations carved directly out of Plaintiffs' rightful publishing percentage. By routing these false claims through Mafer, Pina-Nieves gave his schemes a façade of legitimacy, making it appear that a recognized publishing company held valid interests in the works. This not only redirected revenue streams away from Plaintiffs but also embedded the fraud in industry-standard documentation, making it more difficult for future rights holders or administrators to detect. In practice, Mafer functioned as a crucial instrument in transforming Pina-Nieves fabricated authorship into royalty entitlements, thereby sustaining the fraudulent enterprise and cementing Pina-Nieves wrongful financial gain.

122.   Gasolina Publishing Co. functioned as the copyright claimant entity that Pina-Nieves used to solidify and institutionalize his fraudulent authorship claims across numerous songs. Beginning in 2022, a pattern emerged in which copyright registrations were filed with the U.S. Copyright Office listing Gasolina Publishing Co. as the copyright claimant while simultaneously identifying Pina-Nieves as an author, even though Pina-Nieves had made no legitimate creative contribution. Songs such as "Inolvidable (Remix)," "Bella y Sensual," "El Desorden," "La Rompe Corazones," "Vuelve," "Mayor Que Yo 3," "Llevo Tras De Ti," "Otra Cosa," "Todo Comienza En La Disco," "Perdido Por El Mundo," "Zum Zum Zum," and later "Buena Vida" were all registered in this manner, embedding Pina-Nieves' false authorship into the official federal record. By

placing Gasolina Publishing Co. in the role of claimant, Pina-Nieves created a structural mechanism to both validate his fraudulent stake and ensure that future royalty flows would be directed, at least in part, through his control. Gasolina Publishing Co. thus operated as a central instrument in the enterprise's schemes: it transformed Pina-Nieves' fabricated claims into seemingly official rights of record, deceived rights administrators and future purchasers, and entrenched the diversion of royalties away from Plaintiffs and toward Pina-Nieves' benefit.

123.   WML d/b/a Pina Records served as a vehicle through which Pina-Nieves' fraudulent claims were legitimized and embedded into contractual records. Although Ayala-Rodríguez never authorized Pina-Nieves to act on behalf of El Cartel or assign publishing rights to "No Lo Trates," Pina-Nieves signed a letter agreement on April 1, 2019, falsely claiming co-authorship and a 3% publishing share, and did so in WML's name. This agreement, circulated via email on January 29, 2020 to various parties but not to Ayala-Rodríguez, used WML's inclusion and apparent consent to reinforce the illusion that Pina-Nieves's claims were valid. By appearing in this document, WML's name and the signatures made on its behalf misled rights administrators and helped institutionalize the false interests, thereby advancing the enterprise's scheme to misappropriate publishing income regarding the song "No Lo Trates."

## Damages

124.   As a direct and proximate result of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiffs have suffered substantial economic damages, including the loss of publishing revenue and royalties diverted by Pina-Nieves and his affiliated entities from

songs authored by Ayala-Rodríguez with others, as well as costs incurred to investigate, expose, and remediate the fraudulent schemes. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seeks treble damages in an amount not less than $3,000,000, together with the costs of this suit and reasonable attorneys' fees, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Racketeer Influenced and Corrupt Organizations Act)

The allegations in paragraphs 1-124 are incorporated herein by reference.

### Racketeering

125.    Beginning no later than 2004, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Defendants, and others presently unknown, being persons employed by and associated with the enterprise, as described more fully in paragraphs 107-110, which engaged in, and the activities of which affected interstate and foreign commerce, knowingly and intentionally violated 18 U.S.C. § 1962(c), that is, conducted and participated, directly, and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and 1961(5), all in violation of 18 U.S.C. §§ 1962(c) and 1964.

### The Pattern of Racketeering Activity

126.    The pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and 1961(5), consisted of the following acts.

**Racketeering Acts 1-2**
**("Mayor Que Yo 3")**

127.    Beginning no later than April 27, 2015, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Los Magnifikos, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Mayor Que Yo 3." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 51 and 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|---|---|---|
| 1 | April 27, 2015 | Email reflecting that Pina-Nieves was assigned a 5% publishing share in the song "Mayor Que Yo 3" to his publishing company, Los Magnifikos |
| 2 | June 12, 2023 | Publishing of the copyright registration for the song "Mayor Que Yo 3" |

**Racketeering Acts 3-4**
**("Otra Cosa")**

128.    Beginning no later than January 11, 2017, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, Mafer, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Otra Cosa." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 52 and 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 3 | January 11, 2017 | Email fraudulently stating that Pina-Nieves and his publisher, Mafer, had a 30% publishing share in the song "Otra Cosa" |
| 4 | June 12, 2023 | Publishing of the copyright registration for the song "Otra Cosa" |

**Racketeering Acts 5-6**
**("Todo Comienza En La Disco")**

129.  Beginning no later than December 14, 2017, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Los Magnifikos, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Todo Comienza En La Disco." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 53 and 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 5 | December 14, 2017 | Email attaching a document that wrongfully allocated 7.5% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Todo Comienza En La Disco" |
| 6 | June 12, 2023 | Publishing of the copyright registration for the song "Todo Comienza En La Disco" |

**Racketeering Acts 7-9**
**("La Rompe Corazones")**

130.    Beginning no later than February 13, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "La Rompe Corazones." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 54, 96, and 100. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 7 | February 13, 2018 | Email wrongfully confirming that Pina-Nieves' publishing share for the song "La Rompe Corazones" came from Los Cangris' percentage |
| 8 | November 2, 2022 | Email fraudulently reflecting that Pina-Nieves had a 10% publishing share in the song "La Rompe Corazones" |
| 9 | January 19, 2023 | Publishing of the copyright registration for the song "La Rompe Corazones" |

**Racketeering Acts 10-11**
**("Bella y Sensual")**

131.    Beginning no later than February 13, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Bella y Sensual." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 54 and 97. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|---------------------|
| 10 | February 13, 2018 | Email wrongfully confirming that Pina-Nieves' publishing share for the song "Bella y Sensual" came from Los Cangris' percentage |
| 11 | November 3, 2022 | Publishing of the copyright registration for the song "Bella y Sensual" |

**Racketeering Acts 12-13**
**("Buena Vida")**

132.    Beginning no later than June 12, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Los Magnifikos, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Buena Vida." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 55 and 104. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 12 | June 12, 2018 | Emails fraudulently showing that Pina-Nieves held a 10% publishing share in the song "Buena Vida," and Pina-Nieves' publishing company for that song was Los Magnifikos |
| 13 | August 6, 2024 | Publishing of the copyright registration for the song "Buena Vida" |

**Racketeering Acts 14-17**
**("Zum Zum Zum")**

133.   Beginning no later than June 18, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Prado-Galarza, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Zum Zum Zum." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 56, 58-59, and 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 14 | June 18, 2018 | Email wrongfully documenting that Pina-Nieves was assigned a 20% publishing share in the song in "Zum Zum Zum" |
| 15 | June 19, 2018 | Email wrongfully memorializing that Pina-Nieves had a 20% publishing share in the song "Zum Zum Zum" |
| 16 | June 26, 2018 | Email wrongfully confirming that Pina-Nieves had a 20% publishing share in the song "Zum Zum Zum" |
| 17 | June 12, 2023 | Publishing of the copyright registration for the song "Zum Zum Zum" |

**Racketeering Acts 18-20**
**("Vuelve")**

134.    Beginning no later than June 18, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Prado-Galarza, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Vuelve." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 57, 64, and 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 18 | June 18, 2018 | Email wrongfully confirming that Pina-Nieves had a 10% publishing share in the song "Vuelve" |
| 19 | September 5, 2018 | Email reflecting that Pina-Nieves was assigned a 10% publishing share in the song "Vuelve" |
| 20 | June 12, 2023 | Publishing of the copyright registration for the song "Vuelve" |

**Racketeering Acts 21-22**
**("Buena Vida (Remake)")**

135.    Beginning no later than July 5, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, Prado-Galarza, Mafer, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Buena Vida (Remake)." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 60-61. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 21 | July 5, 2018 | Email directing González-Castellanos to sign a "Main Title Music Composition Agreement" for "Buena Vida (Remake)," fraudulently assigning Pina-Nieves and Mafer, a 10% publishing share and identifying Pina-Nieves as a songwriter |
| 22 | July 6, 2018 | Email attaching the "Main Title Composition Agreement" and "Memorandum of Understanding" for "Buena Vida (Remake)" wrongfully assigning a Pina-Nieves and Mafer, a 10% publishing share and identifying Pina-Nieves as a songwriter |

**Racketeering Acts 23-25**
**("El Desorden")**

136.    Beginning no later than August 2, 2018, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Prado-Galarza, González-Castellanos, Coll-Fernández, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "El Desorden." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 62-63 and 98. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 23 | August 2, 2018 | Email reflecting that Pina-Nieves was assigned an 11.68% publishing share in the split sheet for the song "El Desorden" |
| 24 | August 2, 2018 | Email fraudulently reflecting that Pina-Nieves was assigned an 11.68% publishing share in the split sheet for the song "El Desorden" |
| 25 | December 8, 2022 | Publishing of the copyright registration for the song "El Desorden" |

## Racketeering Acts 26-29
## ("Inolvidable (Remix)")

137.    Beginning no later than October 11, 2018, and continuing up to and including the

date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves,

González-Castellanos, Coll-Fernández, Prado-Galarza, Mafer, Gasolina Publishing Co.,

and others presently unknown, knowingly and willfully devised and intended to devise a

scheme and artifice to defraud, and to obtain money and property—specifically, a

publishing share and corresponding income for the song "Inolvidable (Remix)." This

scheme was carried out by means of materially false and fraudulent pretenses,

representations, and promises, through the exchange and execution of documents, emails,

and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed

above in paragraphs 65-67 and 99. For the purpose of executing, and attempting to

execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by

means of wire communication in interstate and foreign commerce the following writings,

signs, signals, pictures, and sounds, on or about the following dates, in the District of

Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 26 | October 11, 2018 | Email wrongfully confirming that, through Mafer, Pina-Nieves had a 5% publishing share in the song "Inolvidable (Remix)" |
| 27 | October 17, 2018 | Email fraudulently confirming that Pina-Nieves, through his publishing company, Mafer, had a 5% publishing share in the song "Inolvidable (Remix)" |
| 28 | November 27, 2018 | Email transmitting the "Songwriters' Split Agreement" for the song "Inolvidable (Remix)," which Pina-Nieves signed on behalf of Ayala-Rodríguez, that wrongfully allocated a 5% publishing |

| | | share in the song to Pina-Nieves through his publishing company, Mafer |
|---|---|---|
| 29 | December 13, 2022 | Publishing of the copyright registration for the song "Inolvidable (Remix)" |

### Racketeering Acts 30-33
### ("No Lo Trates")

138.    Beginning no later than July 31, 2019, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, WML, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "No Lo Trates." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 68, 75, 78, and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|---|---|---|
| 30 | July 31, 2019 | Email fraudulently reflecting that Pina-Nieves was assigned a 3% publishing share in the song "No Lo Trates" |
| 31 | January 29, 2020 | Email transmitting letter agreement for the song "No Lo Trates" which Pina-Nieves signed on behalf of El |

| | | Cartel and Pina Records and reflected that Pina-Nieves was a co-author of the song and had a 3% publishing share in the song |
| 32 | March 13, 2020 | Email fraudulently reflecting that Pina-Nieves had a 3% publishing share in the song "No Lo Trates" |
| 33 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 3% publishing share in "No Lo Trates" |

**Racketeering Acts 34-37**
**("Te Lo Dije")**

139.   Beginning no later than May 21, 2019, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, Prado-Galarza, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Te Lo Dije." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 69, 71, 101, and 103. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|---|---|---|
| 34 | May 21, 2019 | Email wrongfully confirming that Pina-Nieves had a |

|    |                    | 22.5% publishing share in the song "Te Lo Dije" |
|----|--------------------|--------------------------------------------------|
| 35 | June 6, 2019       | Email wrongfully reflecting that Pina-Nieves had a 22.5% publishing share in the song "Te Lo Dije" |
| 36 | February 3, 2023   | Email reflecting that Pina-Nieves was a song writer and assigned a 22.5% publishing share in "Te Lo Dije" |
| 37 | September 14, 2023 | Email fraudulently stating that Pina-Nieves, through his publishing company, Los Magnifikos, had a 20% publishing share in the song "Te Lo Dije" |

### Racketeering Acts 38-40
### ("Si Supieras")

140.    Beginning no later than May 22, 2019, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Si Supieras." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 70, 72, and 76. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 38  | May 22, 2019 | Email wrongfully stating that Pina-Nieves had a 10% publishing share in the song "Si Supieras" |

| 39 | June 6, 2019 | Email wrongfully stating that Pina-Nieves had a 10% publishing share in the song "Si Supieras" |
| 40 | September 12, 2019 | Email fraudulently confirming that Pina-Nieves had 10% publishing share in the song "Si Supieras" |

### Racketeering Acts 41-44
### ("Runaway")

141.    Beginning no later than June 19, 2019, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Prado-Galarza, and González-Castellanos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Runaway." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 73-74, 95, and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 41 | June 19, 2019 | Email reflecting that Pina-Nieves was assigned a 5% publishing share in the song "Runaway" |
| 42 | June 21, 2019 | Email fraudulently confirming that Pina-Nieves held a 5% publishing share in the song "Runaway" |
| 43 | September 15, 2022 | Publishing of the copyright registration for the song |

| | | "Runaway" |
|---|---|---|
| 44 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 5% publishing share in "Runaway" |

**Racketeering Acts 45-48**
**("Que Mal Te Fue")**

142.    Beginning no later than June 8, 2020, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Que Mal Te Fue." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 79, 83-84, and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|---|---|---|
| 45 | June 8, 2020 | Email fraudulently reflecting that Pina-Nieves had a 17% publishing share in the song "Que Mal Te Fue" |
| 46 | October 7, 2020 | Email fraudulently stating that Pina-Nieves had a 12% publishing share in the song "Que Mal Te Fue" |
| 47 | October 7, 2020 | Email fraudulently stating that Pina-Nieves had a 12% publishing share in the song "Que Mal Te Fue" |

| 48 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 17% publishing share in "Que Mal Te Fue" |
|----|------------------|------------|

**Racketeering Acts 49-50**
**("Dura (Remix)")**

143.   Beginning no later than August 11, 2020, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Dura (Remix)." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 81-82. For the purpose of executing, and attempting to execute, this scheme and artifice, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 49 | August 11, 2020 | Email documenting that Pina-Nieves had a publishing share in the song "Dura (Remix)" |
| 50 | August 12, 2020 | Email documenting that Pina-Nieves had a publishing share in the song "Dura (Remix)" |

**Racketeering Acts 51-53**
**("Que Mal Te Fue (Remix)")**

144.    Beginning no later than October 7, 2020, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Que Mal Te Fue (Remix)." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 83-84 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 51 | October 7, 2020 | Email fraudulently reflecting that Pina-Nieves had a 10% publishing share in the song "Que Mal Te Fue (Remix)" |
| 52 | October 7, 2020 | Email fraudulently reflecting that Pina-Nieves had a 10% publishing share in the song "Que Mal Te Fue (Remix)" |
| 53 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 10% publishing share in "Que Mal Te Fue (Remix)" |

**Racketeering Acts 54-56**
**("Relación (Remix)")**

145.    Beginning no later than May 13, 2022, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Relación (Remix)." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 80, 93, and 105. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 54 | May 13, 2022 | Email transmitting songwriter's split agreement for the song "Relación (Remix)" which wrongfully allocated a 2% publishing share to Pina-Nieves and his publisher, Los Magnifikos |
| 55 | May 13, 2022 | Email confirming that he would receive 2% of the publishing share in the song "Relación (Remix)," taken from Los Cangris' share |
| 56 | November 27, 2024 | Publishing of the copyright registration for the song "Relación (Remix)" |

**Racketeering Acts 57-59**
**("De Vuelta Pa' La Vuelta")**

146.    Beginning no later than December 11, 2020, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, González-Castellanos, Los Magnifikos and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "De Vuelta Pa' La Vuelta." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 85, 101, and 106. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 57 | December 11, 2020 | Email stating that Pina-Nieves and his publisher, Los Magnifikos, had a 5% publishing share of the song "De Vuelta Pa' La Vuelta" |
| 58 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 5% publishing share in "De Vuelta Pa' La Vuelta" |
| 59 | March 24, 2025 | Publishing of the copyright registration for the song "De Vuelta Pa' La Vuelta" |

**Racketeering Acts 60-61**
**("Inédito")**

147.    Beginning no later than February 3, 2021, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property— specifically, a publishing share and corresponding income for the song "Inédito." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 86 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 60 | February 3, 2021 | Email fraudulently stating that Pina-Nieves had a 15% publishing share in the song "Inédito" |
| 61 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 15% publishing share in "Inédito" |

**Racketeering Acts 62-63**
**("Ram Pam Pam")**

148.   Beginning no later than March 25, 2021, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Ram Pam Pam." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 87 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|---|---|---|
| 62 | March 25, 2021 | Email transmitting document fraudulently stating that Pina-Nieves and his publisher, Los Magnifikos, had a 15% publishing share in the song "Ram Pam Pam" |
| 63 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 15% publishing share in "Ram Pam Pam" |

**Racketeering Acts 64-65**
**("Súbele el Volumen")**

149.    Beginning no later than July 21, 2021, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Súbele el Volumen." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 88 and 90. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 64 | July 21, 2021 | Email reflecting that Pina-Nieves had a 5% publishing share in the song "Súbele el Volumen" |
| 65 | January 27, 2022 | Email fraudulently allocating a 5% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Súbele El Volumen" |

**Racketeering Acts 66-67**
**("Me Felicito")**

150.    Beginning no later than December 2, 2021, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Coll-Fernández, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Me Felicito." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 89 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 66 | December 2, 2021 | Email transmitting document that fraudulently reflected that Pina-Nieves had a 20% publishing share in the song "Me Felicito" |
| 67 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 20% publishing share in "Me Felicito" |

### Racketeering Acts 68-70
### ("Zona del Perreo")

151.    Beginning no later than February 28, 2022, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Zona del Perreo." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 91-92 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 68 | February 28, 2022 | Email transmitting a document that wrongfully allocated 10% publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the song "Zona del Perreo" |
| 69 | March 12, 2022 | Email transmitting a document that wrongfully identified Pina-Nieves as a writer and allocated a 10% publishing share to his publisher, Los Magnifikos, in the song "Zona del Perreo" |
| 70 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 10% publishing share in "Zona del Perreo" |

### Racketeering Acts 71-72
#### ("Mayor Que Usted")

152.    Beginning no later than July 19, 2022, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, González-Castellanos, Coll-Fernández, Los Magnifikos, and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Mayor Que Usted." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraphs 94 and 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 71 | July 19, 2022 | Email fraudulently stating that Pina-Nieves and his publisher, Los Magnifikos, had a 7.5% publishing share in the song "Mayor Que Usted" |
| 72 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 7.5% publishing share in "Mayor Que Usted" |

### Racketeering Act 73
### ("Métele al Perreo")

153.    Beginning no later than February 3, 2023, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Métele al Perreo." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraph 101. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 73 | February 3, 2023 | Email reflecting that Pina-Nieves was a song writer and assigned a 5% publishing share in "Métele al Perreo" |

### Racketeering Act 74
### ("Llevo Tras De Ti")

154.    Beginning no later than June 12, 2023, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised

and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Llevo Tras De Ti." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-Rodríguez, as detailed above in paragraph 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 74 | June 12, 2023 | Publishing of the copyright registration for the song "Llevo Tras De Ti" |

### Racketeering Act 75
### ("Perdido Por El Mundo")

155.    Beginning no later than June 12, 2023, and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Pina-Nieves, Gasolina Publishing Co., and others presently unknown, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property—specifically, a publishing share and corresponding income for the song "Perdido Por El Mundo." This scheme was carried out by means of materially false and fraudulent pretenses, representations, and promises, through the exchange and execution of documents, emails, and other records, without the knowledge or consent of Ayala-

Rodríguez, as detailed above in paragraphs 102. For the purpose of executing, and attempting to execute, this scheme and artifice, Defendants transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, pictures, and sounds, on or about the following dates, in the District of Puerto Rico and elsewhere, all in violation of 18 U.S.C. § 1343:

| Act | Date | Wire Communication |
|-----|------|--------------------|
| 75 | June 12, 2023 | Publishing of the copyright registration for the song "Perdido Por El Mundo" |

### Damages

156.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiffs have suffered substantial economic damages, including the loss of publishing revenue and royalties diverted by defendants from songs authored by Ayala-Rodríguez with others, as well as costs incurred to investigate, expose, and remediate the fraudulent schemes. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seeks treble damages in an amount not less than $3,000,000, together with the costs of this suit and reasonable attorneys' fees, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Puerto Rico Organized Crime Act)**

The allegations in paragraphs 1-156 are incorporated herein by reference.

157.    Beginning no later than 2004 and continuing up to and including the date of filing of this Complaint, in the District of Puerto Rico and elsewhere, Defendants, and others presently unknown, being persons employed by and associated with the enterprise, as defined in P.R. Laws Ann. tit. 25, § 971a(f), knowingly and intentionally violated P.R.

Laws Ann. tit. 25, § 971b(c), that is, conducted and participated, directly, and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in P.R. Laws Ann. tit. 25, §§ 971a(b) and 971a(i), consisting of multiple acts of larceny (*apropiación ilegal*).

158.   Defendants, acting individually and collectively, caused the commission of the racketeering acts described in paragraphs 127-155, all in violation of P.R. Laws Ann. tit. 25, §§ 971b(c) and 971h(d).

### Damages

159.   As a direct and proximate result of Defendants' violations of P.R. Laws Ann. tit. 25, § 971b(c), Plaintiffs have suffered substantial economic damages, including the loss of publishing revenue and royalties diverted by defendants from songs authored by Ayala-Rodríguez with others, as well as costs incurred to investigate, expose, and remediate the fraudulent schemes. Pursuant to P.R. Laws Ann. tit. 25, § 971h(d), Plaintiffs seeks treble damages in an amount not less than $3,000,000, together with the costs of this suit and reasonable attorneys' fees, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (Permanent Injunctive Relief)

The allegations in paragraphs 1-159 are incorporated herein by reference.

160.   Should Plaintiffs prevail on the merits of their claims, they will be entitled to permanent injunctive relief. Without such relief, Plaintiffs will continue to suffer irreparable harm because inaccurate authorship and ownership records remain embedded in official databases and industry systems, perpetuating the diversion of royalties and impairing Plaintiffs' ability to enforce their rights. Monetary damages alone cannot

remedy the ongoing injury caused by these false registrations and allocations.

161.    The balance of hardships favors Plaintiffs. Requiring Defendants to correct fraudulent records imposes no legitimate burden, as Defendants have no lawful claim to the publishing shares at issue, while failure to act will continue to harm Plaintiffs' economic and reputational interests. Granting the injunction will serve the public interest by ensuring the accuracy of copyright records, promoting transparency in royalty allocations, and protecting the rights of legitimate authors.

162.    Accordingly, upon entry of judgment in Plaintiffs' favor, Plaintiffs respectfully request that this Court issue a permanent injunction compelling Defendants to take all necessary steps to correct and restore accurate authorship and ownership information with PROs, including ASCAP, BMI, and SESAC, and with the U.S. Copyright Office, for all works identified in this Complaint. Plaintiffs further request that Defendants be ordered to notify all relevant third parties of the corrections and provide written certification of compliance within thirty (30) days of the Court's orders.

## **JURY DEMAND**

163.    Plaintiffs demand trial by jury of all causes of action so triable

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendants, and:

a.    Award treble damages pursuant to 18 U.S.C. § 1964(c) and P.R. Laws Ann. tit. 25, § 971h(d), in an amount to be proven at trial but not less than $3,000,000, together with costs of suit, reasonable attorneys' fees, and pre- and post-judgment interest;

b.  Award punitive damages on the state law claim pursuant to P.R. Laws Ann. tit. 31, § 10803, in an amount not to exceed the total damages caused;

c.  Order Defendants to take all necessary steps to correct and restore accurate authorship and ownership information for the works identified in this Complaint with PROs, including ASCAP, BMI, and SESAC, and with the U.S. Copyright Office;

d.  Order Defendants to notify all relevant third parties of such corrections and provide written certification of compliance to Plaintiffs within thirty (30) days of the Court's order;

e.  Grant such other and further relief as the Court deems just and proper.

**WE HEREBY CERTIFY** that on this date, the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

**RESPECTFULLY SUBMITTED** In San Juan, Puerto Rico, this 29th day of November, 2025.

*Attorneys for Los Cangris*



www.CSTLAWPR.com
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

*s/VÍCTOR O. ACEVEDO-HERNÁNDEZ*
USDC-PR No. 227813
vacevedo@cstlawpr.com

*s/JUAN J. CASILLAS-AYALA*
USDC-PR No. 218312
jcasillas@cstlawpr.com

**ANTONETTI MONTALVO &
RAMIREZ-COLL**
*Counsel for Plaintiff Ayala*
P. O. Box 13128
San Juan, PR  00907
Tel. (787) 977-0312
Fax: (787) 977-0323

**s/ Jose L. Ramirez- Coll**
JOSE L. RAMIREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com