## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LOS CANGRIS, INC.; RAMON L. AYALA RODRIGUEZ, A/K/A "RAYMOND/DADDY YANKEE/BIG BOSS/DY",**
Plaintiffs,

v.

**RAFAEL A. PINA-NIEVES, a/k/a "Raphy Pina;" ANDRES A. COLL-FERNÁNDEZ; MIREDDYS GONZÁLEZ-CASTELLANOS; EDWIN PRADO-GALARZA; LOS MAGNIFIKOS INC., d/b/a Los Magnifikos Music Publishing Inc., Los Magnifikos Music Publishing, and Los Magnifikos Music; WORLD MUSIC LATINO CORP., d/b/a Pina Records; PRENDI PUBLISHING TRUST, d/b/a Gasolina Publishing Co.; MAFER MUSIC PUBLISHING INC.; JOHN DOE; JANE DOE.,**
Defendants.

CIVIL NO. 25-1650 (GMM)

**Nature of Claims:** Racketeer Influenced and Corrupt Organizations Act; Puerto Rico Organized Crime Act; Permanent Injunctive Relief

Jury Trial Demanded

## RICO STATEMENT

**Come now** Plaintiffs Los Cangris, Inc. ("Los Cangris") and Ramón Ayala-Rodríguez ("Ayala-Rodríguez"), by and through undersigned counsel (collectively "Plaintiffs"), and pursuant to this Court's Order at Docket No. 21, respectfully submit their RICO Statement. Together with the Complaint, this Statement sets forth the facts upon which Plaintiffs rely to assert their RICO[1] claim, following the "reasonable inquiry" required under Rule 11 of the Federal Rules of Civil Procedure.

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d). If you allege violations of more than one Section 1962 subsection, treat each as separate RICO claim.**

   Plaintiffs are alleging a violation of:

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*.

- 18 U.S.C. §§ 1962(c) and (d) (First Cause of Action: RICO Conspiracy [conspiracy to violate Section 1962(c)]) and

- 18 U.S.C. § 1962(c) (Second Cause of Action: Substantive RICO Claim).

**2. List each defendant and state the alleged misconduct and basis of liability of each defendant.**

The specific predicate acts attributable to each Defendant are set forth in Section 5, incorporated herein by reference. In this section, Plaintiffs describe the general categories of racketeering activity in which each Defendant participated. This overview is intended to contextualize the individual predicate acts by identifying the types of fraudulent and extortionate conduct that formed part of the enterprise's ongoing schemes.

- **Defendant 1: Rafael A. Pina-Nieves, a/k/a "Raphy Pina" ("Pina-Nieves")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343; extortion in violation of 18 U.S.C. § 1951; and extortion chargeable under Puerto Rico law.

Basis of Liability: Pina-Nieves was the architect and leader of the enterprise. He designed and directed fraudulent schemes to unlawfully claim authorship and publishing rights for songs he did not write. He manipulated artists through financial control, intimidation, and threats, coordinated false split sheets[2] and copyright registrations, and diverted royalties to entities under his control, embedding fraud into official records and through interstate communications.

- **Defendant 2: Andrés A. Coll-Fernández ("Coll-Fernández")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343; extortion in violation of 18 U.S.C. § 1951; and extortion chargeable under Puerto Rico law.

---

[2] The term "split sheets" refers to documents used in the music industry that formally record who contributed to a song and the contributors' agreed-upon ownership percentages.

Basis of Liability: Coll-Fernández legitimized fraudulent publishing claims through interstate communications, circulated emails confirming inflated publishing shares for Pina-Nieves, and excluded Ayala-Rodríguez from communications. His actions reinforced false allocations and embedded them in industry documentation and reinforcing the enterprise's fraudulent and coercive environment.

- **Defendant 3: Mireddys González-Castellanos ("González-Castellanos")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: González-Castellanos prepared and transmitted split sheets that falsely granted Pina-Nieves publishing shares while omitting Ayala-Rodríguez from communications. Her conduct entrenched fraudulent allocations into official records and enabled royalty diversion.

- **Defendant 4: Edwin Prado-Galarza ("Prado-Galarza")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: Prado-Galarza executed unauthorized agreements and transmitted documents falsely memorializing Pina-Nieves as a songwriter. Acting as an attorney for Pina-Nieves, he embedded fraudulent claims into binding contracts, giving them purported legal validity and ensuring royalties were diverted from Plaintiffs.

- **Defendant 5: Los Magnifikos Inc. d/b/a Los Magnifikos Music Publishing, Inc., Los Magnifikos Music Publishing, and Los Magnifikos Music ("Los Magnifikos")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: Los Magnifikos operated as a publishing vehicle for Pina-Nieves' fraudulent claims, appearing in split sheets and agreements as a purportedly legitimate publisher, disguising fraud as lawful business and facilitating royalty diversion.

- **Defendant 6: World Music Latino Corp., d/b/a Pina Records ("WML")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: WML legitimized Pina-Nieves' false publishing claims through agreements such as the April 1, 2019 letter for "No Lo Trates," circulated via interstate email. These agreements misled rights administrators and embedded fraudulent interests into industry-standard documentation. Pina-Nieves and Coll-Fernández used WML and their WML email account to circulate the falsified split sheets.

- **Defendant 7: Prendi Publishing Trust d/b/a Gasolina Publishing Co.**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: Gasolina Publishing Co. institutionalized Pina-Nieves' fraudulent authorship claims by filing copyright registrations listing him as an author. These filings embedded false rights into federal records, deceiving rights administrators and ensuring future royalty flows to the enterprise.

- **Defendant 8: Mafer Music Publishing, Inc. ("Mafer")**

Pattern of Racketeering Activity: Wire fraud in violation of 18 U.S.C. § 1343.

Basis of Liability: Mafer served as a publishing vehicle for Pina-Nieves' fabricated claims. By appearing in split sheets and copyright registrations, Mafer gave the fraud a façade of legitimacy, embedding false interests into industry documentation and sustaining the enterprise's unlawful financial gain.

3. **List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

Currently, Plaintiffs do not know the identity of other wrongdoers. Plaintiffs reserve the right to amend their Complaint if any additional wrongdoers are uncovered in the course of discovery in this action.

**4. List the alleged victims and state how each victim allegedly was injured.**

The victims are Los Cangris and Ayala-Rodríguez (collectively "Plaintiffs"). As a direct and proximate result of Defendants' conduct, Plaintiffs suffered reduced publishing ownership, diverted royalties, and a loss of control over the exploitation of their music catalog. The injuries include historical underpayments, ongoing diversion of revenue, and the administrative and financial burdens of correcting official records and restoring rightful ownership and payment allocations with the United States Copyright Office, publishers, performance rights organizations, and other industry stakeholders. Absent court intervention and corrective relief, the misdirection of royalties and the resulting harm to Plaintiffs' economic interests will continue.

**5. Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. The description of the pattern of racketeering activity shall include the following information:**
   **a. List the alleged predicate acts and the specific statutes allegedly violated;**
   **b. Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act;**
   **c. If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under U.S.C. Title 11, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place, and contents of the alleged misrepresentation or omissions, and the identity of persons to whom and by whom the alleged misrepresentations or omissions were made;**

The pattern of racketeering activity consists of coordinated schemes to defraud Plaintiffs by unlawfully obtaining publishing percentages and the corresponding royalties that rightfully belonged to them. To carry out and advance these schemes, Defendants caused wire communications to be transmitted in interstate and foreign commerce. The schemes harmed multiple victims, and several individuals were also subjected to acts of extortion in violation of both federal and Puerto Rico law.

Plaintiffs first discovered the fraudulent schemes after Ayala-Rodríguez assumed management of Los Cangris on December 20, 2024. On that same date, González-Castellanos agreed to transfer control of Los Cangris to Ayala-Rodríguez—an agreement later memorialized in a state court judgment. Subsequently, on December 30, 2024, González-Castellanos and her sister—who, until December 20, 2024, had served as an officer of both El Cartel and Los Cangris—provided access credentials for the @cartelrecord.com domain and related e-mail accounts, which Ayala had not been able to access until then. As a result, Ayala-Rodríguez gained access to emails sent to and from the @cartelrecords.com accounts, including but not limited to, the one used by González-Castellanos to conduct business on behalf of Los Cangris. A review of those emails in 2025 revealed that Plaintiffs' publishing interests had been systematically falsified, reduced, and diverted through coordinated efforts by Pina-Nieves and his associates.

These schemes were executed through manipulated split sheets, fraudulent registrations, and concealed contractual modifications designed to misappropriate publishing rights and siphon income away from Plaintiffs. Emails, online filings, and other electronic transmissions were used to execute and conceal these misappropriations, embedding false claims into official and industry records. By exploiting trust and the reliance of registries and publishers on truthful submissions, Defendants transformed fabricated allocations into recognized ownership positions, thereby institutionalizing fraud and redirecting revenue streams.

At the core of this misconduct was the unauthorized allocation of publishing shares to Pina-Nieves, who made no creative contribution to the works at issue and lacked any mutual intent to be a co-author. These allocations were unearned and unauthorized, reducing Plaintiffs' rightful shares and diminishing their income. Defendants concealed these manipulations from Ayala-Rodríguez, ensuring the scheme remained undetected while royalties continued to flow to Pina-

Nieves and his companies, Mafer and Los Magnifikos. Over time, the scheme expanded through fraudulent filings with the U.S. Copyright Office, further entrenching false ownership claims and enabling the ongoing diversion of royalties. As a direct result, Plaintiffs suffered significant financial harm, loss of control over their music catalog, and the administrative burden of correcting official records. Without judicial intervention, these misappropriations will persist, continuing to damage Plaintiffs' economic interests. The following are the predicate acts:

- In or about 2004, at the "Coliseo de Puerto Rico José Miguel Agrelot," third parties acting on behalf of Pina-Nieves knowingly and intentionally threatened Juan A. Ortiz-García, a/k/a "Sir Speedy," with physical harm. These threats were made because Ortiz-García insisted on receiving payment for the distribution of his album "Dando Cocotazos," which Pina-Nieves was handling. The threats were intended to, and did, place Ortiz-García in fear of physical injury, thereby wrongfully inducing his consent to forgo or delay payment owed to him. Defendants' conduct was undertaken to obtain property—specifically, money owed for album distribution—through the wrongful use of actual and threatened force and fear, and such conduct obstructed, delayed, and affected interstate and foreign commerce because the distribution of the album and the money generated from such distribution occurred over interstate and foreign commerce. This predicate act constitutes extortion in violation of 18 U.S.C. § 1951 (Hobbs Act) and extortion under Puerto Rico law.

- In or about 2004, three individuals—two of whom brandished firearms—acting on behalf of Pina-Nieves, knowingly and intentionally threatened Juan A. Ortiz-García, a/k/a "Sir Speedy," with physical harm. These threats were made because Ortiz-García insisted on receiving payment for the distribution of his album "Dando Cocotazos," which Pina-Nieves was handling. By brandishing firearms and threatening violence, these individuals

placed Ortiz-García in fear of physical injury, thereby wrongfully inducing his consent to forgo or delay payment owed to him. Defendants' conduct was undertaken to obtain property—specifically, money owed for album distribution—through the wrongful use of actual and threatened force and fear, and such conduct obstructed, delayed, and affected interstate and foreign commerce because the distribution of the album and the money generated from such distribution occurred over interstate and foreign commerce. This predicate act constitutes extortion in violation of 18 U.S.C. § 1951 (Hobbs Act) and extortion under Puerto Rico law.

- In or about 2005, at a nightclub in Ponce, individuals acting on behalf of Pina-Nieves knowingly and intentionally brandished a firearm and physically assaulted Juan A. Ortiz-García, a/k/a "Sir Speedy." These acts were committed because Ortiz-García continued to insist on receiving payment for the distribution of his album "Dando Cocotazos," which Pina-Nieves was handling. By using actual force and violence, and by brandishing a firearm, these individuals placed Ortiz-García in fear of further physical harm, thereby wrongfully inducing his consent to forgo or delay payment owed to him. Defendants' conduct was undertaken to obtain property—specifically, money owed for album distribution—through the wrongful use of actual and threatened force and fear, and such conduct obstructed, delayed, and affected interstate commerce because the distribution of the album and the money generated from such distribution occurred over interstate and foreign commerce. This predicate act constitutes extortion in violation of 18 U.S.C. § 1951 (Hobbs Act) and extortion under Puerto Rico law.

- On or about November 28, 2005, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Pina-Nieves knowingly and intentionally caused the filing

of copyright registrations with the U.S. Copyright Office for the musical works "Intro-implantando el 99," "Caminando contra el Viento," "Eddie Kaneca," "A puercos como tú," and "Un sábado gangsta." Each registration contained material misrepresentations by listing Pina-Nieves as both a copyright claimant and an author, despite Pina-Nieves having made no creative contribution to the works. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of these works. Upon information and belief, the filing, display, and maintenance of these registrations in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 29, 2005, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Pina-Nieves knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical works and "Eso Eso" and "Mundo Frío." The registration contained material misrepresentations by listing Pina-Nieves as both a copyright claimant and an author, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the

fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about April 27, 2015, at approximately 9:58 PM, Francisco Saldaña also known as "Luny", a member of the *reggaetón* production duo "Luny Tunes," transmitted an email to Juan Morera through interstate and foreign commerce with the misrepresentation that Pina-Nieves had been assigned a five percent (5%) publishing share in the musical composition "Mayor Que Yo 3" through the publishing company Los Magnifikos. This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved misrepresenting publishing shares and communicating those misrepresentations to industry participants and publishing entities through electronic means, including email, as part of the process of confirming and documenting publishing splits. As part of that scheme, Defendants knowingly and intentionally misrepresented that Pina-Nieves had been assigned a five percent (5%) publishing share in the musical composition "Mayor Que Yo 3" to the publishing company Los Magnifikos. This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "Mayor Que Yo 3." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about January 11, 2017, at approximately 4:01 PM, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Coll-Fernández used his WML email address to knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce an email to Roberto Rivera-Pagán ("Rivera-Pagán"), a representative of the American Society of Composers, Authors, and Publishers ("ASCAP"), a performance rights organization. In that email, Coll-Fernández falsely represented that Pina-Nieves and his publishing company, Mafer, held a thirty percent (30%) publishing share in the musical composition "Otra Cosa"—a percentage exceeding Plaintiffs' twenty-five percent (25%) share. This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, publishing rights and income from the song "Otra Cosa." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about December 14, 2017, at approximately 11:44 AM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to González-Castellanos attaching a document that falsely represented that Pina-Nieves and his publisher, Los Magnifikos, held a seven and one-half percent (7.5%) publishing share in the musical composition "Todo Comienza En La Disco." Pina-Nieves deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income

from the song "Todo Comienza En La Disco." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about February 13, 2018, at approximately 11:30 AM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán misrepresenting that Pina-Nieves' publishing share for the songs "La Rompe Corazones" and "Bella y Sensual" came from Los Cangris' percentage. González-Castellanos deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the songs "La Rompe Corazones" and "Bella y Sensual." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 12, 2018, between approximately 11:07 AM and 11:19 AM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce emails to Rivera-Pagán misrepresenting that Pina-Nieves held a ten percent (10%) publishing share in the musical composition "Buena Vida," and that Pina-Nieves' publishing company for that song was Los Magnifikos. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Buena Vida." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 18, 2018, at approximately 5:23 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Yendi Rodríguez ("Rodríguez"), a representative of Sony/ATV, now known as Sony Music Publishing ("SMP"), misrepresenting that Pina-Nieves was assigned a twenty percent (20%) publishing share in the musical composition "Zum Zum Zum." González-Castellanos sent the email to Prado-Galarza, Pina-Nieves, and Lorna Robles ("Robles"), then an employee of Los Cangris supervised by González-Castellanos, but deliberately excluded Ayala-Rodríguez from the communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Zum Zum Zum." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 18, 2018, at approximately 5:24 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves had a ten percent (10%) publishing share in the musical composition "Vuelve." González-Castellanos included Prado-Galarza, Pina-Nieves, and Robles in the email but deliberately excluded Ayala-Rodríguez. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Vuelve." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 19, 2018, at approximately 10:32 AM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán misrepresenting that he had a twenty percent (20%) publishing share in the musical composition "Zum Zum Zum." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Zum Zum Zum." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 26, 2018, at approximately 5:15 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán and Gabriela González ("González"), another representative of ASCAP, misrepresenting that Pina-Nieves had a twenty percent (20%) publishing share in the musical composition "Zum Zum Zum." González-Castellanos deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Zum Zum Zum." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about July 5, 2018, at approximately 11:46 AM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email directing González-Castellanos to sign a "Main Title Music

Composition Agreement," which falsely represented that Pina-Nieves and his publisher, Mafer, held a ten percent (10%) publishing share and that Pina-Nieves was a songwriter for the musical composition "Buena Vida (Remake)." Pina-Nieves deliberately excluded Ayala-Rodríguez from the email communication. Pina-Nieves was not a co-author of the song "Buena Vida (Remake)." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Buena Vida (Remake)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about July 6, 2018, at approximately 3:42 PM, with intent to defraud, Prado-Galarza transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Coll-Fernández, Pina-Nieves, González-Castellanos, Maria Iglesias from Universal Music Group, Marta Ibarra from Univision Communications Inc., and a person with the name Norma De Miguel, attaching the "Main Title Music Composition Agreement," which falsely represented that Pina-Nieves and his publisher, Mafer, held a ten percent (10%) publishing share and that Pina-Nieves was a songwriter for the musical composition "Buena Vida (Remake)." Prado-Galarza, with intent to defraud, signed the agreement on behalf of Los Cangris and Ayala-Rodríguez, without the consent or authorization of Ayala-Rodríguez. In that same email, Prado-Galarza attached a "Memorandum of Understanding" for "Buena Vida (Remake)," which also misrepresented that Pina-Nieves and his publisher, Mafer, held a ten percent (10%) publishing share and that Pina-Nieves was a songwriter for the song "Buena Vida (Remake)." Prado-Galarza, with intent to defraud, signed the "Memorandum of

Understanding" on behalf of El Cartel, without the consent or authorization of Ayala-Rodríguez, an author of the composition of "Buena Vida (Remake)." Prado-Galarza deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez consent to Prado-Galarza signing on his behalf or on behalf of Los Cangris or El Cartel, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Buena Vida (Remake)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 2, 2018, at approximately 1:00 PM, Rodríguez transmitted an email to González-Castellanos through interstate and foreign commerce, on which Pina-Nieves (to his WML email address), Prado-Galarza, and Robles were cc'ed which contained the misrepresentation that Pina-Nieves was assigned an eleven point sixty-eight percent (11.68%) publishing share in the split sheet for the musical composition "El Desorden." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to performance rights organizations and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. As part of that scheme, Defendants knowingly and intentionally misrepresented that Pina-Nieves was assigned an eleven point sixty-eight percent (11.68%) publishing share in the split sheet for the musical composition "El Desorden." This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately

concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "El Desorden." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 2, 2018, at approximately 11:51 AM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that he held an eleven point sixty-eight percent (11.68%) publishing share in the musical composition "El Desorden." Pina-Nieves cc'ed Coll-Fernández but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "El Desorden." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about September 5, 2018, at approximately 11:04 AM, Robles transmitted an email to Cristobal Brito, who at the time worked for Rimas Entertainment ("Rimas"), through interstate and foreign commerce, on which González-Castellanos, Noah Assad, Jonathan Miranda, and Raymond Acosta from Rimas were cc'ed which contained the misrepresentation that Pina-Nieves was assigned a ten percent (10%) publishing share in the musical composition "Vuelve." Robles sent this email relying on the misrepresentation provided by González-Castellanos that Pina-Nieves was assigned a ten percent (10%) publishing share in the musical composition "Vuelve." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme

involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "Vuelve." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about October 11, 2018, at approximately 10:23 AM, with intent to defraud, Pina-Nieves, using his WML address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that, through his publishing company, Mafer, he held a five percent (5%) publishing share in the musical composition "Inolvidable (Remix)." Pina-Nieves deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Inolvidable (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about October 17, 2018, at approximately 5:14 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Pina-Nieves misrepresenting that Pina-Nieves,

through his publishing company, Mafer, held a five percent (5%) publishing share in the musical composition "Inolvidable (Remix)." González-Castellanos cc'ed Prado-Galarza, Rodríguez, Robles, and herself but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Inolvidable (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 14, 2018, at approximately 12:31 PM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Steven Nieves ("Nieves") from Carbon Fiber Music ("CFM") attaching a "Songwriters' Split Agreement" for the musical composition "Inolvidable (Remix)," which falsely represented that Pina-Nieves, through his publishing company Mafer, held a five percent (5%) publishing share in the song. Pina-Nieves, with intent to defraud, signed the agreement on behalf of Ayala-Rodríguez without his knowledge or consent. At no time did Ayala-Rodríguez, as an author of the composition, consent to Pina-Nieves signing the "Songwriters' Split Agreement" on his behalf or to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Inolvidable (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 27, 2018, at approximately 8:13 PM, Nieves transmitted an email to Pina-Nieves through interstate and foreign commerce, attaching the same "Songwriters'

Split Agreement" and cc'ing Coll-Fernández, González-Castellanos, Alex Aguilar and Frank Martinez from CFM, and attorneys David Bercuson and Simran Singh ("Singh"), but excluding Ayala-Rodríguez. Singh served as an attorney at Singh, Singh & Trauben, LLP, a firm whose involvement in addressing transactional matters in the entertainment industry regarding El Cartel arose through Pina-Nieves' actions. Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission did not constitute notice to Ayala-Rodríguez, who remained unaware of the five percent (5%) publishing share assignment in the musical composition of "Inolvidable (Remix)" to Pina-Nieves, through his publishing company Mafer. Defendants deliberately concealed the assignment from Ayala-Rodríguez with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Inolvidable (Remix)." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about April 1, 2019, with intent to defraud, Pina-Nieves signed a letter agreement for the musical composition "No Lo Trates" on behalf of El Cartel and WML d/b/a Pina

Records, which falsely represented that Pina-Nieves was a co-author of the song and held a three percent (3%) publishing share. At no time did Ayala-Rodríguez, as an author of the composition, consent to Pina-Nieves signing the letter agreement on behalf of El Cartel or to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "No Lo Trates."

- On or about January 29, 2020, at approximately 7:15 PM, Alejandra Hernández ("Hernández"), then a paralegal at the law firm Singh, Singh & Trauben, LLP, transmitted an email to González-Castellanos through interstate and foreign commerce, attaching the letter agreement. The email cc'ed Pina-Nieves (to his WML email address), Coll-Fernández, and attorneys Christopher Navarro ("Navarro") and Singh from Singh, Singh & Trauben, LLP, but excluded Ayala-Rodríguez. Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission did not constitute notice to Ayala-Rodríguez, who remained unaware of the three percent (3%) publishing share assignment in the musical composition of "No Lo Trates" to Pina-Nieves. Defendants deliberately concealed the assignment from Ayala-Rodríguez to obtain money and property—specifically, publishing rights and income from "No Lo Trates." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing

splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about May 21, 2019, at approximately 7:12 PM, with intent to defraud, Prado-Galarza transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a twenty-two point five percent (22.5%) publishing share in the musical composition "Te Lo Dije"—a percentage exceeding Plaintiffs' fifteen percent (15%) share. Prado-Galarza cc'ed González-Castellanos, Pina-Nieves (to his WML email address), and Robles but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Te Lo Dije." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about May 22, 2019, at approximately 2:04 PM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to persons unknown misrepresenting that he held a ten percent (10%) publishing share in the musical composition "Si Supieras." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, a fact which Defendants deliberately concealed with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Si Supieras." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 6, 2019, at approximately 2:11 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán and Robles misrepresenting that Pina-Nieves held a ten percent (10%) publishing share in the musical composition "Si Supieras." González-Castellanos deliberately excluded Ayala-Rodríguez from the email communication, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Si Supieras." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 6, 2019, at approximately 3:49 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán misrepresenting that Pina-Nieves held a twenty-two point five percent (22.5%) publishing share in the musical composition "Te Lo Dije." González-Castellanos deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Te Lo Dije." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 19, 2019, at approximately 7:42 PM, Rodríguez transmitted an email to Pina-Nieves (to his WML email address), Prado-Galarza, and González-Castellanos through interstate and foreign commerce asking for confirmation of the misrepresentation

that Pina-Nieves was assigned a five percent (5%) publishing share in the musical composition "Runaway." Ayala-Rodríguez was excluded from the email communication. This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. As part of that scheme, Defendants knowingly and intentionally misrepresented that Pina-Nieves was assigned a five percent (5%) publishing share in the song "Runaway." And it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentation. This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "Runaway." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 21, 2019, at approximately 12:31 AM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that he held a five percent (5%) publishing share in the musical composition "Runaway." Pina-Nieves cc'ed González-Castellanos and Prado-Galarza but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to

deceive and to obtain money and property—specifically, publishing rights and income from the song "Runaway." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about July 31, 2019, at approximately 6:12 PM, Hernández transmitted an email to Daniel Bindler from the music licensing company ViacomCBS, which is now known as Paramount, and cc'ed González-Castellanos, Singh, and Matt Holzmacher, who at the time worked in sync clearance at Kobalt Music, through interstate and foreign commerce, which misrepresented that Pina-Nieves was assigned a three percent (3%) publishing share in the musical composition "No Lo Trates." Ayala-Rodríguez was excluded from the email communication. Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission did not constitute notice to Ayala-Rodríguez, who remained unaware of the three percent (3%) publishing share assignment in the musical composition "No Lo Trates" to Pina-Nieves. This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. As part of that scheme, Defendants knowingly and intentionally misrepresented that Pina-Nieves was assigned a three percent (3%) publishing share in the song "No Lo Trates." And it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentation. This representation was

materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "No Lo Trates." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about September 12, 2019, at approximately 10:41 AM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that he held a ten percent (10%) publishing share in the musical composition "Si Supieras." Pina-Nieves cc'ed Coll-Fernández (at his WML email address) but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Si Supieras." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- In or about 2020, with intent to defraud, Pina-Nieves falsely listed himself as the producer of the 2K20 Live album, which involved interstate and foreign wire communications, when in fact he had only served as the producer of the live show. This misrepresentation was made as part of a scheme and artifice to defraud devised and executed by Defendants to obtain money and property—specifically, credit and income associated with the album. This representation was materially false because Pina-Nieves did not produce the album, and Defendants deliberately concealed this fact with the intent to deceive and to obtain financial benefits. The use of interstate wire communications was reasonably foreseeable

to Defendants and occurred for the purpose of executing and attempting to execute the fraudulent scheme. Namely, it was reasonably foreseeable that payments for royalties and communications concerning the 2K20 Live album would occur over electronic communications, including email communications, which occur over the internet and therefore are transmitted through interstate or foreign commerce. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about March 13, 2020, at approximately 1:49 PM, with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Pina-Nieves, González-Castellanos, González, and Robles misrepresenting that Pina-Nieves held a three percent (3%) publishing share in the musical composition "No Lo Trates." Coll-Fernández deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "No Lo Trates." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 8, 2020, at approximately 11:46 AM, with intent to defraud, Coll-Fernández, using his WML address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a seventeen percent (17%) publishing share in the musical composition "Que Mal Te Fue." Coll-Fernández cc'ed Pina-Nieves (at his WML email address) and González-Castellanos but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the

composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Que Mal Te Fue." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 10, 2020, González-Castellanos signed a songwriter's split agreement for the musical composition "Relación (Remix)" on behalf of Ayala-Rodríguez, which falsely represented that Pina-Nieves and his publisher, Los Magnifikos, held a two percent (2%) publishing share. Ayala-Rodríguez did not consent to González-Castellanos signing the songwriter's split agreement on his behalf. Moreover, González-Castellanos knew that Ayala-Rodríguez had not granted a power of attorney authorizing her to sign on Ayala-Rodríguez's behalf. On or about May 13, 2022, at approximately 10:38 AM, Rivera-Pagán transmitted an email to González-Castellanos through interstate and foreign commerce, attaching the split agreement and cc'ing Pina-Nieves, Coll-Fernández, and González, but excluding Ayala-Rodríguez. This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive

Ayala-Rodríguez and obtain money and property—specifically, a publishing share and the corresponding income from "Relación (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 11, 2020, at approximately 10:02 PM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Singh, Navarro, and Hernández of Singh, Singh & Trauben, LLP, and cc'ed González-Castellanos, Coll-Fernández, and Robles, misrepresenting that he held a publishing share in the musical composition "Dura (Remix)." Pina-Nieves deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Dura (Remix)." Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission was not meant to constitute notice to Ayala-Rodríguez, who remained unaware of the assignment to Pina-Nieves. As such, Pina-Nieves had no intention of notifying Ayala-Rodríguez through Singh, Singh & Trauben, LLP. Defendants deliberately concealed the assignment from him to obtain money and property—specifically, publishing rights and income from "Dura (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 12, 2020, at approximately 7:23 PM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to two unknown individuals misrepresenting that

he held a publishing share in the musical composition "Dura (Remix)." Pina-Nieves cc'ed González-Castellanos, Coll-Fernández, and Robles but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Dura (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about October 7, 2020, at approximately 12:51 PM, with intent to defraud, Pina-Nieves transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to persons unknown misrepresenting that he held a twelve percent (12%) publishing share in the musical composition "Que Mal Te Fue" and a ten percent (10%) publishing share in the musical composition "Que Mal Te Fue (Remix)." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignments, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the songs "Que Mal Te Fue" and "Que Mal Te Fue (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about October 7, 2020, at approximately 1:00 PM, with intent to defraud, Coll-Fernández, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a twelve percent (12%) publishing share in the musical composition "Que Mal Te Fue" and a ten percent (10%) publishing share in the musical composition "Que Mal Te Fue (Remix)." Coll-Fernández deliberately excluded

Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignments, which were deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the songs "Que Mal Te Fue" and "Que Mal Te Fue (Remix)." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about December 10, 2020, Pina-Nieves, with intent to defraud, signed a Producer Agreement on behalf of El Cartel which misrepresented that Pina-Nieves and his publisher, Los Magnifikos, held a five percent (5%) publishing share in the musical composition "De Vuelta Pa' La Vuelta." The Producer Agreement fraudulently signed by Pina-Nieves was sent in interstate commerce on or about December 10, 2020 to Singh, Singh & Trauben, LLP to give the false appearance that a (5%) publishing share in the musical composition "De Vuelta Pa' La Vuelta" had been properly allocated to Pina-Nieves. Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos, and its inclusion in the transmission was not meant to constitute notice to Ayala-Rodríguez, who remained unaware of the assignment to Pina-Nieves. At no time did Ayala-Rodríguez, as an author of the composition, consent to Pina-Nieves signing the letter agreement on behalf of El Cartel or to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "De Vuelta Pa' La Vuelta."

- On or about December 11, 2020, at approximately 4:49 PM, Robles transmitted an email to Rivera-Pagán through interstate and foreign commerce, which misrepresented that Pina-Nieves and his publisher, Los Magnifikos, held a five percent (5%) publishing share in the musical composition "De Vuelta Pa' La Vuelta." Robles sent this email relying on the

misrepresentation provided by Pina-Nieves that Pina-Nieves and his publisher, Los Magnifikos, held a five percent (5%) publishing share in the musical composition "De Vuelta Pa' La Vuelta." Ayala-Rodríguez was excluded from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "De Vuelta Pa' La Vuelta." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about February 3, 2021, at approximately 5:15 PM, with intent to defraud, Coll-Fernández, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a fifteen percent (15%) publishing share in the musical composition "Inédito." Coll-Fernández cc'ed Pina-Nieves (to his WML email address) but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain

money and property—specifically, publishing rights and income from the song "Inédito." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about March 25, 2021, at approximately 8:48 AM, with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Amy Roland and Rodríguez of what is now known as SMP attaching a document misrepresenting that Pina-Nieves and his publisher, Los Magnifikos, held a fifteen percent (15%) publishing share in the musical composition "Ram Pam Pam." Coll-Fernández deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Ram Pam Pam." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about July 21, 2021, at approximately 9:55 AM, Robles transmitted an email to Rivera-Pagán through interstate and foreign commerce, which misrepresented that Pina-Nieves held a five percent (5%) publishing share in the musical composition "Súbele el Volumen." Ayala-Rodríguez was excluded from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Súbele el Volumen." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating

those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about December 2, 2021, at approximately 2:36 PM, with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a twenty percent (20%) publishing share in the musical composition "Me Felicito." Coll-Fernández cc'ed Pina-Nieves but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Me Felicito." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about January 27, 2022, at approximately 4:26 PM, with intent to defraud, González-Castellanos transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Robles misrepresenting that Pina-Nieves and his publisher, Los Magnifikos, held a five percent (5%) publishing share in the musical composition "Súbele El Volumen." González-Castellanos cc'ed attorney Navarro from Singh, Singh & Trauben, LLP but deliberately excluded Ayala-Rodríguez from the email communication. Singh, Singh & Trauben, LLP purported to represent El Cartel, which at

the time was controlled by González-Castellanos, and its inclusion in the transmission was not meant to constitute notice to Ayala-Rodríguez, who remained unaware of the assignment to Pina-Nieves. As such, González-Castellanos had no intention of notifying Ayala-Rodríguez through Singh, Singh & Trauben, LLP. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Súbele El Volumen." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about February 28, 2022, at approximately 8:30 PM, Ivan J. Michultka-Caleb ("Michultka-Caleb") from Singh, Singh & Trauben, LLP transmitted an email to González-Castellanos, Pina-Nieves, and Robles through interstate and foreign commerce, attaching a document that contained a misrepresentation—an allocation of a ten percent (10%) publishing share to Pina-Nieves and his publisher, Los Magnifikos, in the musical composition "Zona del Perreo." The email cc'ed attorney Navarro, Singh, Maribel Andrade, and Nick Huelster from Singh, Singh & Trauben, LLP, but excluded Ayala-Rodríguez. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Zona del Perreo." Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission did not constitute notice to Ayala-Rodríguez, who remained unaware of the ten percent (10%) publishing share assignment in the musical composition of "Zona del Perreo" to Pina-Nieves, through his publisher Los Magnifikos. Defendants deliberately

concealed the assignment from Ayala-Rodríguez to obtain money and property—specifically, publishing rights and income from "Zona del Perreo." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about March 12, 2022, at approximately 9:53 PM, Robles transmitted an email to González-Castellanos, Pina-Nieves, and Michultka-Caleb through interstate and foreign commerce, cc'ing Mayna Nevarez, attaching a document that falsely identified Pina-Nieves as a writer and allocated a ten percent (10%) publishing share to his publisher, Los Magnifikos, in the musical composition "Zona del Perreo." Singh, Singh & Trauben, LLP purported to represent El Cartel, which at the time was controlled by González-Castellanos. Singh, Singh & Trauben, LLP's inclusion in the transmission did not constitute notice to Ayala-Rodríguez, who remained unaware of the ten percent (10%) publishing share assignment in the musical composition of "Zona del Perreo" to Pina-Nieves, through his publisher Los Magnifikos. Pina-Nieves was not a co-author of the song "Zona del Perreo." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from "Zona del

Perreo." This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about May 13, 2022, at approximately 11:10 AM, with intent to defraud, Pina-Nieves, using his WML email address, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán misrepresenting that he would receive two percent (2%) of the publishing share in the musical composition "Relación (Remix)," taken from Plaintiffs' share. Pina-Nieves cc'ed González-Castellanos, Coll-Fernández (to his WML email address), and González but deliberately excluded Ayala-Rodríguez from the email communication. Pina-Nieves deliberately excluded Ayala-Rodríguez from the email with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Relación (Remix)." At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about July 19, 2022, at approximately 11:57 AM—after Pina-Nieves was incarcerated in federal prison—with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign

commerce an email to González-Castellanos misrepresenting that Pina-Nieves and his publisher, Los Magnifikos, held a seven and one-half percent (7.5%) publishing share in the musical composition "Mayor Que Usted." Coll-Fernández deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Mayor Que Usted." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about September 15, 2022, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "Runaway." The registration contained a material misrepresentation by listing Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the work. This misrepresentation was made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 2, 2022, at approximately 3:38 PM, with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rodríguez misrepresenting that Pina-Nieves held a ten percent (10%) publishing share in the musical composition "La Rompe Corazones." Coll-Fernández cc'ed González-Castellanos and Aireen Hevia ("Hevia") from what is now known as Sony Music Publishing ("SMP") but deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "La Rompe Corazones." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 3, 2022, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "Bella y Sensual." The registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was

reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about December 8, 2022, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "El Desorden." The registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about December 13, 2022, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "Inolvidable (Remix)." The registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of

the authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about January 19, 2023, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "La Rompe Corazones." The registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright

Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about February 3, 2023, at approximately 1:30 PM, Hevia transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Rivera-Pagán that contained a misrepresentation, namely, that Pina-Nieves was a songwriter and had the following publishing shares: three percent (3%) in "No Lo Trates;" five percent (5%) in "De Vuelta Pa' La Vuelta;" fifteen percent (15%) in "Inédito;" seven and one-half percent (7.5%) in "Mayor Que Usted;" twenty percent (20%) in "Me Felicito;" five percent (5%) in "Métele al Perreo;" seventeen percent (17%) in "Que Mal Te Fue;" ten percent (10%) in "Que Mal Te Fue (Remix);" fifteen percent (15%) in "Ram Pam Pam;" five percent (5%) in "Runaway;" twenty-two and one-half percent (22.5%) in "Te Lo Dije;" and ten percent (10%) in "Zona del Perreo." Pina-Nieves was not a co-author of any of these songs. At no time did Ayala-Rodríguez, as an author of the compositions, consent to any of these assignments, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from these songs. This transmission was a reasonably foreseeable consequence of, and in furtherance of, a scheme and artifice to defraud devised and executed by Defendants. It was reasonably foreseeable because Defendants' scheme involved manipulating publishing shares and communicating those misrepresentations to music industry representatives and related parties through electronic means, including email, as part of the process of registering and confirming publishing splits. Thus, it was reasonably foreseeable that the music industry representatives and related parties would transmit

electronic communications with the misrepresentations. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about June 12, 2023, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of copyright registrations with the U.S. Copyright Office for the musical compositions "Vuelve," "Mayor Que Yo 3," "Llevo Tras De Ti," "Otra Cosa," "Todo Comienza En La Disco," "Perdido Por El Mundo," and "Zum Zum Zum." Each registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the works. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of these works. Upon information and belief, the filing, display, and maintenance of these registrations in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about September 14, 2023, at approximately 1:42 PM, with intent to defraud, Coll-Fernández transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce an email to Hevia misrepresenting that Pina-Nieves, through his publishing company Los Magnifikos, held a twenty percent (20%) publishing share in the musical composition "Te Lo Dije." Coll-Fernández deliberately excluded Ayala-Rodríguez from the email communication. At no time did Ayala-Rodríguez, as an

author of the composition, consent to such assignment, which Defendants deliberately concealed from him with intent to deceive and to obtain money and property—specifically, publishing rights and income from the song "Te Lo Dije." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about August 6, 2024, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "Buena Vida." The registration listed Gasolina Publishing Co. as a copyright claimant and contained a material misrepresentation by identifying Pina-Nieves as one of the copyright claimants and authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about November 27, 2024, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "Relación (Remix)." The registration contained a material misrepresentation by identifying

Pina-Nieves as one of the authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

- On or about March 24, 2025, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration with the U.S. Copyright Office for the musical composition "De Vuelta Pa' La Vuelta." The registration contained a material misrepresentation by identifying Pina-Nieves as one of the copyright claimants and authors, despite Pina-Nieves having made no creative contribution to the work. These misrepresentations were made with the intent to deceive and to obtain money and property—specifically, ownership rights and income derived from the exploitation of the work. Furthermore, the registration lists Ayala-Rodríguez as a copyright claimant even though he never authorized anyone to act on his behalf or to use his name in that registration. Upon information and belief, the filing, display, and maintenance of this registration in the U.S. Copyright Office system caused wire communications to travel in interstate and foreign commerce, and such use of

interstate wires was reasonably foreseeable to Defendants and occurred in furtherance of the fraudulent scheme. Namely, it was reasonably foreseeable that others would use the internet to access the U.S. Copyright Office system to verify the authors and copyright claimants of the song. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

### d. Describe whether the alleged predicate acts relate to the enterprise as part of a common plan. If so, describe in detail.

The predicate acts are connected to the enterprise and form part of a common plan because they share several defining characteristics. First, they all pursue the same objective: to secure publishing shares, authorship credit, and the resulting income for Pina-Nieves and his affiliated entities. Second, they involve overlapping participants—González-Castellanos, Prado-Galarza, Pina-Nieves, and Coll-Fernández—while repeatedly using publishing vehicles such as Los Magnifikos, Mafer, Gasolina Publishing Co., and WML. Third, they target common victims, including Los Cangris and Ayala-Rodríguez, who was systematically excluded from communications and deprived of his right to consent. Finally, they employ common methods: material misrepresentations transmitted through interstate wire communications (emails to and from ASCAP, SMP, Rimas, industry executives, and law firm personnel), false copyright registrations that identified Pina-Nieves as an author despite his lack of creative contribution, and, in the earlier phase of the scheme, extortionate threats and acts of violence to coerce compliance and suppress demands for rightful payment by other victims.

These acts follow a clear and repeatable pattern. The scheme typically begins with a misrepresentation of percentage allocations or authorship favoring Pina-Nieves, followed by emails to industry gatekeepers—such as ASCAP, SMP, Rimas, and major label contacts—to confirm or memorialize those false allocations. Ayala-Rodríguez is deliberately excluded from

these communications to prevent dissent or correction. In the case of copyright filings, the pattern continues with registrations falsely listing Pina-Nieves as an author or claimant. In its earliest stage, the enterprise relied on extortion—threats and physical violence—to pressure victims into silence and prevent interference with its fraudulent objectives. The consistent result of these actions is the diversion of publishing shares and revenue streams into channels controlled by the enterprise. Taken together, these characteristics demonstrate that the predicate acts are not isolated events but interrelated components of a common plan carried out by the enterprise.

      **e.  State whether a predicate act is based upon a criminal conviction;**

The predicate acts asserted are not grounded in any prior criminal conviction.

      **f.  State whether civil litigation has resulted in a judgment with regard to the predicate acts.**

There has been no civil judgment entered with respect to any of the predicate acts alleged.

**6.  Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**
    **a.  State the names of the individuals, partnerships, corporations, associations or other entities allegedly constituting the enterprise;**
    **b.  Describe the structure, purpose, roles, function and course of conduct of the enterprise;**
    **c.  State whether any defendants are employees, officers or directors of the alleged enterprise;**
    **d.  State whether any defendants are associated with the alleged enterprise, and if so, how;**
    **e.  State whether you allege that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**
    **f.  If you alleged any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

The enterprise alleged in both RICO claims (Cause of Actions One and Two) is the same.

Namely, the enterprise alleged in both RICO claims is an association-in-fact under 18 U.S.C.

§ 1961(4), comprised of individuals and entities acting together for a common unlawful purpose.

This association included Pina-Nieves, González-Castellanos, Prado-Galarza, Coll-Fernández, and entities Los Magnifikos, Mafer, Gasolina Publishing Co., and WML, along with others presently unknown. These individuals and entities operated as a continuing unit whose activities affected interstate commerce and engaged in racketeering acts including wire fraud and extortion in violation of federal and Puerto Rico law. The enterprise was not a formal legal entity but rather an association-in-fact, functioning through coordinated roles and actions designed to misappropriate publishing rights and divert royalties from rightful authors. The misappropriation of publishing rights was the central purpose that unified the enterprise and drove its coordinated conduct.

That coordinated conduct had Pina-Nieves at its center, exercising control through his self-appointed roles as manager, booking agent, and label operator. His purpose was to consolidate financial and contractual control over artists and their works, ensuring that all revenue streams—including royalties, advances, and licensing income—flowed through him. Flowing through him also meant that every financial decision and contractual arrangement was subject to his influence, creating dependency and control.

Coll-Fernández, upon information and belief, acted as a mentor and legitimizer of fraudulent publishing claims, embedding false credits into contracts and copyright records to secure influence and financial benefit. González-Castellanos provided the administrative backbone, preparing and transmitting false split sheets and publishing allocations to conceal misappropriation. Misappropriation was further reinforced by Prado-Galarza, who facilitated and confirmed fraudulent arrangements, creating the appearance of legitimacy among collaborators. The corporate entities served as instrumental vehicles to hold and transfer purported ownership

interests, receive diverted royalties, and create a façade of lawful business operations. These operations were essential to sustaining the enterprise's unlawful objectives.

Those objectives were carried out through a pattern of racketeering activity that included numerous predicate acts. Predicate acts included exploiting interstate and foreign wires—emails, online copyright filings, and digital communications—to prepare and circulate split sheets assigning fraudulent ownership percentages to Pina-Nieves without the authors' knowledge or consent. Consent was also bypassed when members filed false copyright registrations with the U.S. Copyright Office naming Pina-Nieves as an author or claimant for works he did not create, embedding fraudulent claims into the public record. The public record was further corrupted by delaying registrations until songs achieved commercial success, opportunistically inserting false authorship claims to maximize financial gain. Financial gain was not the enterprise's only tool; it repeatedly used intimidation, retaliation, and even threats of violence to maintain control, including brandishing firearms during meetings and repossessing assets such as cars and houses nominally "given" to artists. These acts were not isolated; they formed a continuous scheme targeting multiple artists before Ayala-Rodríguez, evidencing the continuity and relatedness required under RICO. Continuity of racketeering activity underscores the enterprise's systematic nature.

That systematic nature extended to the association and distinctness of the defendants. Each defendant is alleged to be a "person" under 18 U.S.C. § 1961(3) who conducted or participated in the enterprise's affairs through a pattern of racketeering activity. Racketeering activity was directed by defendants who are distinct from the enterprise itself, which is the collective association of individuals and entities acting together. Acting together, however, does not erase individual roles: the defendants were members or associates of the enterprise, functioning as

perpetrators or instrumental entities rather than victims. Victims were the rightful authors and artists whose works and revenues were unlawfully taken. Pina-Nieves is alleged to be the principal perpetrator and leader, orchestrating the misappropriation and enforcing compliance through financial leverage and intimidation. The schemes were also advanced by Coll-Fernández, González-Castellanos, and Prado-Galarza, who acted as facilitators, each performing essential roles that advanced and concealed the fraudulent schemes. The corporate entities operated as instruments, used to process registrations, hold purported interests, and divert payments, thereby enabling the unlawful enrichment of the enterprise's members. Members of the enterprise acted with continuity, coordination, and a shared purpose to defraud and control.

**7. State whether you allege and describe in detail how the pattern of racketeering activities and the enterprise are separate or have merged into one entity.**

The enterprise is separate from the pattern of racketeering acts. The association-in-fact's members—Pina-Nieves (beneficiary/driver of allocations), González-Castellanos and Coll-Fernández (frequent communicators and confirmers to PROs/publishers), Prado-Galarza (signatory and transmitter of agreements and memoranda of understanding), and the publishing vehicles Los Magnifikos, Mafer, Gasolina Publishing Co., and WML (beneficiaries/claimants)—worked in coordinated roles to conceal non-consent and push false paperwork. That structure is the enterprise; the emails and registrations are the pattern of racketeering activity. Proof of one does not automatically prove the other—but here both are alleged: a cohesive unit pursuing a shared illicit purpose, and a series of acts satisfying relatedness and continuity.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The enterprise's day-to-day operations consisted of carrying out the predicate acts alleged. The enterprise functioned as a vehicle for fraud and extortion. The pattern of racketeering

activity—wire fraud and extortion—was not an occasional deviation from normal business practices but the enterprise's regular way of doing business. Its members routinely executed misrepresentations in emails, concealed Ayala-Rodríguez's lack of consent, and filed fraudulent copyright registrations to divert publishing shares and authorship credit to Pina-Nieves and affiliated entities. These acts were systematic, coordinated, and essential to the enterprise's purpose, rather than incidental or isolated events.

9. **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering activities.**

The association-in-fact enterprise benefited from the pattern of racketeering activity because the schemes created a structure where every member gained something of value while advancing the common purpose of misappropriating publishing rights. At the center, Pina-Nieves was the ultimate beneficiary, securing publishing revenue and royalties through fraudulent allocations and false copyright registrations. These acts allowed him to position himself as a dominant figure in the music industry, consolidating control over artists' careers and finances while enriching himself through payments routed to entities he controlled, including Mafer, Los Magnifikos, and WML. His financial gain was amplified by the power and influence he wielded over artists, which reinforced the enterprise's ability to operate without challenge.

That ability to operate without challenge also benefited Coll-Fernández, who maintained influence and financial advantage by legitimizing fraudulent claims and reinforcing the coercive environment. Through WML email communications, Coll-Fernández documented inflated publishing shares for Pina-Nieves and his companies, ensuring that the fraud appeared credible to industry participants. This role gave Coll-Fernández continued relevance and access to revenue streams tied to the enterprise's success.

Similarly, González-Castellanos benefited by securing her position as the administrative backbone of the schemes, preparing and transmitting false split sheets that concealed misappropriation. Her involvement preserved her standing within the enterprise and with Pina-Nieves, which depended on loyalty and coordination. That loyalty was not only recognized but actively rewarded. This continued support elevated her from a peripheral figure to a trusted operator, granting her influence and security in an industry where access and relevance are everything.

That elevation came with tangible benefits. By becoming the key administrator of fraudulent publishing allocations, González-Castellanos gained a level of authority and involvement she had never experienced before. Her loyalty opened doors to a role that allowed her to shape the enterprise's operations, embedding false allocations into business records and transmitting them through interstate wires. This reciprocal relationship—loyalty rewarded with power, and power used to perpetuate fraud—underscores how the enterprise thrived on mutual benefit.

Mutual benefit was the glue that held the enterprise together. For González-Castellanos, loyalty was the currency that bought influence and responsibility, while for Pina-Nieves, her unwavering support ensured the administrative precision necessary to conceal misappropriation. Together, these benefits strengthened the enterprise's ability to operate undetected and sustain its unlawful objectives over time. In short, her loyalty did not merely preserve her place; it transformed her into an indispensable part of the enterprise's machinery, reinforcing the continuity and success of the racketeering schemes. As a result, after González-Castellanos was removed from her role in Los Cangris, Pina-Nieves ensured she remained part of his circle, giving her support, both financially and otherwise.

Coordination also rewarded Prado-Galarza, who acted as an operational and legal facilitator. By executing agreements without authorization and embedding fraudulent claims into binding contracts, Prado-Galarza gained influence, fees, and the appearance of legitimacy as a trusted advisor within the enterprise.

The corporate entities—Mafer, Los Magnifikos, Gasolina Publishing Co., and WML—served as vehicles for fraud and, in doing so, became conduits for financial enrichment. These companies repeatedly appeared in split sheets and copyright registrations as publishers entitled to royalties, creating a façade of legitimacy that allowed them to collect income from works Pina-Nieves never authored. By routing false claims through these entities, the enterprise institutionalized its schemes, ensuring that members benefited from the diverted royalties and the power structure that sustained the fraud.

That power structure was the glue that held the enterprise together. Each member's benefit—whether financial, professional, or reputational—depended on the success of the schemes and the continuity of racketeering activity. The enterprise operated as a unified system where Pina-Nieves' enrichment strengthened Coll-Fernández's influence, González-Castellanos's administrative role, Prado-Galarza's legal authority, and the corporate entities' financial flows. Together, these benefits created a shared incentive to perpetuate the fraud, conceal its existence, and silence opposition. In short, the enterprise thrived because its members were rewarded for advancing the common purpose of misappropriation, making the pattern of racketeering activity indispensable to their collective success.

10. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The enterprise's activities had an effect on interstate and foreign commerce. The misrepresentations were transmitted via email communications occurring over the internet which

crossed state and national borders to entities such as ASCAP, Sony Music Publishing, and other industry stakeholders. The fraudulent copyright registrations were filed with the U.S. Copyright Office, a federal agency, and maintained in its electronic system, which operates in interstate commerce—the internet. These acts influenced royalty distributions, licensing agreements, and digital streaming revenues on global platforms, thereby affecting commerce both within the United States and internationally.

11. **If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:**
    a. **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and,**
    b. **Describe the use or investment of such income.**

The complaint does not allege a violation of 18 U.S.C. § 1962(a).

12. **If the complaint alleges a violation of 18 U.S.C. Section 1962(b), provide the following information:**
    a. **Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and,**
    b. **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(b).**

The complaint does not allege a violation of 18 U.S.C. § 1962(b).

13. **If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide the following information:**
    a. **State who is employed by or associated with the enterprise;**
    b. **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c).**

Pina-Nieves, González-Castellanos, Prado-Galarza, Coll-Fernández, Los Magnifikos, Mafer, Gasolina Publishing Co., and WML (collectively "Defendants") are alleged to be associated with the enterprise. The association-in-fact composed of Defendants—multiple individuals and entities—even if one or more Defendants are among its members, constitutes a distinct and separate entity for purposes of RICO liability. Thus, in the case at bar, no entity is both the liable "person" and the "enterprise" under Section 1962(c).

**14. If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe in detail the alleged conspiracy.**

Defendants engaged in a long-running conspiracy to misappropriate publishing shares and divert royalties. Beginning no later than 2004 and continuing through the filing of this Complaint, they knowingly and intentionally conspired to conduct and participate in the affairs of an association-in-fact enterprise through a pattern of racketeering activity affecting interstate and foreign commerce. The object of the conspiracy was clear: to unlawfully insert Pina-Nieves and his entities, including the defendant entities, into authorship and publishing rights for songs he did not create and to redirect royalty streams away from rightful owners. This objective was pursued through deliberate acts of wire fraud and extortion all designed to give fabricated claims the appearance of legitimacy.

Legitimacy was manufactured through coordinated steps that relied heavily on interstate wires and digital communications. Defendants used email accounts—including WML accounts controlled by Pina-Nieves and Coll-Fernández—to circulate fraudulent split sheets, confirm false publishing allocations, and transmit agreements that embedded Pina-Nieves' fabricated interests into contractual records. These communications deliberately excluded Ayala-Rodríguez, ensuring he remained unaware of the dilution of his publishing shares. At the same time, Defendants filed false copyright registrations with the U.S. Copyright Office naming Pina-Nieves as an author and listing Gasolina Publishing Co. as claimant, embedding fraudulent claims into the public record. By exploiting these wires and registrations, Defendants transformed fabricated allocations into seemingly valid rights, deceiving industry participants and future rights holders.

Those rights were reinforced with victims through intimidation and manipulation. Pina-Nieves acted as the architect and driving force of the conspiracy, consolidating control over artists' finances and careers by presenting himself as their sole source of payment and credit. He enticed

vulnerable artists with advances, cars, and houses titled in his name—assets he could repossess to enforce loyalty—and created a climate of fear through threats, acts of violence, and the brandishing of firearms. Coll-Fernández supported these tactics while legitimizing fraudulent claims through WML and other email communications that documented inflated shares for Pina-Nieves and his publishing companies. González-Castellanos provided the administrative backbone by preparing and transmitting false split sheets, while Prado-Galarza executed agreements without authorization, embedding fabricated interests into binding contracts. Each defendant's role was indispensable to sustaining the scheme.

The scheme was further entrenched through corporate entities that served as vehicles for fraud. Los Magnifikos and Mafer repeatedly appeared in split sheets and copyright registrations as publishers entitled to royalties on songs where Pina-Nieves had made no creative contribution. Gasolina Publishing Co. institutionalized false authorship claims by acting as the copyright claimant in registrations filed with the U.S. Copyright Office, while WML reinforced the illusion of legitimacy by appearing in agreements that falsely claimed co-authorship and publishing shares. Through wires, contracts, registrations, intimidation, and corporate mechanisms, Defendants worked together to deprive Plaintiffs of their rights and redirect royalties to Pina-Nieves and his controlled entities. This was not a series of isolated acts, but a coordinated, continuous conspiracy carried out over years, designed to exploit vulnerable artists, corrupt the copyright system, and unlawfully enrich the members of the enterprise.

**15. Describe the alleged injury to business or property.**

Plaintiffs have suffered significant economic harm as a direct result of Defendants' unlawful conduct. This harm includes the loss of publishing revenue and royalties from songs authored by Ayala-Rodríguez with others, which were diverted by Pina-Nieves and his affiliated

entities through fraudulent allocations and false copyright registrations. These diverted royalties represent not only a substantial financial loss but also an ongoing injury to Plaintiffs' business interests, as the misappropriated shares remain embedded in industry records and contractual frameworks. The injury was compounded by the systematic nature of the schemes, which targeted Plaintiffs' creative works and deprived them of the economic benefits those works were intended to generate.

The deprivation of economic benefits forced Plaintiffs to incur additional costs to investigate, expose, and remediate the fraudulent schemes. These costs were necessary to uncover the extent of the misappropriation, identify the entities and individuals involved, and take corrective measures to protect Plaintiffs' rights under copyright law. Each step in this process required significant resources, including legal and administrative expenses, because the fraud was concealed through layers of false documentation and coordinated communications. The need to dismantle these fabricated claims and restore rightful ownership added a further dimension to Plaintiffs' financial injury, making the harm both immediate and enduring.

Enduring harm of this magnitude warrants the remedies provided under federal law. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages in an amount not less than $3,000,000, together with the costs of this suit and reasonable attorneys' fees to be determined at trial. Treble damages are necessary to compensate Plaintiffs fully for the economic losses suffered, to address the costs incurred in uncovering and challenging the fraudulent schemes, and to deter similar racketeering activity in the future. Plaintiffs' injury is the direct and foreseeable consequence of Defendants' conspiracy and pattern of racketeering activity, and federal law provides the means to ensure that justice is done.

16. **Describe the relationship between the alleged injury and violation of the RICO statute.**

The injury suffered by Plaintiffs is directly tied to the pattern of racketeering activity that forms the basis of the RICO violations. Defendants engaged in a coordinated scheme to misappropriate publishing shares and divert royalties through acts of wire fraud and extortion. These acts were not isolated; they were part of an ongoing conspiracy designed to embed false authorship claims into official records and contractual agreements, ensuring that revenue streams flowed to Pina-Nieves and his affiliated entities rather than to Plaintiffs. The misappropriation of publishing rights and royalties constitutes a concrete injury to Plaintiffs' business and property interests, which RICO was enacted to address.

That injury was the foreseeable and intended consequence of the unlawful conduct. By transmitting fraudulent split sheets and agreements through interstate wires and filing false copyright registrations, Defendants created a system that deprived Plaintiffs of the economic benefits of their creative works. Each predicate act advanced the same objective: to convert Plaintiffs' rightful publishing shares into income for the enterprise. As a result, Plaintiffs lost millions of dollars in royalties and publishing revenue, while also incurring substantial costs to investigate and remediate the fraud. These losses are precisely the type of harm contemplated under 18 U.S.C. § 1964(c), which provides a civil remedy for injuries caused by racketeering activity.

Racketeering activity and injury are inseparable in this case because the fraudulent acts embedded themselves into the music industry's legal and administrative framework. False registrations and agreements created a continuing injury by institutionalizing Pina-Nieves' fabricated claims, ensuring that Plaintiffs' losses persist over time. This enduring harm underscores the causal link between the RICO violations and Plaintiffs' damages.

**17. List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.**

Plaintiffs submit that Defendants are jointly and severally liable for no less than $3,000,000, together with the costs of this suit and reasonable attorneys' fees to be determined at trial.

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

There are no other federal causes of action.

**19. List all pendent states claim, if any.**

The third cause of action is under the Puerto Rico Organized Crime Act in violation of P.R. Laws Ann. tit. 25, §§ 971b(c) and 971h(d). There are no other alleged pendent state claims in the complaint.

**20. Provide any additional information you feel would be helpful to the Court in assessing your RICO claim.**

The use of RICO in this case is not only appropriate—it is necessary. The schemes at issue were not isolated or short-lived; they were deliberate, continuous, and deeply entrenched in the music industry for nearly two decades. This long-standing nature demonstrates a level of sophistication and persistence that ordinary remedies cannot address. Defendants operated through an association-in-fact enterprise that systematically targeted vulnerable artists, embedding fraudulent claims into official copyright records and contractual agreements. These acts were designed to endure, ensuring that misappropriated publishing shares and diverted royalties would remain hidden and continue generating unlawful profits for years to come. When fraud becomes structural, dismantling that structure requires the tools Congress provided in RICO.

Those tools are essential because the harm here extends far beyond Plaintiffs. The enterprise repeatedly targeted multiple artists before Ayala-Rodríguez, exploiting trust, ignorance

of industry practices, and economic vulnerability. Each victim lost not only revenue but also the ability to control their creative works—a harm that strikes at the heart of artistic integrity. When misconduct becomes systemic, affecting numerous creators and distorting the allocation of rights across an entire genre, the injury is not confined to individuals; it undermines the fairness and transparency of the music business itself. *Reggaetón*, one of the most influential genres globally, depends on trust in copyright and publishing systems. Without strong remedies, these schemes will continue to erode that trust and normalize exploitation.

Normalization of exploitation is what RICO was designed to prevent. Treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c) are not merely punitive; they are corrective and deterrent. They restore balance by compensating victims fully and send a clear message that racketeering activity will not be tolerated in the music industry. By imposing meaningful consequences, the Court can ensure that fraudulent practices do not become standard business models and that future actors are discouraged from exploiting artists through similar schemes. Strong remedies will safeguard the integrity of copyright law, reinforce trust in industry standards, and preserve the creative foundation of *reggaetón* and the broader music community. In short, allowing these RICO claims to proceed is not only consistent with the statute—it is in the public interest to protect creators, uphold the law, and prevent systemic abuse.

**Wherefore**, Plaintiffs respectfully request that this Court note Plaintiffs' compliance with this Court's Order at Docket No. 21, requiring the filing of a RICO Statement.

**Respectfully submitted** in San Juan, Puerto Rico, this 23rd day of January, 2026.

**I hereby certify** that on this date I submitted the foregoing to the Clerk of the Court utilizing the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*Counsel for Plaintiff Ayala*

**ANTONETTI MONTALVO & RAMIREZ-COLL**
P. O. Box 13128
San Juan, PR 00907
Tel. (787) 977-0312
Fax: (787) 977-0323

**s/ Jose L. Ramirez-Coll**
JOSE L. RAMIREZ-COLL
USDC-PR No. 221702
jramirez@amrclaw.com

*Counsel for Plaintiff Los Cangris*



www.CSTLAWPR.com
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433

*s/VÍCTOR O. ACEVEDO-HERNÁNDEZ*
USDC-PR No. 227813
vacevedo@cstlawpr.com

*s/JUAN J. CASILLAS-AYALA*
USDC-PR No. 218312
jcasillas@cstlawpr.com