UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LOS CANGRIS, INC. et al.

      Plaintiffs

      v.

RAFAEL A. PINA-NIEVES, et al.

      Defendants

CIVIL NO.   25-01650 (GMM)

MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

TO THE HONORABLE COURT:

COME NOW defendants Rafael A. Pina-Nieves ("Pina-Nieves"), Los Magnifikos Inc., and

Mafer Music Publishing Inc. (collectively, "Appearing Defendants"), through the

undersigned counsel, and respectfully state and pray as follows:

## I. INTRODUCTION

      In the end, when the carriage reverts to a pumpkin, what will remain is not a

racketeering enterprise but the hangover of a failed marriage. While it will be stressed from

the outset that the suit is time-barred and frivolous, the motion will show that the pleadings

are just an attempt by Plaintiff Ayala-Rodriguez to make a RICO claim out of how he

himself allowed the business to be run. Because RICO is a statute prone to misuse, the First

Circuit Court of Appeals admonishes that:

> [I]n cases alleging civil RICO violations, particular care is required to balance the
> liberality of the Civil Rules with the necessity of preventing abusive or vexatious
> treatment of defendants. . . . Civil RICO is an unusually potent weapon—the
> litigation equivalent of a thermonuclear device. The very pendency of a RICO suit

can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. . . . For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) Selya (citing *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). For these reasons, courts in this Circuit have been instructed to "flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz*, 896 F.2d at 650.

Despite a 107-page Complaint (Dkt. No. 1) and a 61-page RICO Case Statement (Dkt. No. 26) prepared under the reasonable-inquiry mandate of Rule 11, Plaintiffs cannot articulate a coherent RICO claim against Pina-Nieves, WML, Mafer or Los Magnifikos.

## II. PROCEDURAL BACKGROUND

This case began with the filing of the Complaint on November 29, 2025. Dkt. No. 1. The Complaint asserts claims under 18 U.S.C. §§ 1962(c), 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Act Against Organized Crime and Money Laundering of the Commonwealth of Puerto Rico ("PROCA").

On December 29, 2025, Defendants filed a joint motion to compel Plaintiffs to file a RICO Case Statement in the form stated therein, to be treated as an extension of the Complaint. Dkt. No. 20. The Court, on the same day, granted the Motion and ordered Plaintiffs to file a RICO Statement on or before January 23, 2026. Dkt. No. 21. The Court mandated that the "Statement shall include the facts the Plaintiffs are relying upon to assert the RICO claim as a result of the 'reasonable inquiry' required by Rule 11." Id.

Plaintiffs filed their RICO Statement on January 23, 2026. Dkt. No. 26. Despite this Court-ordered opportunity to flesh out their claims with specificity, the RICO Statement

confirms rather than cure the fatal flaws in Plaintiffs' theory. Plaintiffs have now had two bites at the apple—the Complaint and the RICO Statement—and have failed both times to plead a viable RICO claim.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6): Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *A.G. ex rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Maddox*, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Maddox*, 732 F.3d at 80 (quoting *Twombly*, 550 U.S. at 570).

Courts employ a two-step inquiry to resolve Rule 12(b)(6) motions. *Cardigan Mountain Sch. v. N.H. Ins. Co*., 787 F.3d 82, 84 (1st Cir. 2015). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions." *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012). Second, it must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id*. (quotation modified).

Plausibility requires "something more than merely possible or merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71–72 (1st Cir. 2017) (quotation modified). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

B. Heightened Standards for Civil RICO

Civil RICO claims are subject to "uniquely stringent pleading standards." *MCDP Phoenix Servs.*, 2023 WL 2652644, at *3.

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege that a defendant (1) conducted or participated in the conduct of an enterprise's affairs (2) through a pattern (3) of racketeering activity, consisting of at least two actionable predicate acts, and (4) that such racketeering proximately caused a concrete injury to the plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 41–42 (1st Cir. 1991); *Doyle v. Hasbro, Inc*., 103 F.3d 186, 190 (1st Cir. 1996).

An enterprise may be a legal entity like a business, a governmental unit, or a union, or it may be an informal grouping of individuals associated in fact. *United States v. Turkette*, 452 U.S. 576, 580–81 (1981). However, the enterprise itself cannot be the RICO defendant. See *Odishelidze v. Aetna Life & Casualty Co*., 853 F.2d 21, 23 (1st Cir. 1988) (per curiam) ("The 'person' alleged to be engaged in a racketeering activity (the defendant, that is) must be an entity distinct from the 'enterprise.'"). Under *Reves*, the defendant must

participate in the "operation or management of the enterprise itself," meaning he must "have some part in directing [the enterprise's] affairs." 507 U.S. at 179.

"Racketeering activity" is defined to include a variety of federal crimes, including, among other things, threats, bribery, extortion, embezzlement, theft, wire fraud, and mail fraud. 18 U.S.C. § 1961. Plaintiffs allege that the defendants have committed wire fraud in violation of 18 U.S.C. § 1343.[1] To prove wire fraud, a plaintiff must demonstrate: "(1) a scheme [or artifice] to defraud by means of false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate wire or mail communications in furtherance of the scheme." *United States v. Martin*, 228 F.3d 1, 15 (1st Cir. 2000).

To satisfy the "in furtherance" element of a mail fraud claim, "the mailings need not be an 'essential element' of the scheme." *United States v. Hebshie,* 549 F.3d 30, 36 (1st Cir.2008) (quoting *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954)). Rather, the mailings "must be sufficiently closely related to the scheme such that they are incident to an essential part of the scheme, or a step in the plot." *Id.* (quotations and alteration omitted). Although a "but-for" link between a mailing and the fraudulent scheme is not necessary, *Id.,*"the success of the scheme must be dependent in some way on

---

[1] Wire fraud is defined under 18 U.S.C. § 1343, in pertinent part, as:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. […]

the mailings, either in obtaining the desired object or in avoiding or delaying detection of the scheme." *United States v. Greenleaf,* 692 F.2d 182, 186 (1st Cir.1982); *see United States v. Pacheco–Ortiz,* 889 F.2d 301, 305 (1st Cir.1989) ("[T]he scheme's completion or the prevention of its detection must have depended in some way on the mailings.").

The First Circuit recently underscored these principles in *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 107 (1st Cir. 2025), affirming dismissal of a civil RICO claim where the plaintiff failed to plead with specificity who made the alleged misrepresentations, to whom they were made, when and where they were made, what they contained, and why they were fraudulent.

Closer to home, Chief Judge Arias-Marxuach of this District dismissed RICO claims with prejudice in *Puerto Rico Soccer League NFP Corp. v. Federación Puertorriqueña de Futbol*, Civil No. 23-1203 (RAM) 2024 WL 4362339 (D.P.R. Sept. 30, 2024), where plaintiffs similarly failed to plead cognizable RICO claims with the requisite specificity. That decision reflects the settled principle that courts must "flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz*, 896 F.2d at 650.

C. Rule 9(b): Fraud Must Be Pled with Particularity

Where, as here, the alleged predicates are mail and wire fraud, Fed. R. Civ. 9(b) applies with full force. *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997). The rule reads:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). To comply with the rule's requirements Plaintiffs must specify the "time, place, and content" of each alleged misrepresentation, identify who made it, to

whom it was directed, and explain why it was fraudulent. *Id*.; *Feinstein*, 942 F.2d at 42. "[W]here multiple defendants are involved, Rule 9(b) requires that fraud be alleged particularly as to each defendant." *Krick v. Raytheon Co*., 695 F. Supp. 3d 202, 216 (D. Mass. 2023). Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements. *Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011).

### D. Judicial Notice and Extra-Pleading Materials

Although review under Rule 12(b)(6) is generally confined to the four corners of the complaint, courts may consider matters that are susceptible to judicial notice. *Rodi v. S. New England Sch. Of L.,* 389 F.3d 5, 12 (1st Cir. 2004); *Colonial Mortg. Bankers,* 324 F.3d at 15–16; *Boateng v. InterAmerican Univ.,* 210 F.3d 56, 60 (1st Cir.2000). It may also properly consider documents incorporated by reference, matters of public record, and judicially noticeable adjudications without converting the motion to one for summary judgment. *Trans-Spec Truck Serv. v. Caterpillar Inc*., 524 F.3d 315, 321 (1st Cir. 2008); *Beddall v. State St. Bank & Tr. Co*., 137 F.3d 12, 16–17 (1st Cir. 1998). This exception includes documents the authenticity of which are not disputed by the parties; documents central to plaintiffs' claim; or documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see Hughes v. Baystate Fin. Servs., LLC, No. 23-CV-10361-AK, 2024 WL 1466611, at *2 (D. Mass. Mar. 31, 2024) (The Court considers an email submitted by Defendant IAFF-FC as Exhibit A to its memorandum in support of its motion to dismiss [Dkt. 27-1], a document which has been "sufficiently referred to in the complaint" and whose authenticity is not in dispute.)

# IV. ARGUMENT

## A. The suit is time barred

Civil RICO carries a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). Accrual begins when the injury is discovered or should have been discovered with reasonable diligence; discovery of the entire pattern is not required. *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000); *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 625–26 (1st Cir. 2019).

In the First Circuit, accrual is injury-based, not discovery-of-scheme based. The limitations period begins when the plaintiff discovers—or in the exercise of reasonable diligence should have discovered—the injury itself. See *Lares Grp., II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000). There is no "last predicate act" rule that would revive earlier time-barred injuries. *Id.,* at 44–45.

Reasonable diligence does matter, and a plaintiff who is not reasonably diligent may not assert "fraudulent concealment." *Klehr v. A.O. Smith Corp*., 521 U.S. 179, 194, 117 S. Ct. 1984, 1993, 138 L. Ed. 2d 373 (1997). Fraudulent concealment in the context of civil RICO embodies a "due diligence" requirement. Id. at. 196. Thus, a plaintiff who fails to exercise reasonable diligence cannot invoke concealment to toll the statute.

The Complaint and the RICO Case Statement identify eight different Copyright registrations from 2022-2025, claiming them as predicate acts under RICO. Complaint ¶¶ 95, 97, 98, 99, 100, 102, 104, 105, each of which is listed in a table included in ¶ 29 of the Complaint, listing the persons identified as authors and claimants in each registration. One of those Copyright registrations is attached as Exhibit A. It lists Ayala-Rodriguez, Pina-Nieves, and others, as authors and defendant Gasolina Publishing as the claimant.

Under the Copyright Act, the "claimant" in a registration is the party asserting current ownership of the copyright — that is, the person or entity claiming the economic interest embodied in the registration. An individual becomes a claimant either (1) by virtue of authorship under 17 U.S.C. § 201(a) and (d), or (2) through a valid transfer of ownership pursuant to 17 U.S.C. §§ 201(d) and 204(a).

Accordingly, since ownership vests initially in the author, 17 USC § 201(a), when Exhibit A lists Ayala-Rodríguez as an author but identifies someone else as the claimant, the filing necessarily represents that Ayala-Rodríguez's ownership interest has been transferred (not necessarily to the current claimant as there might have been an earlier transferee). Exhibit A itself so manifests in the Copyright Claimant section, where it states: "Transfer statement: By Written agreement." Exhibit A. Because Plaintiffs have made the Copyright Registration central to its allegations in the Complaint, and that document is incomplete without the transfer document, attached as Exhibit B (filed under seal) is the Assignment of Copyrights in Musical Compositions and Exclusive Administration Rights and Schedule I listing the Compositions. The document is not subject to dispute because it is signed by plaintiff Ayala-Rodriguez and his signature is notarized. Because Plaintiffs have made it an integral part of the Complaint and it is not subject to dispute, the Court may therefore consider the document at the Rule 12(b)(6) stage.

The document establishes that Ayala-Rodríguez was aware—no later than June 2021—that Pina-Nieves (or entities affiliated with him) held publishing percentages in numerous works alleged in the Complaint to be fraudulently misappropriated, including "Bella y Sensual," subject of the Copyright registration. Exhibit B-013.

The schedule shows splits for Pina and/or Los Maginifikos and/or Mafer for compositions for which the Complaint alleges fraudulent concealment: Buena Vida, Buena Vida (Remake), Dura (Remix), Bella y Sensual, Inolvidable (Remix), La Rompe Corazones, Llevo Tras De Ti, Mayor Que Yo 3, Otra Cosa, Perdido por el Mundo, Todo Comienza en la Disco, Vuelve, and Zum Zum Zum.

Ayala-Rodríguez, thus, cannot deny knowledge as far back as June 2021 of the very splits that he now characterizes as concealed fraud.

Actual knowledge in June 2021 triggers accrual for all compositions. *Klehr* requires diligence. The First Circuit has repeatedly held that accrual begins when a plaintiff has sufficient information that would prompt a reasonably diligent person to investigate. See *Álvarez-Maurás*, 919 F.3d at 626. Thus, even if Plaintiffs were to argue that not all compositions are included in the assignment, it indisputably placed him on inquiry notice going forward.

Once a plaintiff is aware that his publishing percentage has been diluted and that Pina-Nieves claims ownership interests, later acts that merely memorialize an already-known allocation do not create a new injury for limitations purposes. See *Lares Group*, 221 F.3d at 44 (cause of action accrues when injury discovered, not when later acts occur).

A statute-of-limitations defense may be resolved on a Rule 12(b)(6) motion "when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). Here, the assignment document—integral to the Complaint—establishes knowledge in June 14, 2021, and the filing occurred in November 29, 2025, well outside the four-year period.

The allegations as to a later discovery in the Complaint are, thus, frivolous. The Complaint alleges that Plaintiffs first discovered the "misappropriations" in 2025 that:

> In 2025, Plaintiffs conducted a review of Ayala Rodríguez's intellectual property portfolio—primarily his composition catalog. When Plaintiffs searched Los Cangris' internal records and the public records of the U.S. Copyright Office, a chilling truth surfaced. Plaintiffs discovered that Pina-Nieves had inserted his name as an author on numerous songs originally written by Ayala-Rodríguez in collaboration with other legitimate co-authors, thereby assigning himself ownership shares in these compositions and securing monetary compensation for works he neither authored nor was ever intended to author.

Dkt. No. 1, Complaint ¶ 28. That allegation is irreconcilable with the June 14, 2021, assignment document. The schedule attached to that agreement lists seventeen works now alleged as fraudulently diluted, together with the specific publishing splits and the identification of Pina-Nieves or his affiliated entities as rights holders. Ayala-Rodríguez wrote his initials on the pages reflecting those allocations. The assertion that he remained unaware until 2025 that Pina claimed publishing percentages in these works is therefore implausible as a matter of law and openly frivolous.

The Court should dismiss the Complaint as time-barred.

## B.  The Complaint Fails to Plead the RICO Elements of Enterprise and Racketeering Activity

### 1. <u>Plaintiffs fail to adequately plead an enterprise.</u>

As indicated above, to state a claim under § 1962(c), a plaintiff must plausibly allege an enterprise and a pattern of racketeering activity, consisting of at least two actionable predicate acts, and that such racketeering proximately caused a concrete injury to the plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985). Plaintiffs here fail to plausibly plead an enterprise.

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) The term "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). It is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. *United States v. Turkette*, 452 U.S. 576, 583 (1981).

To establish an association-in-fact enterprise, plaintiffs must demonstrate "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938 (2009). To determine whether a group of individuals or entities constitutes an association-in-fact within the meaning of the RICO statute, courts analyze the "hierarchy, organization, and activities" of the alleged association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 174–75 (2d Cir. 2004). For there to be an enterprise its members must share a "common purpose." *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004); *Ryan v. Clemente,* 901 F.2d 177, 180 (1st Cir.1990) ("it is very clear that those who are 'associates' ... of a criminal enterprise must share a 'common purpose' ...."). The concept of association requires both interpersonal relationships and a common interest. *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009).

Plaintiffs characterize the RICO enterprise in this case as consisting of an "association-in-fact" among the named parties for the common purpose of misappropriating publishing shares and diverting royalties from Ayala-Rodriguez and Los Cangris to Pina and his companies. Doc. 1 Complaint ¶108.  This enterprise is not alleged as a formal entity but as a group of persons.

### (i)    The Complaint fails to adequately plead González-Castellanos' role in the enterprise

Plaintiffs' enterprise claim begins with a stark implausibility: the inclusion of González-Castellanos –Ayala-Rodriguez's wife at the time, president and co-owner of plaintiff Los Cangris (see Dkt. No. 1, Complaint §§ 25 & 26)– as a central and necessary participant in the enterprise. The enterprise theory advanced in the pleadings requires the Court to accept that she purposefully participated in a scheme to dilute the publishing shares of Los Cangris—the very corporation she led—and thereby reduce the revenue stream that constituted its core business asset.

The pleadings do not overcome the plausibility threshold. The claim is conclusory:

¶190 (c) To provide the administrative backbone of the fraudulent schemes by preparing and transmitting false split sheets and publishing allocations, González-Castellanos ensured concealment of misappropriation and, **upon information and belief, preserved her position and financial advantages tied to the enterprise's success**.

Dkt. No. 1, Complaint §190(c).

The First Circuit has held that "[a]llegations based on 'information and belief' do not satisfy Rule 9(b) unless the complaint also sets forth facts on which the belief is founded." *Wayne Invest., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984). Plaintiffs identify no specific financial benefit she received, no side payment, no ownership interest in the alleged beneficiary entities, and no concrete economic gain tied to the purported

racketeering activity that would render such conduct economically rational. Nor do they set forth facts, on which their belief is founded. What it pleads is purely speculative and conclusory, the kind of defect *Iqbal* instructs the Court to brush aside. Absent well-pleaded facts showing self-dealing or a distinct personal payoff, the theory is implausible on its face.

Making matters worse, Plaintiffs fail to specifically plead that the defendants González-Castellanos and Pina (the alleged leader to the enterprise), reached any sort of agreement among themselves that would allow the purported association-in-fact enterprise to function, in a coordinated manner, as a continuing unit. *See e.g., Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV. 7801 PAE, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) ("They fail to make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit, or supporting the inference that defendants had a common interest in the success of the so-called enterprise."). This "failure to plead with any specificity as to the nature of the defendants' common interests and the mechanics of the alleged ongoing working relationship among defendants is fatal." *Id.* (emphasis added); *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (plaintiff's allegations were insufficient because they failed to plead interpersonal relationships, agreement).

Accordingly, Plaintiffs' failure to plausibly allege González-Castellanos's knowing and self-interested participation in the purported scheme is fatal to the enterprise theory as pled. An association-in-fact enterprise requires more than a list of names; it requires well-pleaded facts demonstrating a shared unlawful purpose, interpersonal relationships

reflecting coordinated conduct, and a functioning unit with structural coherence. The Complaint fails to plead that.

Absent plausible allegations that she knowingly aligned herself with the alleged racketeering objective for personal benefit, the supposed "enterprise" lacks the requisite common purpose and coordinated structure. Without adequately pleading her participation as part of a continuing unit with a shared illicit objective, Plaintiffs' enterprise claim under § 1962(c) fails as a matter of law.

What remains is, at most, a series of business decisions by Gonzalez-Castellanos that her former husband now disputes, not a RICO claim.

### (ii) Plaintiffs' Admission Destroys Their Enterprise

In response to Question 8 of the RICO Case Statement—asking how the racketeering activity differs from the usual and daily activities of the enterprise—Plaintiffs state:

> The enterprise's day-to-day operations consisted of carrying out the predicate acts alleged. The enterprise functioned as a vehicle for fraud and extortion. The pattern of racketeering activity—wire fraud and extortion—was not an occasional deviation from normal business practices but **the enterprise's regular way of doing business**.

Dkt. No. 26, RICO Statement at 50–51 (emphasis added).

Pursuant to this, the alleged enterprise appears entirely defined by the alleged racketeering acts. The enterprise is nothing more than defendants carrying out the alleged fraudulent allocations.

This admission is fatal. The Supreme Court has repeatedly emphasized that the enterprise must have an existence "separate and apart" from the pattern of racketeering

activity. *United States v. Turkette*, 452 U.S. 576, 583 (1981). The existence of an enterprise at all times remains a separate element which must be proved *Id.*

The test is straightforward: "[W]e must determine if the enterprise would still exist were the predicate acts removed from the equation." *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354–55 (8th Cir. 2011). Here, Plaintiffs' own admission answers that question: the enterprise's day-to-day operations *consisted of* carrying out predicate acts. Remove the predicate acts and nothing remains. "If the sole purpose of the alleged enterprise is to perpetrate the alleged fraud, there can be no enterprise for RICO purposes." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 401 (S.D.N.Y. 2000). See also *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815–16 (8th Cir. 1992) (The only common factor that linked all these parties together and defined them as a distinct group was their direct or indirect participation in Markle's scheme to defraud Stephens. Although it is true that each member of this group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise and, thus, were not acts of the enterprise. Stephens, consequently, failed to prove the existence of an enterprise that extended beyond the minimal association surrounding the pattern of racketeering activity.)

The Eastern District of New York recently applied these principles in *May Flower International, Inc. v. Amoy Food Limited*, 2025 WL 3089291 (E.D.N.Y. Nov. 5, 2025), dismissing RICO claims where plaintiff "fail[ed] to put forward any allegations indicating that the alleged enterprises existed separate and apart from the fraudulent scheme." *Id.* at *6. The court held that although plaintiff asserted defendants shared a common purpose, plaintiff "offer[ed] no support for that assertion beyond that bare conclusion." *Id.* As that

court warned, courts must "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Id.* at *5. Here, as in *May Flower*, this is "exactly the type of garden-variety claim that should be weeded out." *Id.*

Plaintiffs' own words foreclose their RICO theory. By expressly admitting that the enterprise's "day-to-day operations consisted of carrying out the predicate acts alleged" and that the enterprise functioned as nothing more than a "vehicle for fraud and extortion," Plaintiffs collapse the statutory distinction between the "enterprise" and the "pattern of racketeering activity." Their formulation leaves no room for an ongoing organization with a structure, purpose, or activities independent of the alleged misconduct; instead, the supposed enterprise is defined entirely by the commission of the predicate acts themselves. Under *Turkette* and its progeny, that is legally insufficient. If removing the alleged wire fraud leaves nothing behind—no continuing unit, no structure apart from the racketeering—then there is no cognizable enterprise as a matter of law. Plaintiffs have thus pled themselves out of court by equating the enterprise with the racketeering activity.

### 2. None of the alleged predicate acts qualify as a racketeering activity

The pattern of racketeering activity is a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1). It is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes, see 18 U.S.C. § 1961(1)(B), (5). Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a

"pattern"—the plaintiff also must demonstrate that the "predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 15 (1st Cir. 2000).

Plaintiffs define the racketeering activity as follows:

The pattern of racketeering activity consists of coordinated schemes to defraud Plaintiffs by unlawfully obtaining publishing percentages and the corresponding royalties that rightfully belonged to them. To carry out and advance these schemes, Defendants caused wire communications to be transmitted in interstate and foreign commerce.

Dkt. No. 26, RICO Case Statement, p.5.

In other words, the use of emails to unlawfully obtain publishing percentages. This activity is described in more detail in the Complaint:

34….Emails, online forms, and other electronic submissions were used to effectuate these changes, to circulate them to publishers, registries and collection entities, and to confer a veneer of legitimacy on allocations that were false at their core.

36. Throughout this period, Pina-Nieves—acting in concert with González-Castellanos and other defendants—exercised control over the flow of information concerning publishing shares and allocations, **deliberately concealing these manipulations from Ayala-Rodríguez to prevent detection and maintain the scheme**.

37 … escalated the scheme by embedding his fabricated claims in official and industry records.

43. The effectiveness of these schemes rested on practical realities of the industry. The U.S. Copyright Office, music publishers, and PROs rely on truthful submissions. Pina- Nieves, with the assistance of co-defendants, exploited this reliance by transforming manipulated split sheets and contractual documents into official registrations and payment instructions that redirected revenue streams. The continuous use of emails, online filings, and wire transmissions facilitated the execution, concealment, and ongoing collection of misdirected proceeds.

Dkt. No. 1, Complaint ¶¶ 34, 36, 37, 43.

In sum, the claim in use of emails in furtherance of the fraudulent scheme has two components: concealing the scheme from Ayala while communicating the splits to others.

### (i) <u>The predicate acts antedating the enterprise must be discarded</u>

The Complaint claims the RICO enterprise began in 2015 and spanned for nearly a decade into 2025. Dkt. No. 1, Complaint ¶3. The Complaint, however, alleges predicate acts occurring between 2004 and 2005, prior to the creation of the enterprise. See Dkt. No. 1, Complaint ¶¶ 46, 47, 48, 49 & 50.

The RICO claim under Section 1962(c) makes it unlawful to conduct or participate in the "conduct of the affairs **of an enterprise**" through a pattern of racketeering activity. 18 U.S.C. § 1962(c). This language necessarily requires that the enterprise exist at the time the predicate acts are committed.

Plaintiffs cannot have it both ways. If the enterprise formed in 2015, then acts in 2004–2005 cannot be RICO predicates—they predate the enterprise by over a decade. If Plaintiffs contend the enterprise existed in 2004, they must allege that the same association-in-fact with the same common purpose existed continuously from 2004 through 2025—a claim that strains credulity given the 11-year gap and the fact that the Complaint does not plead that Pina and González-Castellanos even knew each other that far back.

Moreover, even if these temporally impossible acts could somehow be attributed to the enterprise, they fail the "relatedness" prong of the pattern requirement. The Supreme Court held in *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 239 (1989), that RICO's pattern requirement ensures that a person is not "subjected to sanctions for committing two widely separated and isolated criminal offenses." "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants,

victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240.

The Ninth Circuit applied this framework in *Howard v. America Online Inc*., 208 F.3d 741, 749–50 (9th Cir. 2000), holding that predicate acts sharing the same participants but differing in "purpose, result, victim and method" are not "related" within the meaning of RICO. The court held that "[t]o hold that Plaintiffs have established relatedness solely because they implicate the same participants makes that requirement virtually meaningless." Id. at 750.

So it is here. The 2004–2005 extortion allegations involve threats of physical harm against Juan Ortiz-García over album distribution—a purpose, result, victim, and method that are "strikingly different" from the 2015–2025 publishing fraud involving split sheets and copyright registrations directed at Ayala-Rodriguez. These are two widely separated and isolated criminal episodes, not a related pattern. That the same defendant may have been involved in both does not, under *Howard*, establish the relatedness that RICO demands.

> **(ii)    The predicate acts based on communications to and from an ASCAP representative or to independent publishers cannot constitute fraudulent concealment.**

The bulk of the alleged predicate acts identified in the Complaint consist of routine email communications with industry representatives—most prominently Rivera-Pagán at ASCAP and Rodríguez at Sony Publishing—regarding publishing splits, songwriter percentages, and catalog information. See Dkt. No. 1, Complaint ¶¶ 52, 54, 55, 56, 63, 64, 65, 67, 69, 71, 72, 73, 74, 75, 76, 79, 80, 83, 85, 86, 87, 88, 93, 101, 103. The Complaint

often fails to identify the recipient of the emails, but the RICO Statement completes the information.

These are not secret transmissions between co-conspirators designed to conceal wrongdoing; they are communications directed to third-party entities whose institutional role is to receive, verify, administer, and, where appropriate, question authorship and publishing claims. ASCAP and Sony are not passive bystanders. They are sophisticated, regulated industry participants responsible for tracking ownership data and ensuring the accuracy of royalty distributions. Communications to such entities necessarily increase the number of individuals and systems exposed to the allegedly false information. By definition, that expands—not restricts—the risk of scrutiny.

The Supreme Court has made clear that a mailing or wire transmission does not satisfy the mail or wire fraud statutes unless it is "for the purpose of executing" the scheme. In *United States v. Maze*, 414 U.S. 395, 403 (1974), the Court held that mailings which "increased the probability that [the defendant] would be detected and apprehended" were not in furtherance of the scheme. The Second Circuit applied the same reasoning in *Lundy v. Catholic Health System of Long Island Inc*., 711 F.3d 106, 119–20 (2d Cir. 2013), affirming dismissal of a RICO claim where the alleged mailings—pay stubs—would have revealed, not concealed, the supposed underpayment. Likewise, in *Cavallaro v. UMass Memorial Health Care Inc*., No. 09–40152, 2010 WL 3609535, at \*2–3 (D. Mass. July 2, 2010), the court rejected a mail fraud theory because the mailing of paychecks that allegedly omitted compensation would have made discovery of the discrepancy more likely, not less. As that court explained, if the documents were inaccurate as alleged, they did not further the fraud—they exposed it.

The same structural defect exists here. Emails to ASCAP, Sony Publishing and others in the industry, documenting publishing splits are, by their nature, traceable business records sent to independent entities that maintain databases, audit shares, and communicate with multiple rights holders. They create written trails. They generate confirmations. They are stored in institutional systems beyond defendants' control. If the allocations were unauthorized, those communications would create precisely the type of documentary footprint that enables detection by co-writers, administrators, auditors, and future catalog purchasers. Under *Maze, Lundy*, and *Cavallaro*, communications that expand the audience of the allegedly false information and embed it in third-party compliance systems cannot plausibly be characterized as wires "in furtherance" of a concealment-based fraud theory.

In short, the Complaint attempts to transform ordinary industry correspondence into racketeering predicates. But where the alleged wires consist of transparent communications to royalty administrators—entities whose function is to scrutinize and process ownership claims—the law does not permit them to be recast as instruments of concealment. As the Supreme Court made clear, a transmission that increases the probability of detection is not one that executes the scheme.

A close examination of a typical alleged predicate act involving ASCAP representative Roberto Rivera Pagan illustrates this point. Plaintiffs allege:

> On or about January 11, 2017, at approximately 4:01 PM, for the purpose of executing and attempting to execute a scheme and artifice to defraud, Coll-Fernández used his WML email address to knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce **an email to Roberto Rivera-Pagán ("Rivera-Pagán"), a representative of the American Society of Composers, Authors, and Publishers ("ASCAP"), a performance rights organization**. In that email, Coll-Fernández falsely represented that Pina-Nieves and his publishing company, Mafer, held a thirty percent (30%) publishing share in the musical composition "**Otra Cosa**"—a percentage exceeding Plaintiffs' twenty-five percent (25%) share. This

representation was materially false because Ayala-Rodríguez, as an author of the composition, never consented to such assignment, and Defendants deliberately concealed this fact with the intent to deceive Ayala-Rodríguez and obtain money and property—specifically, publishing rights and income from the song "Otra Cosa." This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

Dkt. No. 26, RICO Case Statement p.11, cf. Complaint ¶52.

Let's see how this specifically flows. First, Coll emails rrivera@ascap.com

informing the splits:

> **From:** **Andres Coll** andrescoll@pinarecords.net
> **Subject:** splits Otra Cosa
> **Date:** January 11, 2017 at 4:01 PM
> **To:** rrivera@ascap.com
>
>
> Egbert E. Rosa "Haze" / Sony/ATV Latin Music Publishing LLC (BMI) / 15%
> Rafael Pina / Mafer Music Publishing (ASCAP) Administered by Sony/ATV Latin Music Publishing LLC / 30%
> Ramón L. Ayala "Daddy Yankee" / Los Cangris Publishing (ASCAP) / 25%
> Natalia Gutiérrez "Natti" / adm by Mafer Music Publishing (ASCAP)/ 15%
> Jesús M. Nieves Cortés / A Million Dollar Dream (ASCAP) /15%

Exhibit C (Rule 12(b)(6) admissible as a document referenced to in the Complaint).

That Ayala-Rodriguez is not copied is the result of his own volition. Plaintiffs

allege on paragraphs 25–26 of the Complaint, that:

> 25. To allow him to focus fully on his artistic endeavors and creative output, Ayala-Rodríguez entrusted the day-to-day management of El Cartel's and Los Cangris' internal affairs to his then-wife, González-Castellanos.

> 26. During his extensive career, Ayala-Rodríguez devoted himself entirely to his artistic development, entrusting the management of El Cartel and Los Cangris (collectively, "the corporations") to Mireddys González-Castellanos.

Dkt. No. 1, Complaint ¶¶ 25-26. In other words, Ayala voluntarily withdrew from

operational control and delegated management authority, to focus exclusively on artistic

output. That would explain why he is not being copied. In any event, by itself, the mere act

of not copying Ayala-Rodriguez does not allow an inference of fraudulent intent. See

*O'Ferral v. Trebol Motors Corp.*, 45 F.3d 561, 564 (1st Cir. 1995) (no one could fairly infer fraudulent intent merely from the nondisclosure.)

The information provided by Coll to ASCAP, ends up in ASCAP's databases:



Exhibit D, (Rule 12(b)(6) admissible by judicial notice).

Anyone, as counsel did here, can access the database, search for "Otra Cosa" and see Rafael A. Pina Nieves listed as a "writer" together with Ayala and others. Coll could not plausibly have believed that communicating with ASCAP would keep the information hidden. If anything, transmitting the information to ASCAP ensured that the allocation would be recorded in a centralized, reviewable (i.e. public) system. Fraudulent concealment typically involves bypassing oversight, avoiding institutional recordkeeping, or falsifying internal documents. This communication did the opposite—it submitted the

allocation to an independent entity whose business model is transparency and royalty accounting.

The January 11, 2017, email is even further removed from the realm of wire fraud when one considers that it does not operate in a vacuum. The split notification for "Otra Cosa" lists five separate writers/publishers. Each of those writers and/or their publishing administrators has independent economic incentive to monitor ASCAP's repertory database. This is not a unilateral allocation affecting a single silent counterparty. It is a multi-party split where four other separate rights holders—each with their own publishers, administrators, and royalty streams—would predictably review and confirm the database entries.

Because the emails to industry professional and entities do not conceal, but on the contrary publicize the splits, those emails are not fraudulent concealment and cannot form the basis for a RICO predicate act.

### (iii) Predicate acts based on emails to unknown recipients fail Rule 9(b)

Three predicate acts are based on emails purportedly sent by Pina "to persons unknown. Dkt. No. 1, Complaint ¶¶ 70, 82, 83, clarified in the RICO statement that the emails were "to persons unknown" or to "two unknown individuals."

This poses several problems. First, the Rule 9(b) requires identifying the recipient of the communications. Plaintiffs fail to do so. Second, RICO requires proof of an injury to property. Without identifying the recipients, Plaintiffs cannot plead an injury to property for they cannot possibly know the purpose of the communication or the use the unknown recipients gave to the information.

**(iv)** **Predicate acts based on emails between Pina, González-Castellanos would be purely internal.**

A whole series of predicate acts consist of communications between Pina, González-Castellanos, employees and attorneys for Los Cangris. Dkt. No. 1, Complaint ¶¶ 53, 63, 66, 67, 68, 78, 81, 85, 90, 91, 92, 94, Under the enterprise theory posed in the Complaint, these constitute merely internal communications that by themselves, and in the absence of any other evidence, cannot cause a harm to property.

These emails are routine music-industry communications documenting publishing allocations. They do not contain representations that can be characterized as "true" or "false"—communicating a business decision about how to allocate publishing percentages is not a factual statement subject to fraud analysis. Critically, González-Castellanos— President of *Plaintiffs' own company*, Los Cangris, Inc.—was copied on or affirmatively approved many of these allocations. If the President of the copyright-owning entity approved the allocations, Pina-Nieves could not have had fraudulent intent in accepting them. He was entitled to rely on her apparent authority. *See* P.R. Laws Ann. tit. 14, § 2505. "A simple breach of contract is not fraud." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). What Plaintiffs allege is a contract and corporate governance dispute— not wire fraud.

Multiple of those predicate acts allege that defendants merely *received* or were copied on emails. (Compl. ¶¶ 61, 63, 67, 68, 76, 80, 85, 93). Receipt of an email is not "transmission" in furtherance of a fraudulent scheme, and it does not constitute a misrepresentation by the recipient. These paragraphs cannot count toward the required "two predicate acts." 18 U.S.C. § 1961(5). Strip these non-predicates from the count and Plaintiffs' alleged "pattern" shrinks dramatically.

**(v)** **Predicate acts that did not involve the use of electronic mail do not qualify as wire fraud under RICO**

One of the predicate acts even omits the mention of wire fraud. On paragraph 77 of

the Complaint, Plaintiffs allege:

> In or about 2020, Pina-Nieves falsely listed himself as the producer of the 2K20 Live album, which involved interstate and foreign wire communications, when in fact he had only served as the producer of the live show.

Dkt. No. 1, Complaint ¶ 77. The reference to "interstate and foreign wire communications"

is, of course, conclusory. The RICO Statement fares no better:

> In or about 2020, with intent to defraud, Pina-Nieves falsely listed himself as the producer of the 2K20 Live album, which involved interstate and foreign wire communications, when in fact he had only served as the producer of the live show. This misrepresentation was made as part of a scheme and artifice to defraud devised and executed by Defendants to obtain money and property—specifically, credit and income associated with the album. This representation was materially false because Pina-Nieves did not produce the album, and Defendants deliberately concealed this fact with the intent to deceive and to obtain financial benefits. **The use of interstate wire communications was reasonably foreseeable** to Defendants and occurred for the purpose of executing and attempting to execute the fraudulent scheme. Namely, it was reasonably foreseeable that payments for royalties and communications concerning the 2K20 Live album would occur over electronic communications, including email communications, which occur over the internet and therefore are transmitted through interstate or foreign commerce. This predicate act constitutes wire fraud in violation of 18 U.S.C. § 1343.

Dkt. No. 26, RICO Case Statement pp.26-27.

Plaintiffs attempt at dragging this act into a wire fraud just because it is reasonably

foreseeable that the documents would be transmitted by email is mere speculation. It cannot

be considered as a RICO predicate act of wire fraud.

**(vi)** **The predicate acts based on copyright registrations occurring between 2022-2025 must be discarded because they do not show an injury to property nor adequately plead wire fraud.**

The Complaint and the RICO statement identify different Copyright registrations

from 2022-2025, claiming them as predicate acts under RICO. Dkt. No. 1, Complaint ¶¶

95, 97, 98, 99, 100, 102, 104, 105, 106. By the pleadings themselves, all but ¶106 pertain to copyrights transferred by Ayala-Rodriguez.

RICO requires plaintiffs to show that they were "injured in [their] business or property by reason of" the racketeering activity. *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 66–67 (1st Cir.1998). To avert dismissal under Rule 12(b)(6), civil RICO complaint must state facts showing "a causal nexus between [racketeering activity] and the harm alleged"; the "injury itself" must be "the result of a predicate act." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44, 47 (1st Cir.1991).

As stated, the pleadings show that in those eight copyright registrations Ayala-Rodriguez had transferred his copyright interest in the works registered. Having done so, he cannot show an injury.

These predicate acts allege that Pina is listed as "one of the authors" in the relevant copyright registrations (and in one of them also as a claimant0. The Complaint itself includes a table showing that Ayala-Rodríguez is also identified as an author in those same registrations. See Dkt. No. 1, Complaint ¶ 29. The table further reflects that Ayala-Rodríguez is not listed as a claimant in any of them. That distinction is legally decisive.

At no point in the Complaint or the RICO Statement do Plaintiffs allege that the "claimant" designation is fraudulent. The claimant in most of them is defendant Gasolina. But in describing Gasolina's participation in the racketeering enterprise, Plaintiffs only mention that: "Gasolina Publishing Co. institutionalized Pina-Nieves' fraudulent authorship claims by filing copyright registrations listing him as an author." RICO Statement p.4.

Without negating the transfer of the copyrights, Plaintiffs cannot allege that listing Pina as author in the registrations deprived them of any ownership interest. That failure is critical because civil RICO requires injury to "business or property." 18 U.S.C. § 1964(c); see also *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Injury must be concrete, proprietary, and proximately caused by the alleged predicate act. If Ayala had previously transferred his economic interest in the works, then the registration could not have injured property he no longer owned.

The other registration was filed by a third party not included in the Complaint as part of the enterprise. The Court may take judicial notice of the copyright registration itself, which undermines the theory that Defendants "caused" its filing. The registration for De Vuelta Pa' La Vuelta (Registration No. PA 2-529-307, effective March 24, 2025) shows that the application was certified by Jessica Casinelli and that Stilwell Creative Capital, LLC is listed as a copyright claimant, with the transfer statement: "By assignment." Exhibit E.

The face of the registration reflects that Stilwell Creative Capital, LLC claimed ownership by assignment. It does not state that Defendants filed it, directed it, or even participated in its preparation. Nor does the pleading allege any contractual relationship between Defendants and Stilwell Creative Capital, LLC that would support an inference of control.

This fails Rule 9(b) pleading standards for fraud. It merely asserts that "for the purpose of executing and attempting to execute a scheme and artifice to defraud, Defendants knowingly and intentionally caused the filing of a copyright registration." That is a textbook conclusory allegation. It recites intent ("knowingly and intentionally"),

causation ("caused the filing"), and purpose ("to execute a scheme to defraud") without pleading any of the particularized facts required for fraud.

Under Rule 9(b), a plaintiff must allege the who, what, when, where, and how of the alleged fraud. Here, the pleading does not identify who among the Defendants submitted the registration or directed its submission. Instead, the allegation simply labels the filing fraudulent and attributes it to "Defendants" collectively. That is precisely the type of undifferentiated group pleading that courts routinely reject in RICO cases sounding in fraud.

Tellingly, the registration lists Marco Antonio Muñiz (Marc Anthony) as one of the authors. Where a third-party entity (Stilwell) claims rights "by assignment," and the one listed author that does not appear s claimant is Marc Anthony, the far more obvious and non-fraudulent inference is that Stilwell's claim derived from an assignment from Marc Anthony or from a prior transferee in his chain of title. Nothing in the RICO Statement pleads facts excluding that lawful possibility.

To plausibly allege that Defendants "caused" this filing as part of a fraudulent scheme, Plaintiffs would have needed to plead specific facts showing that defendants had authority over Stilwell Creative Capital, LLC, or directed its filing decisions; that the "By assignment" transfer statement was false. None of those facts are alleged.

Instead, Plaintiffs rely on a conclusory assertion that Defendants "caused" the registration to be filed for fraudulent purposes, while the judicially noticeable record shows an independent third-party claimant asserting rights by assignment—strongly suggesting that the registration flowed from a transfer by Marc Anthony or an earlier transferee in his chain of title, not from any covert act by Defendants.

30

There is a further, independent deficiency. For each of the eleven copyright-registration predicate acts, Plaintiffs plead the essential wire element—that the registration's "filing, display, and maintenance" in the Copyright Office system "caused wire communications to travel in interstate and foreign commerce"—solely "upon information and belief." *See* Compl. ¶¶ 49, 50, 95, 97, 98, 99, 100, 102, 104, 105, 106; RICO Statement, Section 5. The First Circuit has held that "[a]llegations based on 'information and belief' do not satisfy Rule 9(b) unless the complaint also sets forth facts on which the belief is founded." *Wayne Invest., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984). This Circuit has "strictly applied Rule 9(b)" and will not "permit a complainant to file suit first, and subsequently to search for a cause of action." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).

Plaintiffs do not identify a single wire communication that was transmitted as a result of any copyright registration filing. They do not allege who accessed the Copyright Office database, when, from where, or in furtherance of what. They simply assert, by formulaic recitation, that the existence of a government database must have caused some unspecified wire communication at some unspecified time. Under *Wayne Investment* and *Hayduk*, these eleven predicate acts fail as a matter of law.

The Complaint's reliance on "upon information and belief" extends beyond the copyright registrations into foundational scheme allegations: that filings "were timed to maximize the diversion of royalties" (Dkt. No. 1, Complaint ¶ 37); that Pina-Nieves "monetized" fabricated claims (Dkt. No. 1, Complaint ¶ 38); that the scheme "targeted unsophisticated companies and young artists" (Dkt. No. 1, Complaint ¶ 40); that he "entrenched control by positioning himself as the artists' sole 'bank'" (Dkt. No. 1,

Complaint ¶ 41); and the enterprise's purposes ¶Dkt. No. 1, Complaint ¶¶ 109(b), (c), 110(e)). These are the factual pillars of Plaintiffs' continuity, enterprise, and pattern theories—and they rest on nothing more than formulaic invocations of belief.

In short, the allegation is insufficient under Rule 9(b), implausible under *Twombly/Iqbal*, and contradicted by the public registration record itself.

### (vii)    An email from a third party not tied to the enterprise is insufficient under Rule 9(b)

Finally, the April 27, 2015, email attributed to Francisco Sninealdaña ("Luny") fails as a RICO predicate act under 18 U.S.C. § 1343. Dkt. No. 26, RICO Case Statement p.10, cf. Dkt. No. 1, Complaint ¶ 51. The alleged transmission is not attributable to any defendant as required for civil RICO liability. The pleading states that Saldaña—who is not named as a defendant—sent the email. There are no particularized factual allegations showing that any defendant directed, authorized, caused, or even knew of this specific transmission. The statement that the transmission was a "reasonably foreseeable consequence" of a broader scheme is a conclusory formulation, not a factual allegation. Under Rule 9(b), foreseeability is not a substitute for pleading who caused the wire, how it was caused, and pursuant to what agreement or instruction. Without factual allegations tying a defendant to the actual use of the wire, this cannot qualify as a predicate act attributable to a RICO "person."

### C. The Complaint Fails Because No Scienter is Alleged

The Complaint never alleges that Pina-Nieves *knew* his statements or actions were false or unauthorized. This is fatal. Wire fraud requires proof of intent to defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (plaintiffs must allege facts

giving rise to a "strong inference" of fraudulent intent). In the music industry, producers, managers, and executive producers routinely receive publishing percentages as compensation for creative and business contributions. If Pina-Nieves reasonably believed his allocations were consistent with industry practice—and approved by the corporate president—he lacked fraudulent intent as a matter of law.

### D.     The Alleged Predicate Acts Fail to Establish the Continuity Required for a RICO "Pattern"

Even assuming Plaintiffs have adequately pled predicate acts (which they have not), those acts do not establish the "pattern" RICO requires. A "pattern" demands relationship plus continuity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The First Circuit has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims." *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 530 (1st Cir. 2015).

In *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12 (1st Cir. 2000), the First Circuit dismissed RICO claims observing that: "In sum, while the complaint pleads a series of related racketeering acts and permits an inference that defendants defrauded appellant and two of his partners, we agree with the district court's determination that no reasonable jury could find that these allegations establish a RICO "pattern." Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular partnership from a limited number of its partners. This cannot be a RICO violation*." Id.,* at  21.

Here, Plaintiffs allege what is, at bottom, a single scheme: obtaining publishing percentages in songs involving Ayala-Rodríguez. The scheme had a finite, terminable goal

and targeted essentially one victim. There is no indication it would continue into the indefinite future—the business relationship between Plaintiffs and Pina-Nieves has ended. Plaintiffs attempt to inflate the pattern by listing dozens of predicate acts, but these are all part of the same scheme directed at the same victim. Multiplying the number of emails does not create continuity. *See Efron*, 223 F.3d at 20.

### E. The § 1962(d) Conspiracy Claim Fails

A RICO conspiracy claim under § 1962(d) cannot survive absent a viable substantive RICO claim. *Efron*, 223 F.3d at 21; *Home Orthopedics*, 781 F.3d at 530. Because Plaintiffs fail to plead predicate acts, a cognizable enterprise, continuity, proximate cause, and timeliness, the conspiracy claim necessarily fails. Independently, the Complaint's references to "conspiracy" are the type of threadbare recitals that *Iqbal* held "do not suffice." 556 U.S. at 678.

### F. The Puerto Rico Organized Crime Act Claim Fails, and the Court Should Decline Supplemental Jurisdiction

The PROCA claim (P.R. Laws Ann. tit. 25, §§ 971–971x) fails for the same reasons the federal RICO claims fail. If the Court dismisses the federal RICO claims, no federal question remains. Under 28 U.S.C. § 1367(c)(3), the Court may and should decline supplemental jurisdiction. The First Circuit strongly favors that result where federal claims are dismissed early. *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998). The PROCA claim should be dismissed without prejudice under Rule 12(b)(1).

### G. Leave to Amend Would Be Futile

Plaintiffs have already provided an extensive Complaint and a Court-ordered RICO Case Statement prepared under Rule 11's reasonable-inquiry mandate. Thus, Plaintiffs have now had two opportunities—a 107-page Complaint and a Court-ordered 61-page RICO Case Statement prepared under Rule 11's reasonable-inquiry mandate—to articulate a viable RICO claim. The deficiencies identified herein are not factual gaps amendable to cure; they are structural legal deficiencies inherent in Plaintiffs' theory: lack of damages methodology, lack of enterprise distinctness, failure to satisfy Rule 9(b), temporal impossibility, lack of continuity, statute-of-limitations bars, and conspiracy failure. Dismissal should be with prejudice as to the federal claims.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' 107-page Complaint and Court-ordered RICO Case Statement confirm—rather than cure—their failure to plead a viable civil RICO claim under 18 U.S.C. §§ 1962(c) or (d). Plaintiffs' theory is time-barred on the face of the pleadings and the integral documents they rely upon; it also fails on the merits because Plaintiffs do not plausibly allege (i) a cognizable enterprise distinct from the alleged predicate acts, (ii) actionable predicate acts pled with Rule 9(b) particularity as to each Appearing Defendant, (iii) scienter, (iv) continuity sufficient to establish a "pattern," or (v) a viable conspiracy in the absence of a substantive RICO claim. Plaintiffs' own RICO Statement underscores the enterprise defect by admitting that the enterprise's "day-to-day operations consisted of carrying out the predicate acts alleged," collapsing the enterprise element into the racketeering activity itself.

Accordingly, the Court should dismiss the federal RICO claims with prejudice under Rule 12(b)(6). Because the PROCA claim rises or falls with the federal RICO

theories and no independent basis for federal jurisdiction remains once the federal claims are dismissed, the Court should decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and dismiss the Commonwealth claim without prejudice. Further, because Plaintiffs have already had two Rule-11-bounded opportunities to plead their best case—the Complaint and the mandated RICO Statement—leave to amend would be futile, and dismissal should be with prejudice as to the federal claims.

WHEREFORE, defendants Rafael A. Pina-Nieves, Los Magnifikos Inc., and Mafer Music Publishing Inc. respectfully request that the Court:

1.      Dismiss Plaintiffs' RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d) with prejudice pursuant to Fed. R. Civ. P. 12(b)(6);

2.      Decline supplemental jurisdiction over Plaintiffs' PROCA claim pursuant to 28 U.S.C. § 1367(c)(3) and dismiss it without prejudice; and

3.      Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 23 February 2026

**Counsel for**
**Mafer Music Publishing Inc.**
**Los Magnifikos, Inc.**

**s/ José A. Hernández Mayoral**
José A. Hernández Mayoral
USDC 205307
250 Tetuán, San Juan, PR 00901
Tel. 787 607-4867
Email: jahm@mac.com

**Counsel for**
**Rafael A Pina-Nieves**

**s/ Patricia Rivera MacMurray**
Patricia Rivera MacMurray
USDC 222309
250 Tetuán, San Juan, PR 00901
Tel. 787-607-3700
Email: Prm3@mac.com

I CERTIFY that a copy of this motion is being notified to all counsel of record through the CM/ECF system.

s/ Patricia Rivera MacMurray