**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **LOS CANGRIS, INC., et al.,**<br>Plaintiffs,<br><br>v.<br><br>**RAFAEL A. PINA-NIEVES, et al.,**<br>Defendants. | **Case No. 25-CV-1650 (GMM)** |

## <u>MOTION TO DISMISS</u>

**COMES NOW,** the defendant Edwin J. Prado-Galarza ("Attorney Prado"), by and through the undersigned counsel, and respectfully moves to dismiss the first amended complaint (Docket No. 48) insofar as it relates to him, pursuant to Federal Rules of Civil Procedure 12(b)(6), and in support thereof states as follows:

### I.   PRELIMINARY STATEMENT

This is a textbook example of the frivolous civil RICO pleading that the First Circuit has repeatedly condemned. The civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, were enacted to combat organized crime—not to convert an ordinary music-industry royalty dispute between songwriters, producers, and publishers into a federal treble-damages action against an external entertainment attorney. *See Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (warning district courts against frivolous RICO allegations); *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (civil RICO is not a remedy for ordinary fraud claims); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) (civil RICO is an "unusually potent weapon—the litigation equivalent of a thermonuclear device"); *Dibbs v. Gonsalves*, 921 F. Supp. 44, 47 (D.P.R. 1996) (requiring RICO complaints to be "anchored in a bed of facts" rather than "bald assertions"). *Benet-Soto v. Chase Manhattan Bank, N.A.*, 791 F. Supp. 914, 917 (D.P.R. 1992) (same).

Plaintiffs are a globally-known recording artist ("Plaintiff Ayala") and his corporate vehicles ("Plaintiff Los Cangris" and "Plaintiff El Cartel"). They have sued the producer ("Defendant Pina-Nieves"), the recording artist's former wife and co-shareholder/corporate administrator ("Defendant González"), the producer's mentor and vice president ("Defendant Coll"), three of the producer's publishing/record companies ("Defendant Los Magnifikos," "Defendant World Music," and "Defendant Mafer"), and a California purchaser of masters ("Defendant Intercontinental").

Moreover, Plaintiffs have also dragged Attorney Prado—an entertainment attorney residing in Orlando, Florida—into that intra-industry dispute on the strained theory that, over a three-year span, he transmitted two discrete emails—one from 7 years ago and the other from 10 years ago—with Plaintiffs' own agent on the email thread that allegedly "confirmed" publishing shares or master-use authorizations that Plaintiffs only now repudiate. This is an ambitious, unsupported, and false allegation that fails all applicable standards of review.  The only logical explanation for Attorney Prado's inclusion in this complaint is to somehow gain leverage from the media for his notoriety. Attorney Prado's two transmissions were not unauthorized and were not concealed; they were lawful transactional work performed on authorized corporate channels.

Critically, the complaint omits that Attorney Prado served as entertainment counsel to Plaintiffs Los Cangris and Plaintiff El Cartel Records, Inc. for transactional purposes at all relevant times, and that their own shareholders and officers—Plaintiff Ayala and his wife Defendant González—expressly authorized him to act as a signatory approving legal exploitations of master recordings and compositions controlled by the entity Plaintiffs as long as said authorizations were handled through Defendant González.

2

Stripped of its conclusory labels, the complaint pleads—at most—that Attorney Prado rendered routine professional services to Plaintiffs, who were his clients, and communicated on their behalf with third parties with their knowledge at all times in the music-publishing ecosystem. That is not a RICO claim. It is a misplaced grievance from many years ago masquerading as one. Under binding First Circuit and Supreme Court authority, the claims against Attorney Prado must be dismissed with prejudice on the following independent grounds:

## II.    STATEMENT OF FACTS RELEVANT TO ATTORNEY PRADO

The complaint in this case says so much yet so little at the same time.  It is unnecessarily extensive because it attempts at all costs to satisfy pleading standards with unsupported speculation and conclusions. At the outset, Attorney Prado is barely mentioned in the first place. From this, if we were to only pick out the non-speculatory and non-conclusory allegations, we are almost literally left with nothing of substance. Notwithstanding, we will play devil's advocate and strain ourselves to create the best case that can be made from these facts against Attorney Prado.

Plaintiffs identify Attorney Prado in paragraph 15 of the complaint as an entertainment attorney residing in Orlando, Florida. The sole substantive description of his alleged role appears in that paragraph and is repeated almost verbatim at paragraph 121. Plaintiffs describe him as "an enabler of the enterprise" who allegedly "transmitt[ed] and [was] part of communications that embedded Pina-Nieves' alleged fraudulent publishing claims, giving them an appearance of legal validity," and who purportedly "acted, simultaneously and impermissibly, as purported legal counsel or advisor to both Pina-Nieves and his entities as well as Plaintiffs." (Complaint at ¶¶ 15 and 121).

These labels are legal conclusions, not factual allegations. Attorney Prado is apparently a knowing enabler and participant in a convoluted conspiracy simply because Plaintiffs say so. *Iqbal*

3

commands the Court to disregard these unsupported allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (court must "isolate and disregard" allegations that "merely provide legal labels"); *Dibbs*, 921 F. Supp. at 47.

Once the legal labels are stripped away, only two specific factual allegations of note are alleged against Attorney Prado. Specifically, communications that are factually alleged against Attorney Prado across 102 pages of the complaint are as follows:

> 70. On or about May 24, 2016, at approximately 9:24 p.m., Prado-Galarza, acting knowingly and intentionally, sent an email using interstate and foreign wire communications to Gonzalez-Castellanos, Lorna Robles (then an employee of Los Cangris under Gonzalez-Castellanos' supervision), and Alejandro Duque, who at the time was the General Manager of Universal Music Group, Machete Music, and Capitol Latin. In that email, Prado-Galarza approved the use of the master recording of Ayala-Rodríguez's song "Vaivén" for a compilation album titled Reggaeton Mix 2016. The email was false and misleading because it created the appearance that Ayala-Rodríguez had approved the use of the master, when in fact he had not. Prado-Galarza did not copy, inform, or otherwise notify Ayala-Rodríguez about this email or the purported approval it claimed to reflect. As a result, Ayala-Rodríguez was not aware that others were being told—incorrectly—that he had authorized the use of his master recording. . . .
> . . .
> 80. On or about May 21, 2019, at approximately 7:12 p.m., Prado-Galarza, acting with intent to defraud, transmitted and caused to be transmitted an email by means of wire communication in interstate and foreign commerce to Rodríguez, in which he falsely represented that Pina-Nieves held a twenty-two-point five percent (22.5%) publishing share in the musical composition "Te Lo Dije," a percentage that exceeded Plaintiffs' fifteen percent (15%) share. Prado-Galarza cc'ed González-Castellanos, Pina-Nieves (at his WML email address), and Robles, but deliberately excluded Ayala-Rodríguez from the communication. The email falsely created the appearance that Ayala-Rodríguez had approved the allocation of the 22.5% publishing share in the musical composition "Te Lo Dije." At no time did Ayala-Rodríguez consent to any such assignment or reallocation of his publishing share and there is no written instrument of conveyance of such rights.
>
> 81. This representation was materially false, and Prado-Galarza, González-Castellanos, Pina-Nieves, and WML deliberately concealed the existence of the purported 22.5% allocation with the intent to deceive Ayala-Rodríguez and to obtain money and property, specifically the publishing rights and income derived from "Te Lo Dije." As an author of "Te Lo Dije," Ayala-Rodríguez was entitled to disclosure of—and to consent to—any assignment affecting his publishing interest. Prado-Galarza, González-Castellanos, Pina-Nieves, and WML had a duty to disclose this information and to obtain Ayala-Rodríguez's consent as an author of such work and, in the case of González-Castellanos, also as the person responsible for the day to day management of the Corporations at the time, but intentionally failed to do so as part of the broader scheme to manipulate publishing shares and enhance Pina-Nieves' financial position at Plaintiffs' expense. The knowing misrepresentation and omission contained in the May 21, 2019 email were reasonably relied upon in the administration and accounting of the work within the music-publishing ecosystem and proximately caused Plaintiffs to receive reduced publishing income and to suffer corresponding financial harm.

Although our arguments are limited to what is contained in the complaint, even taking these allegations (without all the contextual evidence that cannot yet be presented)  amount to nothing of real substance.   Notice how these two emails—by Plaintiffs' own admission—include Defendant Gonzáles, who was Plaintiff Ayala's wife, and Lorna Robles an agent for Plaintiff Los Cangris.   So, Plaintiffs' grand allegations against Attorney Prado are essentially that he lied (because Plaintiffs say so) right under Plaintiffs' noses 7 and 10 years ago.   There is nothing of substance that shows any willful participation from Attorney Prado in this supposed fraud.   Also of note, Plaintiffs do not plausibly allege that Attorney Prado received any compensation or benefit from the transmission.

Further, there are notably three other allegations where Attorney Prado was apparently copied on emails from other defendants where he is purported to know (simply because Plaintiffs say so) that what these other defendants were saying was false.  (¶¶ 73, 83, and 84). It seems like Plaintiffs believe it was Attorney Prado's duty to verify whether what was being said in these emails was true and that his failure to do so somehow makes him a RICO actor. These are insufficient allegations to amount to anything, even when combined with the other non-speculatory and non-conclusory allegations..

All other references to "Prado-Galarza" in the Complaint's catalog of forty-four "Racketeering Acts" (¶¶ 129–144) are either conclusory group-pleading references to "Defendants" collectively, or they concern events that post-date or pre-date Attorney Prado's two discrete transmissions and that Plaintiffs attribute by name to other defendants (chiefly Defendants Pina-Nieves, González, and Coll).

We further note that the complaint affirmatively pleads facts that undermine any theory of a distinct criminal enterprise involving Attorney Prado. Plaintiffs concede that (i) Defendant Pina-

Nieves was at all relevant times legitimately doing business with Plaintiffs and held publishing shares in "some works outside this complaint . . . legitimately subject to agreements granting Pina-Nieves a percentage of publishing shares and royalties" (Compl. ¶ 2); (ii) Defendant González was a "purported officer of Los Cangris and El Cartel" and the day-to-day manager of Plaintiffs' own corporations (Compl. ¶¶ 14, 81); and (iii) Plaintiffs executed a 2019 Binding Term Sheet Agreement and a 2021 Asset Purchase Agreement with Defendant Pina-Nieves that expressly addressed the publishing shares in at least two of the works at issue here (Compl. ¶¶ 54–56). Those are contract disputes—not RICO predicates.

### III.    LEGAL STANDARD

A complaint must allege "not 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 678. The Court must "isolate and disregard" conclusory allegations and legal labels, and then test whether the remaining well-pleaded facts plausibly entitle the plaintiff to relief. *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013); *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012); *Schatz*, 669 F.3d at 55. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

RICO pleading is subject to an even more demanding standard. Where, as here, the predicate acts sound in fraud (mail and wire fraud), Rule 9(b) "requires a party to plead fraud with particularity" and "extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein*, 942 F.2d at 42; *Caro-Bonet*, 195 F. Supp. 3d at 435; *Lerner v. Colman*, 485 F. Supp. 3d 319, 343 (D. Mass. 2020); *Freeport Transit v. McNulty*, 239 F. Supp. 2d 102, 109 (D. Me. 2002); *Gott v. Simpson*, 745 F. Supp. 765, 769 (D. Me. 1990). The plaintiff must identify "the time, place

and content of the alleged mail and wire communication perpetrating that fraud," *New Eng. Data Servs., Inc. v. Becher*, 829 F.2d 286, 291 (1st Cir. 1987), and must "distinguish among those [it] sue[s] and enlighten each defendant as to his or her particular part in the alleged fraud," *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 169 (D. Mass. 2002). *See also, Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (case where plaintiff failed to distinguish between defendants, using vague and circular references that did not specify how any individual defendant's specific acts of racketeering led to the control or funding of a particular enterprise). Group pleading against multiple defendants collectively will not do, especially when pleading RICO.

The First Circuit has repeatedly cautioned that "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device," and district courts must be vigilant in dismissing baseless claims at the earliest possible stage to prevent the statute's misuse. *Miranda*, 948 F.2d at 44; *Figueroa Ruiz*, 896 F.2d at 650; *Efron*, 223 F.3d at 20; *Dibbs*, 921 F. Supp. at 47; *Benet-Soto*, 791 F. Supp. at 917. Courts accordingly "prune" RICO complaints to exclude predicate acts that fail to meet Rule 9(b) *before* analyzing whether the complaint satisfies RICO's "pattern" requirement. *Caro-Bonet*, 195 F. Supp. 3d at 435–36.

### IV.    ANALYSIS

*A.    The Complaint Fails to Plead Wire-Fraud Predicate Acts Against Attorney Prado with the Particularity Rule 9(b) Requires.*

To plead a wire-fraud predicate under 18 U.S.C. § 1343—the only kind of predicate act Plaintiffs assert—the complaint must allege, as to each defendant, (1) a scheme to defraud; (2) the defendant's knowing and willful participation in that scheme with specific intent to defraud; and (3) the use of interstate wires in furtherance of the scheme, involving material misrepresentations. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008); *United States v. Appolon*, 715 F.3d 362, 367 (1st Cir. 2013); *Lerner v. Colman*, 485 F. Supp. 3d at 343. Rule 9(b) demands

specificity as to the time, place, speaker, content, and materiality of each alleged fraudulent transmission. *Feinstein*, 942 F.2d at 42; *Caro-Bonet*, 195 F. Supp. 3d at 435; *Freeport Transit*, 239 F. Supp. 2d at 109. Allegations on "information and belief" are insufficient absent the facts on which the belief is founded. *Gott*, 745 F. Supp. at 769.

Plaintiffs' complaint catalogs forty-four "Racketeering Acts" (Compl. ¶¶ 129–144). Of those forty-four acts, Plaintiffs name Attorney Prado as an actor or participant only **four times**—and then only by grouping his name within lists of "defendants" who collectively undertook various schemes (Compl. ¶¶ 131, 133, 134, 144). This is classic group pleading, which Rule 9(b) discourages. *Elliott*, 867 F.2d at 881; *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d at 169; *Caro-Bonet*, 195 F. Supp. 3d at 435 (heightened pleading serves to "put defendants on notice, prevent fishing expeditions, and protect defendants' reputations from frivolous claims").

When the Court isolates the only individualized factual allegations concerning Attorney Prado (¶¶ 70, 80), the Rule 9(b) deficiencies are fatal. At this point we are beating a dead horse, but we must discuss the two deficient emails once more. Neither communication is pled with the Rule 9(b) particularity required to show that Attorney Prado (as opposed to his clients) possessed fraudulent intent, made a material misrepresentation on his own, or knowingly participated in a scheme to defraud Plaintiffs. The complaint states only that Attorney Prado "acted with intent to defraud" (Compl. ¶ 80)—the quintessential conclusory allegation that *Twombly* and *Iqbal* require the Court to disregard. *Iqbal*, 556 U.S. at 678–79; *Schatz*, 669 F.3d at 55; *Dibbs*, 921 F. Supp. at 47 (RICO complaint cannot rest on "bald assertions" or "unsubstantiated conclusions"). Accordingly, Plaintiffs' wire-fraud predicates fail as a matter of law.

**B.    *Under Reves v. Ernst & Young, Attorney Prado Did Not "Conduct or Participate" in the Operation or Management of Any RICO Enterprise.***

This is the dispositive point for an outside-professional defendant. Section 1962(c) makes it unlawful *"to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."* 18 U.S.C. § 1962(c). The Supreme Court has definitively held that to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis added). Under what has become the *Reves* "operation-or-management" test, a RICO defendant must have "some part in directing the enterprise's affairs." *Id.* at 179. "The 'operation or management' test expresses this requirement in a formulation that is easy to apply." *Id.*

The *Reves* Court confronted precisely the type of professional whose role is alleged against Attorney Prado here: a firm of outside accountants whose members prepared allegedly misleading financial statements for a co-op that collapsed in fraud. The Court held that—even if the accountants' work had been sloppy or negligent—outside professionals who *merely render services* to a client do not thereby "operate or manage" the client's affairs for RICO purposes. *Id.* at 185–86.

Federal courts have applied *Reves* repeatedly to dismiss RICO claims against outside lawyers, accountants, and consultants whose role—like Attorney Prado's here—was to provide professional services to a client involved in allegedly wrongful conduct. See *University of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538–39 (3d Cir. 1993) (Independent auditor who certified allegedly false financial statements did not "operate or manage" the enterprise within the meaning of § 1962(c)). "Since *Reves*, it is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." *Baumer v. Pachl*, 8 F.3d 1341,

1344 (9th Cir. 1993) (Again, outside counsel's drafting of letters and filing of a bankruptcy petition for a client "does not constitute participation in the operation or management of an enterprise."); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998) (Routine provision of legal or professional services does not qualify as directing an enterprise); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521–22 (2d Cir. 1994) (Attorney who drafted documents containing material misrepresentations in furtherance of client's scheme did not participate in operation or management); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (Even significant professional involvement by counsel does not satisfy § 1962(c) absent plausible allegations that the attorney directed the enterprise's affairs); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (Rejecting § 1962(c) liability where the record was "devoid of evidence" that defendants participated "directly or indirectly" in the conduct of the enterprise, even where plaintiffs pointed to alleged mailings of documents prepared by a law firm).

The First Circuit has enforced *Reves* with equal vigor. *See Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1559 (1st Cir. 1994) (applying the operation-or-management test); <u>*Efron*</u>, 223 F.3d at 14–15 (RICO defendant must have participated in the operation or management of the enterprise itself); *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994) (the "element of direction" is required under *Reves*).

Measured against *Reves* and its progeny, the allegations against Attorney Prado fail as a matter of law. Plaintiffs plead only that Attorney Prado: (a) transmitted two emails over a span of three years (¶¶ 70, 80), (b) was copied on certain other communications by other defendants (¶¶ 75, 83, 84), and (c) acted as "purported legal counsel or advisor" to Pina-Nieves and his entities (¶ 15).

These are the archetypal services of an outside entertainment attorney. Plaintiffs do not allege that Attorney Prado had decision-making authority over any publishing split, that he controlled the books or bank accounts of any defendant entity, that he directed Defendant Pina-Nieves or his companies to undertake any particular action, or that he had any ownership or executive role in Defendant Los Magnifikos, Defendant Mafer, Defendant World Music, or Defendant Intercontinental. The elaborate complaint makes it clear that he did not "operate" or "manage" anything. At most, Plaintiffs describe a lawyer performing a lawyer's work for his clients—which *Reves* expressly insulates from RICO liability. *Reves*, 507 U.S. at 185–86; *Oreto*, 37 F.3d at 750; *Walter*, 538 F.3d at 1249; *Nolte*, 994 F.2d at 1317.

## C.    *Plaintiffs Fail to Plead a Distinct RICO Enterprise or a Shared Unlawful Purpose Involving Attorney Prado.*

To establish a RICO "enterprise," Plaintiffs must plead facts showing "a group of [persons] associated together for a common purpose of engaging in a course of conduct," with at least three structural features: (1) a purpose, (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946; *Turkette*, 452 U.S. at 583. Where the alleged enterprise is not a formal legal entity, but an association-in-fact, the enterprise element requires facts showing an existence that is "separate" from the pattern of racketeering activity and that reflects an "ongoing organization," rather than a label pasted onto the alleged predicate acts themselves. *Boyle*, 556 U.S. at 946–48; *Abelson*, 644 F. Supp. at 529; *Smith v. Jenkins*, 626 F. Supp. 2d at 166; *Molina*, 555 F. Supp. 2d at 290.

It is not enough to allege "routine commercial relationships" between a service provider and its client. *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995) (requiring evidence of "systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination").

11

What Plaintiffs actually plead as to Attorney Prado is an attorney-client (and in fact, attorney-for-Plaintiffs'-own-entities) relationship, authorized by Plaintiffs' own shareholders, in which he occasionally communicated with third-party industry administrators. That is not a RICO enterprise. *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) ("Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises."); *In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (dismissing where defendants were "associated in a manner directly related to their own primary business activities"); *Marshall v. Goguen*, 604 F. Supp. 3d 980, 996–97 (D. Mont. 2022) (attorney's communications on behalf of client did not establish a distinct RICO enterprise).

The distinctiveness requirement is also not satisfied where, as here, the complaint's admissions show that the alleged enterprise relationships are legitimate commercial/professional relationships rather than associations organized around a shared unlawful objective. *Smith v. Jenkins*, 626 F. Supp. 2d at 166 (failure to allege enterprise distinct from the pattern of racketeering activity is fatal to a RICO claim); *Abelson*, 644 F. Supp. at 529; *Molina*, 555 F. Supp. 2d at 290.

The Complaint also triggers the rule articulated in *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 275–76 (1st Cir. 2022), that dismissal is appropriate where the complaint's allegations are contradicted by an "obvious alternative explanation" rooted in lawful conduct. The obvious alternative explanation here is that Attorney Prado represented Plaintiffs' own entities (and later Pina-Nieves and his entities) — as any entertainment lawyer would — and the underlying industry dispute is a contract and copyright dispute, not criminal racketeering. Plaintiffs' own Complaint concedes that Pina-Nieves legitimately held publishing interests in other works (Compl. ¶ 2) and that Plaintiffs themselves signed a 2019 Binding Term Sheet Agreement and 2021 Asset Purchase

12

Agreement that referenced shares in the very compositions at issue (Compl. ¶¶ 54–56). Under *Frith*, where the pleaded facts are "just as much in line with" lawful explanations as with the unlawful inference Plaintiffs urge, the unlawful inference is not plausible and the claim must be dismissed.

### D.    Plaintiffs Fail to Plead a "Pattern of Racketeering Activity" as to Attorney Prado.

RICO's "pattern" element requires the plaintiff to plead at least two predicate acts that are both *related* and *continuous*. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); 18 U.S.C. § 1961(5); *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (6th Cir. 2003); *Efron*, 223 F.3d at 15.

As to Attorney Prado specifically, the complaint identifies only two individualized communications—the May 24, 2016, and the May 21, 2019, emails. Even treated generously, those communications concern different songs, different recipients, different alleged misrepresentations (master-use authorization versus publishing-share allocation), and different alleged purposes. They are not "related" in the RICO sense of having "same or similar purposes, results, participants, victims, or methods of commission." *H.J. Inc.*, 492 U.S. at 240; *see also Lerner v. Colman*, 26 F.4th 71, 75–76 (1st Cir. 2022); *Rectrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 632 F. Supp. 2d 120, 142 (D. Mass. 2009); *Atl. Acquisitions, LLC v. J.H. Reid Gen. Contr.*, 909 F. Supp. 2d 32, 42 (D. Mass. 2012).

Even if the two communications were deemed "related," the complaint does not plead continuity as to Attorney Prado. Closed-ended continuity requires "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. But two isolated communications three years apart—in the context of an otherwise legitimate attorney-client relationship in which the attorney was authorized by Plaintiffs' own shareholders—are not a

13

"series," and in any event fall far below the threshold the First Circuit has held insufficient. *See Efron*, 223 F.3d at 18 (21-month scheme held inadequate for closed-ended continuity); *Soto-Negrón v. Taber Partners I*, 339 F.3d 35, 39 (1st Cir. 2003) (affirming dismissal where complaint alleged brief timeframe with no open-ended racketeering pattern); *Giuliano v. Fulton*, 399 F.3d 381, 390 (1st Cir. 2005) (no continuity where RICO claim involved a single, narrow scheme with limited victims and scope); *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir. 2002) (RICO is "not aimed at a single narrow criminal episode, even if that single episode involves behavior that amounts to several crimes").

Nor can Plaintiffs establish open-ended continuity. The complaint alleges no threat of continuing wrongdoing by Attorney Prado. Plaintiffs do not allege that Attorney Prado continues to represent Pina-Nieves or has committed any act implicating him since 2019. A discrete, completed course of work does not satisfy RICO's continuity requirement. *H.J. Inc.*, 492 U.S. at 242; *Loiselle*, 303 F.3d at 105; *United States v. Chin*, 965 F.3d 41, 52 (1st Cir. 2020) (open-ended continuity requires threat of repetition, not mere possibility); *Giuliano*, 399 F.3d at 390 (First Circuit continuity is "particularly difficult to plead where the alleged racketeering amounts to a single, narrow scheme targeting few victims").

**E.     *The Communications Attributed to Attorney Prado Are Not Material and Did Not Proximately Cause Plaintiffs' Alleged Injuries.***

Wire fraud requires a material misrepresentation — one with "a natural tendency to influence," or [that is] capable of influencing, the decision of the decision-making body to which it was addressed. *Neder v. United States*, 527 U.S. 1, 16 (1999); *United States v. Appolon*, 715 F.3d 362, 367–68 (1st Cir. 2013); *United States v. Moran*, 393 F.3d 1, 15 (1st Cir. 2004) (materiality turns on capacity to influence the recipient's decision in context); *United States ex rel.*

14

*Zotos v. Town of Hingham*, 98 F.4th 339, 347 (1st Cir. 2024) (materiality asks whether the information was sufficiently important to influence the recipient's behavior in context).

As to the May 24, 2016, email, Plaintiffs' own pleading demonstrates non-materiality: the email was sent *to* González-Castellanos (Plaintiffs' own corporate officer), *to* Robles (Plaintiffs' own Record Label Manager), and to Duque (a UMG/Machete/Capitol Latin executive). If Plaintiffs' own corporate officer and internal Record Label Manager received the email, it cannot as a matter of law have been "concealed" from Plaintiffs or have had a natural tendency to induce Plaintiffs to forego royalties to which they were entitled. The "concealment" theory collapses on the Complaint's own face.

As to the May 21, 2019, email, Plaintiffs admit that the email was copied to Plaintiffs' own day-to-day manager, Defendant González, who owed fiduciary duties to Plaintiff Los Cangris and Plaintiff El Cartel. (Compl. ¶ 81). Plaintiffs cannot have it both ways: if Defendant González was Plaintiffs' officer (as they plead), her receipt of the email imputes knowledge to Plaintiffs. *See United States v. Josleyn*, 206 F.3d 144, 159 (1st Cir. 2000) (knowledge imputed when agent has relationship and receives information within the scope of authority); Restatement (Second) of Agency § 275. If, conversely, she was *not* Plaintiffs' officer, then she cannot have been the "administrative backbone" of the very enterprise Plaintiffs describe. Either way, the conclusory "concealment" narrative fails.

More fundamentally, RICO causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp.*, 559 U.S. at 9; *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) (RICO does not extend to injuries that are derivative of, or contingent upon, intervening decisions by others); *In re Neurontin Mktg. & Sales Practices*

15

*Litig.* (Kaiser v. Pfizer), 712 F.3d 21, 35 (1st Cir. 2013) (First Circuit RICO proximate cause is controlled by *Holmes*, *Anza*, *Bridge*, and *Hemi Group*; proximate cause is distinct from but-for causation); *Roe v. Healey*, 78 F.4th 11, 19 (1st Cir. 2023) (indirect or downstream injuries do not confer RICO statutory standing).

Plaintiffs' own theory posits a multi-link chain: Attorney Prado sent an email, which a third party relied on, which caused an industry record to reflect a certain publishing share, which caused royalty administrators to pay the wrong party, which caused Plaintiffs' losses. That chain is indistinguishable from the attenuated causal chain rejected in *Anza*, 547 U.S. at 461, and in *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021). *See also Duggan v. Martorello*, 596 F. Supp. 3d 158, 178 (D. Mass. 2022) (direct-relationship requirement fails where intervening factors break the causal chain). Where the first link in the chain is a communication to Plaintiffs' own officer and the last link is speculative royalty-accounting decisions by independent PROs and publishers, proximate causation is not pled.

**F.    *Attorney Prado's Transmissions Were Authorized by Plaintiffs' Own Officers and Shareholders, Which Independently Forecloses Wire-Fraud, Concealment, and RICO Liability.***

Even if the Rule 9(b) and *Reves* deficiencies could somehow be cured, Plaintiffs' theory fails on an additional, independent ground: Attorney Prado's two transmissions were *authorized* or approved by Plaintiffs' own shareholders and officers, and were sent to or copied to Plaintiffs' own corporate personnel in the ordinary course of business. Those facts, which appear on the face of Plaintiffs' own Complaint, negate wire-fraud materiality, foreclose any "concealment" theory, and independently defeat civil RICO liability.

**1.    *Actual authority defeats the premise that Prado's transmissions were a fraud against Plaintiffs.***

16

Under settled agency law, an agent's acts and knowledge are attributed to the principal when they fall within the scope of the agent's authority. *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1051 (Fed. Cir. 1995); Restatement (Second) of Agency §§ 228–229, 272. Plaintiffs' own factual premise is that Attorney Prado was *expressly authorized* by Plaintiff Ayala and Defendant González—Plaintiffs' own shareholders/officers—to approve exploitation of El Cartel master recordings, and that the email was sent within Sony/ATV's established split-ratification protocol that contemplated Attorney Prado acting as Plaintiffs' representative. On those pleaded facts, the transmissions are not plausibly framed as deceptive communications perpetrated *against* the principal; they are communications made *for* the principal within delegated authority.

**2.    *Imputation forecloses "concealment" where Plaintiffs' own corporate personnel received or were copied on the communications*.**

Notice to an agent or employee is imputed to the principal when it is received by the employee within scope of his or her employment. *See Computel, Inc. v. Emery Air Freight Corp.*, 919 F.2d 678, 683 (11th Cir. 1990). Plaintiffs allege the emails were sent to or copied on Plaintiffs' corporate officer and internal employees in the ordinary course of business. The imputation rule exists precisely to prevent a principal from disavowing knowledge acquired through its authorized agents. *Id.* Plaintiffs' fallback—recasting the theory as concealment from Plaintiff Ayala *personally*—does not cure the defect because the relevant "principal" for imputation purposes is the corporate entity on whose behalf the agent acted.

**3.    *The adverse-interest exception does not apply where the corporation benefits.***

Courts recognize only a narrow exception to imputation—where the agent acts *wholly* adversely to the principal and the fraud is committed against the principal rather than on its behalf — and the exception does not apply where the agent acts both for himself and for the principal, or where the corporation benefits. *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 37 (2d Cir.

2025). Plaintiffs' own description of the email is that it "approved an exploitation" of Plaintiffs' master recordings, and the second email was sent within Sony/ATV's administrator protocol for Plaintiffs' compositions—facts that, as pleaded, describe corporate exploitation/administration activity rather than "outright theft or looting" benefiting only the agent.

**4.    *Rule 9(b) independently requires dismissal because Plaintiffs' "concealment" theory is incompatible with their own authorization and notice allegations.***

Because Plaintiffs' wire-fraud predicates and fraudulent-concealment tolling theory sound in fraud, they must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Caro-Bonet*, 195 F. Supp. 3d at 435. Generalized and conclusory allegations of concealment are insufficient under heightened pleading standards applicable to fraud-based tolling theories. *Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020). On Plaintiffs' own facts, the alleged "concealment" reduces to an internal allocation of who received administrative email traffic (artist versus corporate officer/employee)—not any particularized affirmative act designed to hide wrongdoing from the entity. That mismatch between the pleaded facts (authorization, ordinary-course communications, internal recipients) and the legal conclusion ("concealment") is precisely the kind of conclusory fraud pleading that cannot survive a motion to dismiss.

The consequence for civil RICO is dispositive: without viable wire-fraud predicates there is no racketeering activity; without racketeering activity there is no RICO claim. The § 1962(c) claim against Attorney Prado therefore fails on this independent ground as well.

**G.    *The RICO Conspiracy Claim Under 18 U.S.C. § 1962(d) Fails Derivatively and Independently.***

The complaint's second cause of action also asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d). It is settled First Circuit law that "[i]f the substantive RICO claim is deficient, the conspiracy claim necessarily fails." *Efron*, 223 F.3d at 21; *Salinas v. United States*, 522 U.S.

52, 65 (1997); *Naicom Corp. v. DISH Network Corp.*, 2024 WL 1363755, at *8 (D.P.R. Mar. 29, 2024) (RICO conspiracy claim dismissed where plaintiff failed to allege an actionable substantive RICO claim). Because the § 1962(c) claim fails against Attorney Prado for the reasons set forth above, the § 1962(d) claim fails as a matter of law.

Independently, the conspiracy claim fails because Plaintiffs have not plausibly alleged that Attorney Prado "knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *United States v. Rodríguez-Torres*, 939 F.3d 16, 23–24 (1st Cir. 2019) (quoting *Salinas*, 522 U.S. at 65). Mere parallel conduct or the rendering of authorized professional services — without more — is insufficient to establish a conspiratorial agreement. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010); *Twombly*, 550 U.S. at 556–57. Attorney Prado's two authorized transmissions and his general role as entertainment counsel do not plausibly demonstrate the specific intent to further a racketeering endeavor required by *Salinas* and *Rodríguez-Torres*.

### H.    The Puerto Rico Organized Crime Act Claim and the Common-Law Claims Against Attorney Prado Rise and Fall with the Federal RICO Claim—and Are Independently Deficient.

The third cause of action asserts a claim under the Puerto Rico Organized Crime Act, P.R. Laws Ann. tit. 25, §§ 971 *et seq.* Puerto Rico courts have interpreted that statute in parallel with federal RICO and imported the same enterprise, pattern, and predicate-act requirements. For the reasons set forth above, the parallel state claim is equally unavailing against Attorney Prado. The Court is also respectfully encouraged to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) if the federal claims are dismissed as to him.

The fourth cause of action (misappropriation of copyrights under Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10801) pleads wrongful conduct only against "Pina-Nieves" (Compl. ¶¶ 152, 154) and does not state a claim against Attorney Prado at all. To the extent Plaintiffs attempt to incorporate prior paragraphs by reference (¶ 150) to reach Attorney Prado, the claim is (a) time-barred as to the 2016 email under Puerto Rico's one-year tort limitations period (*id.* § 5298); (b) preempted to the extent it seeks a remedy covered by the Copyright Act; and (c) inadequately pled because there is no allegation that Attorney Prado himself held, transferred, or wrongfully appropriated any copyright.

## I.    The Claims Predicated on the Emails Are Time-Barred.

Civil RICO claims are subject to a four-year statute of limitations, which accrues when the plaintiff knew or should have known of his injury. *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000); *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *Kia Am., Inc. v. DMO Auto Acquisitions, LLC*, 2025 DNH 046 (D.N.H. Mar. 31, 2025) (applying discovery rule, charging plaintiffs with knowledge of injury when sufficient facts are available to provoke a reasonable inquiry). "Storm warnings" trigger inquiry notices even if the plaintiff does not yet know every detail of the alleged scheme; if the plaintiff fails to inquire when the duty arises, knowledge is imputed as of that date. *Rosenshein v. Jeffrey Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017).

Plaintiffs concede that the emails were sent to and received by their own corporate officer (Defendant González) and their own employee (Robles). (Compl. ¶ 70) Knowledge of an agent is imputed to the principal. *Josleyn*, 206 F.3d at 159; *Computel*, 919 F.2d at 683. The statute therefore began to run—as to Plaintiffs—on or about May 24, 2016 and May 21, 2019, respectively. This action was filed in 2025, many years later. The claim based on those emails are time-barred.

20

Plaintiffs attempt to sidestep the statute by alleging "fraudulent concealment" and asserting they first "regained access" to certain emails in December 2024. (Compl. ¶ 55). Fraudulent concealment tolling in RICO cases requires (1) wrongful concealment of material facts through affirmative acts by the defendant; (2) concealment that actually prevented discovery of the claim within the limitations period; and (3) the plaintiff's reasonable diligence during the period sought to be tolled. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 371 (4th Cir. 2014); *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008); *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 (6th Cir. 2009); *Zirvi*, 838 F. App'x at 585. Reasonable diligence is a prerequisite to equitable tolling in the RICO context. *Koch*, 699 F.3d at 157.

Plaintiffs cannot satisfy any of those elements here. The email was sent to and received by their own corporate agents in the ordinary course of business; it was not "concealed." An email delivered into Plaintiffs' own corporate channels is not "successfully concealed" from Plaintiffs as entities; at minimum, it triggered inquiry notice and a duty to investigate. *Rosenshein*, 688 F. App'x at 63. And because notice to an agent within the scope of authority is imputed to the principal, Plaintiffs cannot plausibly plead that they were kept ignorant of the email's existence by concealment when their own agents received it. *Computel*, 919 F.2d at 683. *Rotella* further confirms that civil RICO limitations analysis is not expanded by a rule delaying accrual until a plaintiff discovers both injury and pattern. *Rotella*, 528 U.S. at 553–54.

## V.    CONCLUSION AND RELIEF REQUESTED

Civil RICO is not a "thermonuclear device," *Miranda*, 948 F.2d at 44, to be loosed against an outside attorney whose alleged misconduct consists of two emails sent over a three-year span in the course of authorized professional representation. The first amended complaint, stripped of

its legal conclusions, pleads the classic professional-services relationship that *Reves v. Ernst & Young* expressly protects from RICO liability. The Rule 9(b), pattern, enterprise, operation-or-management, materiality, and causation elements are all unmet as to Attorney Prado. Attorney Prado's transmissions were authorized by Plaintiffs' own officers and shareholders and copied to Plaintiffs' own corporate personnel, which independently forecloses wire-fraud, concealment, and RICO liability. The RICO conspiracy claim falls with the substantive claim. The parallel Puerto Rico Organized Crime Act claim and the common-law misappropriation claim are equally deficient and, as to the 2016 email, time-barred.

**WHEREFORE**, Defendant Edwin J. Prado-Galarza respectfully requests that this Court dismiss all claims asserted against him with prejudice.

**I HEREBY CERTIFY** that, in accordance with Federal Rule of Civil Procedure 5, a true and correct copy of the foregoing has been furnished via CM/ECF to all parties who are not in default or their attorneys by way of their designated email addresses on this 1st day of May, 2026.

**RESPECTFULLY SUBMITTED** on this 1st day of May, 2026.

**Manuel Alejandro Law Firm, LLC**
9555 SW 175 Ter, Office #239
Palmetto Bay, FL 33157
Tel: (786) 554-3145

*s/ Manuel Alejandro Franco*
Manuel Alejandro Franco, Esq.
USDCPR No. 302406
Manuel@AlejandroLaw.net

22