**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LOS CANGRIS, INC., *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>RAFAEL A. PINA-NIEVES, *et al.*<br><br>Defendants. | Case No.: 3:25-cv-01650-GMM |

**MOTION TO DISMISS AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**COMES NOW**, Intercontinental Music Group, LLC ("IMG"), through the undersigned counsel, and respectfully moves for a judgment under FED. R. CIV. P. 12(b)(6) dismissing with prejudice all claims asserted against it in the First Amended Complaint (the "Amended Complaint") by plaintiffs Los Cangris, Inc., El Cartel Records, Inc., and Ramón L. Ayala Rodríguez (collectively, "Plaintiffs"), for the following reasons:

## I. INTRODUCTION

IMG is a peripheral defendant improperly swept by Plaintiffs into a sprawling civil Racketeer Influenced and Corrupt Organizations Act ("RICO") complaint.[1] Plaintiffs' allegations against IMG are limited to a single December 2018 transaction involving the purchase of certain sound recordings and the subsequent recordation of that transaction with the U.S. Copyright Office. Yet without any further factual support, Plaintiffs seek to impose liability on IMG under both the federal RICO statute and the Puerto Rico Organized Crime Act.

[1] Plaintiffs have filed a Complaint, a Court-ordered RICO Statement, an Amended Complaint, and an Amended RICO Statement, all quite lengthy. (ECF Nos. 1, 21, 26, 48 & 49.) Plaintiffs named IMG in the Amended Complaint. (ECF No. 48.)

As set forth below, the Amended Complaint fails to state a plausible claim against IMG.

Neither the Amended Complaint (or the RICO statement, for that matter) allege facts attempting to show that IMG participated in the operation or management of the alleged enterprise, committed a pattern of racketeering activity, participated in the alleged manipulation of publishing shares, or engaged in any predicate acts sufficient to support a substantive RICO claim, much less a conspiracy under the federal RICO statute. Nor does it identify any actionable misrepresentation by IMG with the particularity required to plead fraud. At most, the Amended Complaint describes an ordinary commercial transaction that bears no relatedness or continuity to the publishing-share allegations against the other defendants.[2]

Because Plaintiffs fail to state plausible federal RICO claims against IMG, their Puerto Rico Organized Crime Act claim fails as well. And because the federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico law claims. The Amended Complaint should therefore be dismissed as to IMG.

## II. <u>STANDARD FOR MOTION TO DISMISS</u>

Under FED. R. CIV. P. 12(b)(6), a complaint must be dismissed unless it includes factual allegations that, when taken as true, demonstrate a plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007). While "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir. 2010) (citations omitted). Plausibility exists when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *See Morales-Cruz v. Univ. of P.R.*, 676 F. 3d 221, 224 (1st

[2] In the interest of brevity, IMG refers to, adopts and incorporates by reference, as set forth below, certain arguments contained in the other defendants' motions to dismiss.

Cir. 2012); *Sepúlveda-Villarini v. Dept. of Educ. of P.R.*, 628 F. 3d 25, 30 (1st Cir. 2010). If the well-pleaded facts do not allow a "court to infer more than the mere possibility of misconduct, the complaint has . . . not show[n] . . . that the pleader is entitled to relief." *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (citations omitted).

While a court must accept the facts alleged in the complaint for a Rule 12(b)(6) motion, mere "conclusory allegations" need not be accepted. Courts will not accept conclusory allegations regarding "the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened." *Martínez-Machicote v. Ramos-Rodríguez*, 553 F. Supp. 2d 45, 49 (D.P.R. 2007) (citations omitted). Courts accept all well-pleaded factual allegations as true and indulge all reasonable inferences in plaintiff's favor, but need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F3d 1, 3 (1st Cir. 1996); *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, when ruling on a Rule 12(b)(6) motion, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted). Then, the Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor" to "see if they plausibly narrate a claim for relief." *Zenón v. Guzmán*, 924 F.3d 611,

615-616 (1st Cir. 2019). *See also García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013); *Morales-Cruz*, 676 F.3d at 224.

Furthermore, where fraud is alleged, the pleading standard is even more demanding, requiring "a deeper scrutiny of the plaintiffs' allegations." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 54 F.4th 42, 52 (1st Cir. 2022). In cases alleging fraud, the plaintiffs "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Therefore, the pleader of a fraud claim "is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (citing *Powers v. Bos. Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)). Finally, Rule 9(b) "requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

As the U.S. Court of Appeals for the First Circuit has explained, "courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Id.* (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (citations omitted), *superseded by statute on other grounds*) (emphasis in original). *See also See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.").

## III. ARGUMENTS FOR DISMISSAL

### A. COUNTS I and II of the Amended Complaint should be dismissed as to IMG because they lack factual allegations that demonstrate a plausible claim to relief.

COUNTS I and II of the Amended Complaint assert claims against IMG under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. While COUNT I purports to assert a claim for RICO conspiracy under 18 U.S.C. § 1962(d), COUNT II purports to assert a substantive RICO claim under 18 U.S.C. § 1962(c).[3]

Both COUNTS I and II should be dismissed because the Amended Complaint merely alleges that IMG purchased certain intellectual property from other defendants but does not allege facts plausibly showing that IMG operated or managed the alleged enterprise, participated in a distinct RICO enterprise, engaged in a pattern of racketeering activity, or committed any predicate act of wire fraud or actionable misrepresentation. At most, the allegations describe IMG as a counterparty to an asset transaction, which is insufficient to state a claim under either 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d).

#### i. Standard for a RICO claim under Section 1962(c)

Civil RICO claims are "an unusually potent weapon," *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, (1997), and "courts should strive to flush out frivolous RICO allegations at an early stage." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). To state a RICO claim under Section 1962(c), "a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *N. Bridge*

[3] Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d), in turn, makes it unlawful to conspire to violate § 1962(c).

*Assocs., Inc. v. Boldt*, 274 F.3d 38, 42 (1st Cir. 2001). The elements of a RICO claim are discussed below, followed by an explanation as to why Plaintiffs failed to plead them.

**a. Conduct**

The "conduct" element of Section 1962(c) requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). This means that a defendant "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Under the *Reves* "operation-or-management" test, a RICO defendant must have "some part in directing the enterprise's affairs." *Id*. at 179.

**b. Enterprise**

The term "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). The alleged "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It is, in words of the Supreme Court of the United States, "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

**c. Pattern: Relationship and Continuity**

The Supreme Court of the United States has noted that "pleading a RICO claim is not as simple as pointing to a business or property harm," because "[a] plaintiff must first establish a pattern of racketeering activity." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 613 (2025). This requires alleging two or more predicate acts "within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H. J. Inc. v.*

*Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989). Thus, "harm resulting from a single tort is not a ticket to federal court for treble damages." *Med. Marijuana, Inc.*, 604 U.S. at 613.

Moreover, it is insufficient to prove a "pattern." The plaintiff must also allege that the "predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)). This "relatedness" element requires that the predicates "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 (quotations omitted). The "continuity" element requires that the predicate acts either constitute a closed series of past conduct extending "over a substantial period of time," or pose a "realistic prospect" that they will "extend[ ] indefinitely into the future." *N. Bridge Assocs., Inc.*, 274 F.3d at 43 (quotations omitted); *see Efron*, 223 F.3d at 16.

**d. Racketeering Activity: Wire and Mail Fraud**

Finally, to establish a pattern of racketeering activity, the plaintiffs must allege predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes. 18 U.S.C. § 1961(1)(B), (5); 18 U.S.C. §§ 1341, 1343.

To establish mail or wire fraud, it is required to show that defendant "engaged in a scheme to defraud with the specific intent to defraud and that [it] used the United States mails and/or the interstate wires in furtherance of the scheme." *Efron v. UBS Financial Services Incorporated of Puerto Rico*, 96 F.4th 430, 438 (2024) (quoting *McEvoy Travel Bureau, Inc. v. Heritage Travel*, Inc., 904 F.2d 786, 790 (1st Cir. 1990)). The "scheme must be intended to deceive another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy Travel Bureau, Inc.*, 904 F.2d at 791. *See also Bridge v. Phoenix*

*Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). As a result, a RICO plaintiff must state "the time, place and content of the alleged mail and wire communications perpetrating" the fraud. *North Bridge Assocs., Inc.*, 274 F.3d at 43 (internal quotation omitted).

In this context, Rule 9(b)'s pleading standard applies and "conclusory allegations of mail and wire fraud . . . with no description of any time, place or content of the communication[s]" do not suffice. *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 107 (1st Cir. 2025) (quotations omitted).

**ii. Plaintiffs failed to state a plausible RICO claim under Section 1962(c).**

The Amended Complaint utterly fails to state a plausible claim under 18 U.S.C. § 1962(c) against IMG.

*First*, the Amended Complaint, when stripped from its broad legal conclusions that IMG "served" or "functioned" "as a vehicle for Pina-Nieves" (ECF No. 48, ¶¶ 19, 125), alleges only that IMG purchased certain sound recordings in 2018 and that the transaction was later recorded with the U.S. Copyright Office. (ECF No. 48, ¶¶ 19, 42-45, 76.) Neither the Amended Complaint or the RICO Statement allege that IMG exercised any control over the enterprise, directed its affairs, or played any role in the alleged publishing-share schemes that form the basis of Plaintiffs' distorted RICO theory. As such, it fails to allege that IMG participated in operation or management of the enterprise itself.[4]

*Second*, the Amended Complaint fails to plead the existence of a distinct enterprise involving IMG.[5] Plaintiffs conclusorily allege that IMG "served as a vehicle" through which

---

[4] IMG incorporates by reference the arguments set forth in defendant Edwin J. Prado-Galarza's "Motion to Dismiss," ECF No. 72 at 8-11. As explained therein, outside parties, like professionals who render services to a client, do not "operate or manage" the client's affairs for RICO purposes.

[5] IMG incorporates by reference the arguments set forth in defendant Andrés A. Coll-Fernández's "Motion to Dismiss First Amended Complaint," ECF No. 62 at 44-45. As discussed there, the so-called "enterprise" allegations largely consist of listing individuals and entities, asserting that they formed an association-in-fact. But Plaintiffs do not allege sufficient facts showing a distinct and structured organization, a decision-making framework, or coordinated conduct beyond the alleged acts themselves. *See Efron*, 223 F.3d at 20-21; *Turkette*, 452 U.S. at 583.

Pina-Nieves supposedly monetized certain assets and purchased certain recordings in 2018. Those allegations, however, do not plausibly establish that IMG shared a common unlawful purpose with the alleged enterprise or otherwise functioned as part of an association-in-fact enterprise.[6] At most, they describe IMG as party to an ordinary commercial transaction. *Cf. Boyle*, 556 U.S. at 946 (explaining that "an association-in-fact enterprise must have . . . a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").

*Third*, Plaintiffs fail to allege a pattern of racketeering activity attributable to IMG. The isolated single asset transaction and the subsequent recordation of that transaction bears little resemblance to the publishing-share allegations that form the basis of Plaintiffs' RICO theory, which involve different works, participants, alleged victims, communications, and methods of execution.[7] Accordingly, the Amended Complaint fails to plausibly allege the required relatedness between the conduct attributed to IMG and the broader pattern of alleged

---

[6] IMG incorporates by reference the arguments set forth in defendants Rafael A. Pina-Nieves', World Music Latino Corp.'s, Los Magnifikos Inc.'s, and Mafer Music Publishing Inc.'s "Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)," ECF No. 54 at 5-10. As discussed there, Plaintiffs failed to distinguish the alleged racketeering activity from the usual and daily activities of the enterprise. *See Turkette*, 452 U.S. at 583.

[7] IMG incorporates by reference the arguments set forth in defendants Rafael A. Pina-Nieves', World Music Latino Corp.'s, Los Magnifikos Inc.'s, and Mafer Music Publishing Inc.'s "Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)," ECF No. 54 at 16-21, 36-38. As discussed there, the 2018 transaction is unrelated to the more then forty alleged publishing-share predicate acts under *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), and *Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000):

> The main thrust of the Complaint is the alleged use of interstate communications to manipulate publishing splits and falsely attribute authorship shares in musical compositions. Those allegations concern publishing rights, royalty allocations, and industry filings directed at performance rights organizations and publishers. By contrast, the alleged 2018 transaction involving the sale of sound recordings concerns master rights, asset transfers, and a discrete commercial sale to a third party—Intercontinental. The two sets of allegations differ in purpose (allocation of publishing income versus transfer of ownership of masters), result (ongoing royalty diversion versus a one-time asset sale), victim (co-authors and publishers versus a contracting counterparty), and method (email communications and registry filings versus a negotiated commercial transaction).

(ECF No. 54, at 37.)

racketeering activity, nor the required continuity in the form of either a closed period of repeated criminal conduct or a realistic threat of ongoing racketeering activity. *See Efron*, 223 F.3d at 19 (noting that "[o]ur own precedent firmly rejects RICO liability where the alleged racketeering acts . . . , taken together, . . . comprise a single effort to facilitate a single financial endeavor") (cleaned up); *Schultz v. Rhode Island Hosp. Tr. Nat. Bank, N.A.*, 94 F.3d 721, 731–32 (1st Cir. 1996) (noting that a "'single episode' of criminal behavior, even if it involves the commission of multiple related acts, does not constitute a "'pattern'.") (quotation omitted).

*Finally*, and most fundamentally, Plaintiffs fail to allege any predicate act attributable to IMG at all—neither wire fraud, mail fraud, nor any other racketeering act.[8] The Amended Complaint's sole theory as to IMG is that the sellers in the 2018 transaction could not convey the sound recordings at issue because "[i]n the absence of a valid written transfer of conveyance, neither Pina Nieves nor any of his entities can have a right to these masters." (ECF No. 48, ¶ 44.) That is a copyright-ownership question governed by the U.S. Copyright Act, 17 U.S.C. § 204, not an actionable false statement of fact capable of being transformed into fraud.

---

[8] The Amended Complaint refers to "extortion" four times, in two paragraphs applicable to the enterprise generally (ECF No. 48, ¶¶ 108, 112), but never alleges that IMG obtained property from another, with his consent, induced by wrongful use of force, violence, fear, or under color of official right. 18 U.S.C. § 1951(b)(2). Extortion requires the wrongful use of fear or coercion to obtain property, not merely participation in a transaction. *See United States v. Brissette*, 919 F.3d 670, 676 (1st Cir. 2019); *United States v. Cruz-Arroyo*, 461 F.3d 69, 73 (1st Cir. 2006). IMG therefore incorporates by reference the fuller extortion analysis set forth in defendant Coll-Fernández's "Motion to Dismiss First Amended Complaint," ECF No. 62, at 39-41.

Furthermore, the Court should not interpret the perfunctory and vague references to "Defendants" or "and others presently unknown" to include IMG. The Amended Complaint expressly defines "Defendants" (collectively) to mean only Pina Nieves, González Castellanos, Coll Fernández, Prado Galarza, Los Magnifikos Inc., World Music Latino Corp., and Mafer Music Publishing Inc. (ECF No. 48, ¶ 2), and conspicuously omits IMG from that definition.

As a result, Plaintiffs cannot have it both ways: having chosen to Amended Complaint's definition of "Defendants" to exclude IMG, Plaintiffs cannot now rely on undifferentiated references to "Defendants" to attribute extortion, wire fraud, or any other predicate act. *See e.g. Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005) (affirming dismissal where complaint "failed to state clearly which defendant or defendants committed each of the alleged wrongful acts."); *Redondo-Borges v. U.S. Dept. of Housing and Urban Dev't*, 421 F.3d 1, 9 (1st Cir. 2005) (explaining that "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why. . . .") (quotation omitted).

In this context, although the Amended Complaint attempts to identify numerous communications involving other defendants, it does not identify any specific fraudulent communication sent by IMG, any false statement made by IMG, any recipient of such statement, or any facts supporting a plausible inference of fraudulent intent.[9] Instead, Plaintiffs merely allege, in conclusory fashion, that IMG supposedly knew the sellers lacked rights over the sound recordings and nevertheless participated in the transaction. (ECF No. 48, ¶ 44.) Those allegations are legally insufficient against IMG, fall far short of Rule 9(b)'s heightened pleading requirements, and do not plausibly allege a predicate act of wire fraud. *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2014) (nothing that allegations cannot be "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.") (citation omitted); *Greenstone*, 975 F.2d at 25 (rejecting allegations of knowledge pleaded in "general" terms and holding that such assertions are conclusory where the plaintiff fails to plead the circumstances constituting fraud with particularity, because "one cannot avoid the latter requirement simply through a general averment that defendants "knew" earlier what later turned out badly.").

Accordingly, Plaintiffs failed to plead facts sufficient to state a plausible RICO claim against IMG and COUNT II should be dismissed.

---

[9] IMG incorporates by reference the arguments set forth in defendants Rafael A. Pina-Nieves', World Music Latino Corp.'s, Los Magnifikos Inc.'s, and Mafer Music Publishing Inc.'s "Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)," ECF No. 54, at 35-36. As discussed there, Plaintiffs' allegations concerning the 2018 transaction fail to comply with Rule 9(b), relying instead on vague references to unspecified documents and wire communications without identifying the "who, what, when, where, and how" of the alleged fraud. The theory also fails to allege a cognizable fraudulent scheme, as it relies on a copyright ownership issue and purported lack of authority to transfer rights, rather than on a material misrepresentation of fact, reliance, or use of interstate wires to execute a fraudulent scheme.

**iii. Plaintiffs lack an injury under Section 1962(c).**

Furthermore, a RICO plaintiff must allege a causal nexus and plead with sufficient factual allegations that the injuries "were caused by the predicate acts of wire and mail fraud." *Efron*, 223 F.3d at 17. The causal nexus or, as coined by the Supreme Court of the United States, "direct-relationship" requirement derives from Section 1964(c)'s "by reason of" language and entails "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). "The key word is 'direct'; foreseeability does not cut it.'" *Med. Marijuana, Inc.*, 604 U.S. at 612 (citation omitted). Therefore, "[t]he 'central question' in evaluating proximate causation in the RICO context 'is whether the alleged violation led directly to the plaintiff's injuries.'" *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).

Here, the other defendants have already explained why Plaintiffs fail to plead a cognizable RICO injury and standing under the Amended Complaint.[10] The core of Plaintiffs' insufficiently alleged injuries, however, arise, in any event, from the publishing-share dispute that forms the core of Plaintiffs' theory against those other defendants, not from IMG's alleged purchase of certain sound recordings in 2018. Indeed, Plaintiffs do not allege that IMG prepared the challenged split sheets, participated in the alleged publishing-share allocations, or transmitted fraudulent communications concerning those allocations.

As to IMG, Plaintiffs allege, in wholly conclusory terms, that "the acts that facilitated" the 2018 transaction and the recordation in the U.S. Copyright Office "directly caused the loss of

[10] IMG incorporates by reference the arguments regarding RICO standing, injury, and proximate causation set forth in defendants' "Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)," ECF Nos. 54, at 14-16; "Motion to Dismiss the Amended Complaint," ECF No. 60, at 9-12, 44-47; "Motion to Dismiss First Amended Complaint," ECF No. 62, at 31-33; and "Motion to Dismiss," ECF No. 72, at 14-16.

ownership, control, and monetization rights in those masters, depriving Plaintiffs of licensing, streaming, and exploitation revenue." (ECF No. 48, ¶ 149.) That allegation is insufficient to satisfy RICO's direct-causation requirement. Under the Amended Complaint, the only conduct attributed to IMG is its participation in a single asset acquisition. As explained above, however, an ordinary and discrete commercial transaction is not itself a RICO predicate act and does not constitute a pattern of racketeering activity that could bear a direct relationship to any injuries.

Accordingly, Plaintiffs fail to plausibly allege that IMG's own conduct satisfies the injury and causation requirements of Section 1964(c), and their claim under Section 1962(c) fails on that independent basis.

**iv. Plaintiffs' RICO claim under Section 1962(c) is time-barred.**

Finally, the other defendants have explained that the Amended Complaint is time-barred under the four-year civil RICO statute of limitations and fails to plausibly allege an actionable wire fraud predicate. To the extent Plaintiffs seek to predicate liability against IMG on the same underlying allegations or allegedly concealed conduct, those statute-of-limitations defects apply with equal force to the claims asserted against IMG. Accordingly, IMG incorporates those arguments to the extent they are applicable to the claims asserted against it.[11]

Again, Plaintiffs' conclusory allegation with respect to IMG is that "the acts that facilitated" the 2018 transaction and the recordation in the U.S. Copyright Office supposedly caused an injury. (ECF No. 48, ¶¶ 145, 149.) Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Because the allege injury supposedly flows from the "acts" that "facilitated" the 2018

[11] IMG incorporates by reference the arguments regarding the statute of limitations set forth in defendants' motions to dismiss, "Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6)," ECF Nos. 54, at 41-46; "Motion to Dismiss the Amended Complaint," ECF No. 60, at 33-44; "Motion to Dismiss First Amended Complaint," ECF No. 62, at 43-49; and "Motion to Dismiss," ECF No. 72, at 19-21.

transaction, the claim against IMG accrued no later than 2018. Yet the Amended Complaint was filed on November 29, 2025, nearly seven years later.[12] Accordingly, the claim against IMG falls outside the four-year window and must be dismissed on this independent and alternative basis.

**v. Plaintiffs failed to state a plausible RICO conspiracy claim under Section 1962(d).**

COUNT I of the Amended Complaint purports to assert a claim for RICO conspiracy under 18 U.S.C. § 1962(d). However, for the reasons discussed above, Plaintiffs failed to state a plausible substantive RICO claim against IMG. Accordingly, their conspiracy claim under Section 1962(d) necessarily fails too and must be dismissed. *See Efron*, 223 F.3d at 21 (nothing that, "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails.").

Independently, the Amended Complaint does not plausibly allege that IMG knowingly agreed to join or further any racketeering endeavor; it alleges, at most, a single arm's-length purchase. *Cf. United States v. Rodríguez-Torres*, 939 F.3d 16, 23–24, 2019 WL 4463275 (1st Cir. 2019) (noting that a RICO-conspiracy requires "that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.") (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).[13] Accordingly, Plaintiffs' claim under Section 1962(d) likewise fails and must be dismissed on that independent basis.

[12] The subsequent February 2024 recordation with the U.S. Copyright Office does not restart that clock for Plaintiffs. The Supreme Court of the United States has rejected the "last predicate act" rule, and later acts do not revive time-barred injuries. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179,186-191 (1997). And civil RICO claims are governed not by the "injury and pattern discovery" rule, but by the injury-discovery accrual rule, under which a claim accrues when the plaintiff knew or should have known of the alleged injury. *Lares Grp., II v. Tobin*, 221 F.3d 41, 44-46 (1st Cir. 2000). Finally, as discussed by the other defendants in their dispositive motions, Plaintiffs had, in any event, "storm warnings" sufficient to trigger inquiry notice and cannot plausibly allege concealment. (ECF Nos. 54 at 21-25, 42-46; 60, at 40-43; 62, at 43-45; 72 at 20-21.)

[13] IMG incorporates the arguments in defendant Prado-Galarza's "Motion to Dismiss," ECF No. 72, at 18-19.

### B. COUNTS III-V of the Amended Complaint should also be dismissed as to IMG.

COUNT III of the Amended Complaint, asserting claims under the Puerto Rico Organized Crime Act, P.R. LAWS ANN. tit. 25, §§ 971–971x, fails for substantially the same reasons as Plaintiffs' federal RICO claims.[14] COUNT IV of the Amended Complaint for alleged misappropriation of copyrights is not asserted against IMG and contains no factual allegations that IMG engaged in any allegedly wrongful conduct giving rise to liability.[15] And COUNT V of the Amended Complaint for the recovery of allegedly stolen or misappropriated intellectual property from IMG likewise fails, because the Amended Complaint does not adequately plead a IMG lacks ownership of the assets it acquired in 2018.[16]

In sum, the Court should dismiss the federal RICO claims against IMG and, as a result, decline to exercise supplemental jurisdiction over these Puerto Rico claims pursuant to 28 U.S.C. § 1367. The Amended Complaint identifies no independent basis for federal jurisdiction over the Puerto Rico law claims, and Plaintiffs do not allege diversity jurisdiction. Where all federal claims are dismissed at the pleading stage, the ordinary course is for federal courts to decline supplemental jurisdiction over the remaining state-law claims. *Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 392 (1st Cir. 2014); *United Mine Workers of Am. v. Gibbs*, 383 U.S.

---

[14] IMG incorporates by reference the arguments set forth in defendant Andrés A. Coll-Fernández's "Motion to Dismiss First Amended Complaint," ECF No. 62 at 51-53. As discussed there, where a federal RICO claim fails, the Puerto Rico Organized Crime Act claim necessarily fails as well.

[15] COUNT IV is asserted against "Pina Nieves" (ECF No. 48, ¶¶ 152-156) and does not state a claim against IMG.

[16] The Amended Complaint alleges that "[n]either Pina Nieves nor any of his entities and co-defendants are the creators or performers of the sound recordings listed above," and that, "[i]n the absence of a valid written transfer of conveyance, neither Pina Nieves nor any of his entities can have a right to these masters." (ECF No. 48, ¶ 44.) As explained in this motion, that is a copyright ownership question governed by the Copyright Act. Further, the ownership of a sound recording is not derivative of authorship of the underlying musical composition. For example, the House Report on the Copyright Act of 1976 observed that the copyright in sound recordings "will usually, though not always, involve 'authorship' both ... [by the artist and by] the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording." H.Rep. No. 94–1476, 94th Cong., 2d Sess. 56 (1976). Therefore, the allegations that Pina-Nieves or his entities are not "the creators or performers of the sound recordings" do not establish that they lacked rights to the masters, nor do they establish any inference of IMG's alleged knowledge of any title defect.

715, 726 (1966). Accordingly, COUNTS III through V of the Amended Complaint should also be dismissed.

## IV. CONCLUSION AND REQUEST FOR RELIEF

Plaintiffs have filed an original Complaint, a Court-ordered RICO Statement, an Amended Complaint, and an Amended RICO Statement, yet still fail to state a plausible RICO claim against IMG. The deficiencies identified above are not the product of inartful pleading but of the absence of facts capable of establishing that IMG participated in the operation or management of a supposed RICO enterprise, engaged in a pattern of racketeering activity, committed a predicate act, or caused a cognizable RICO injury. Plaintiffs were afforded ample opportunities to articulate their RICO theory, but they failed and cannot now cure these defects through further amendment. Accordingly, dismissal of the federal RICO claims against IMG should be with prejudice, as any further amendment would be futile.

**WHEREFORE**, Intercontinental Music Group, LLC respectfully requests that the Honorable Court: (*i*) dismiss Plaintiffs' claims under 18 U.S.C. § 1962 with prejudice under FED. R. CIV. P. 12(b)(6); (*ii*) decline to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico law claims pursuant to 28 U.S.C. § 1367 and dismiss those claims accordingly; and (*iii*) award Intercontinental Music Group, LLC its costs and attorneys' fees.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on October 19, 2026.

**O'NEILL & BORGES LLC**
*Attorneys for Intercontinental Music Group, LLC*
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Carlos A. Valldejuly*
Carlos A. Valldejuly Sastre
USDC No. 209505
carlos.valldejuly@oneillborges.com

*s/Jorge A. Candelaria Serrano*
Jorge A. Candelaria Serrano
USDC No. 306004
jorge.candelaria@oneillborges.com